**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 05-243 C**

| | | |
|---|---|---|
| ****************************** | ) | |
| EDWARD KEETER and | ) | |
| KEETER TRADING COMPANY, INC., | ) | |
| *Plaintiffs* | ) | **Case 1:05-cv-00243-LJB** |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| *Defendant* | ) | |
| ****************************** | ) | |

**APPENDIX TO**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

March 19, 2007

/s/ Douglas J. Colton

**DOUGLAS J. COLTON**
475 L'ENFANT PLAZA SW
RM. 6323
WASHINGTON, D.C. 20260-1127
TEL. 202.268.6408
FAX. 202.268.5287
*douglas.j.colton@usps.gov*

**COUNSEL FOR DEFENDANT**

# TABLE OF CONTENTS


| APPENDIX PAGE(S) | DESCRIPTION | CITED AT MOTION PAGE(S) |
|---|---|---|
| _ 1 – 24 | DEFENDANT'S DISCOVERY REQUESTS ( 3 SETS) | |
| 1 – 8 | Requests For Admission (Fact V2) 01/09/07 | 7 |
| 9a, b | Email from counsel for plaintiff regarding original Requests for Admission (Facts) 01/04/07 | 7 |
| 10 – 17 | Requests for Admission (Facts) 12/05/06 | 7 |
| 18 - 24 | Requests for Admission (Documents) 12/01/06 | 7 |
| 25 – 97 | CONTRACT AND CONTRACT MODIFICATIONS | |
| 25 – 88 | CONTRACT | 4, 5 6, 8, 10, 13, 15, 20, 33 |
| 89 | ROUTE SERVICE ORDER 12/24/03 | 13, 33 |
| 90-91 | ROUTE SERVICE ORDER 02/09/04 | 15, 21 |
| 92 | ROUTE SERVICE ORDER 02/19/04 | 13,15, 34 |
| 93 | ROUTE SERVICE ORDER 02/24/04 | |
| 94 | ROUTE SERVICE ORDER 04/29/04 | |
| 95-97 | ROUTE SERVICE ORDER 06/10/04J WITH REPROCUREMENT WORKSHEETS | |
| 98 – 99 | CONTRACTING OFFICER'S NOTICE TO PLAINTIFF OF TERMINATION OF CONTRACT 04/28/04 | 16 |
| 100 – 102 | CONTRACTING OFFICER'S FINAL DECISION DENYING PLAIINTIFF'S CLAIMS 04/28/04 | |
| 103- 115 | COMMUNICATIONS SENT TO PLAINTIFF REGARDING CONTRACT PERFORMANCE AND CONCERNS | |
| 103 | ORAL COMMUNICATION RECORD FOR 01/24/04 | |
| 104 | ORAL COMMUNICATION RECORD FOR 01/24/04 | |
| 105 – 106 | A.O. REQUEST FOR FORMAL CONFERENCE AND LIST OF RECENT INFRACTIONS 01/28/041 | |
| 107- 111 | A.O. NOTE TO PLAINTIFF AND UNDELIVERED MAIL 01/29/04 | |
| 112 | A.O FINAL REQUEST FOR SERVICE IMPROVEMENT 02/02/04 | |
| 113 – 114 | HANDWRITTEN AND TYPED NOTES OF CONFERENCE 01/30/04 | |
| 115 | CURE LETTER FOLLOWING ABANDONMENT 02/24/04 | 115 |
| 116 – 118 | LETTERS FROM PLAINTIFF TO DEFENDANT REGARDING CONTRACT | |

| | | |
|---|---|---|
| **116** | REFUSAL TO PERFORM CONTRACT 02/20/04 | 34 |
| **117 – 118** | EXPLANATIONS RE REFUSAL TO SERVE AMBS 01/30/04 | 33, 34 |

**119 – 148** DEFENDANT'S INTERNAL EMAILS, FILE MEMORANDA AND WORK NOTES REGARDING DISPUTE

| | | |
|---|---|---|
| **119** | FILE MEMO 01/02/04 | |
| **120** | NOTES 01/28/04 | |
| **121** | NOTES 01/27, 28/04 | |
| **122** | NOTES 01/28/04 | 14 |
| **123** | EMAIL 01/26/04 | |
| **124** | FILE MEMO 02/10/04 | |
| **125** | EMAIL CIRCA 01/28/04 | |
| **126** | EMAIL CIRCA 02/06/04 | |
| **127** | NOTES 02/09/04 | |
| **128** | EMAILS CIRCA 02/10/04 | |
| **129** | NOTE FROM AO TO SPECIALIST 02/06/04 | |
| **130 -131** | EMAILS 02/20/04 | |
| **132** | FILE MEMO 02/23/04 | 33 |
| **133** | EMAIL 03/02/04 | |
| **134 – 148** | A.O. REQUESTS FOR REIMBURSEMENT: JAN. 27, 28, 29, 30, AND FEB. 4, 6, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 2004 | 15, 33 |

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## No. 05-243 C

| | | |
|---|---|---|
| ************************* | ) | |
| EDWARD KEETER and | ) | |
| KEETER TRADING COMPANY, INC., | ) | |
| *Plaintiffs* | ) | **Case 1:05-cv-00243-LJB** |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| *Defendant* | ) | |
| ************************* | ) | |

## DEFENDANT'S REQUESTS FOR ADMISSION (FACTS)

Pursuant to RULE 36 of the FEDERAL RULES OF CIVIL PROCEDURE, defendant THE UNITED STATES (the U.S. POSTAL SERVICE, or USPS), requires that you admit or deny the truth of the following statements.

## DEFINITIONS AND INSTRUCTIONS

1. *a*. "YOU," or "KI," means plaintiff herein KEETER TRADING COMPANY, INC, and includes any person acting on behalf of KI with regard to HCR 72665, or performance or termination thereof, at any time from January 1, 2002 to date.

   *b*. "KEETER" means EDWARD L. KEETER, in his capacity as President of KI

2. "The CONTRACT" means the agreement entered between USPS and KI regarding services to be performed on POSTAL SERVICE route HCR 72665, effective as of July 1, 2002.

3. The "ADDITIONAL POSTAL BOXES," or "APBs," means the 52 additional customer postal delivery boxes that on or about December 24, 2003, USPS instructed KI to begin servicing under the CONTRACT as of January 24, 2004.

4. The CONTRACTING OFFICER (or "C.O.") means the USPS employee authorized by USPS to award, change, terminate, and assess damages owed by the Supplier under the terms of, the CONTRACT.

5. The ADMINISTRATIVE OFFICIAl refers to Ms. Linda Orr, as the USPS employee designated by the CONTRACTING OFFICER to have responsibility for operational supervision of KI's performance under the CONTRACT.

Unless a Request identifies a different date or time period, the following Requests refer to the period of January 1, 2002 through December 31, 2005

## REQUESTS

**1**. KEETER, INC. (a/k/a KEETER INC; hereafter "KI") was incorporated in Arkansas in 1993.

**2**. KEETER INC. changed its name to "KEETER TRADING COMPANY, INC."

**3**. KEETER is, and at all times relevant herein was, the sole owner of KI.

**4**. KEETER is, and at all times relevant herein was, the President of KI

**5**. KEETER is, and at all times relevant herein was, authorized to act and speak on behalf of KI.

**6**. KI was awarded a CONTRACT by the UNITED STATES POSTAL SERVICE (USPS") to supply services under USPS CONTRACT HCR 72665 ("the CONTRACT"), with service to commence on July 1, 2002.

**7**. Under its stated terms, the CONTRACT would expire on June 30, 2006.

**8**. In this suit, KI seeks damages for breach of the CONTRACT by USPS.

**9.** On or about March 10, 2004, KI submitted to the CONTRACTING OFFICER its claims for damages it alleged it was entitled to receive because of breach of the CONTRACT by USPS.

**10.** On April 28, 2004, the CONTRACTING OFFICER issued a Final Decision terminating the CONTRACT for default, retroactively effective as of the close of business on February 20, 2004.

**11.** On April 28, 2004, the CONTRACTING OFFICEr issued a Final Decision denying KI's claims for damages under the CONTRACT.

**12.** On December 24, 2003, the CONTRACTING OFFICER issued a Route Service Order under which the APBS were to be included for servicing under the CONTRACT starting on January 24, 2004.

**13.** KI was informed on a date between December 24 and December 31, 2003 that USPS was assigning the APBs for servicing under the CONTRACT as of January 24, 2004.

**14.** In December, 2003, USPS informed KI that KI would receive $1,087.56 per year in additional compensation for servicing the APBs.

**15.** On January 5, 2004, KI informed the ADMINISTRATIVE OFFICIAL that KI would not be maKIng deliveries to the APBs, because **KI** asserted that doing so constituted a "Major Change" of the terms of the Contract to which it had not agreed.

**16.** On a date between December 24 and December 31, 2003, KEETER participated in a telephone conversation with a representative of the CONTRACTING OFFICER, in the course of which KI was informed that it was required by the CONTRACT to provide service for the APBs even if KI did not wish to do so.

**17.** On or about January 2, 2004, KEETER participated in a telephone conversation with a representative of the CONTRACTING OFFICER, in the course of which KI was informed that it was required by the CONTRACT to provide service for the APBs even if KI did not wish to do so.

**18.** On or about January 20, 2004, KEETER participated in a telephone conversation with a representative of the CONTRACTING OFFICER, in the course of which KI was informed that it was required by the CONTRACT to provide service for the APBs even if KI did not wish to do so.

**19**. On or about January 27, 2004, KEETER participated in a telephone conversation with a representative of the CONTRACTING OFFICER, in the course of which KI was informed that it was required by the CONTRACT to provide service for the APBs even if KI did not wish to do so.

**20.** In the telephone conversation with a representative of the CONTRACTING OFFICER on January 2, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, the CONTRACT could be terminated.

**21.** In the telephone conversation with a representative of the CONTRACTING OFFICER on January 2, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, USPS would be entitled to recover from KI its cost for arranging alternative servicing for the APBs.

**22**. In the telephone conversation with a representative of the CONTRACTING OFFICER on January 2, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, USPS would be entitled to deduct its cost for arranging alternative servicing for the APBs from payments that otherwise would be due to KI under the CONTRACT.

**23.** In the telephone conversation with a representative of the CONTRACTING OFFICER on January 28, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, the CONTRACT could be terminated.

**24**. In the telephone conversation with a representative of the CONTRACTING OFFICER on January 28, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, USPS would be entitled to recover from KI its cost for arranging alternative servicing for the APBs.

**25**. In the telephone conversation with a representative of the CONTRACTING OFFICER on January 28, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, USPS would be entitled to deduct its cost for arranging alternative servicing for the APBs from payments that otherwise would be due to KI under the CONTRACT.

**26.** In late December of 2003 or early January of 2004, KEETER had a telephone conversation with a representative of the CONTRACTing Officer, in which the

CONTRACTing Officer participated and stated his agreement with the C.O. representative as to KI's obligations to provide service for APBs.

**27.** In late December of 2003 or early January of 2004, KEETER had a telephone conversation with a representative of the CONTRACTING OFFICER, in which the CONTRACTING OFFICER participated and stated his agreement with the C.O. representative as to possible consequences to KI if KI did not provide service for the ABPs.

**28**. On January 24, 2004, KEETER met with a POSTAL SERVICE employee who instructed KEETER that KI was required to accept, sort, and deliver mail addressed to the APBs even if KI did not wish to do so.

**29.** On January 27, 2004, KEETER met with the ADMINISTRATIVE OFFICIAL, who stated that KI was required to accept, sort, and deliver mail addressed to the APBs even if KI did not wish to do so.

**30**. KI was instructed by the ADMINISTRATIVE OFFICIAL, orally and/or in writing, to attend, and did attend, a meeting that took place on January 30, 2004, in order to discuss KI's performance of its obligations under the CONTRACT.

**31**. KI was instructed by the ADMINISTRATIVE OFFICIAL, orally and/or in writing, to attend, and did attend, a meeting that took place on January 30, 2004, in order to discuss KI's refusal to provide service for the APBs.

**32.** A meeting between KI and representatives of USPS took place on January 30, 2004, at which KI's performance of the CONTRACT and its refusal to provide service for the APBs were discussed.

**33.** The meeting that took place on January 30, 2004 was attended by KEETER on behalf of KI, and by the ADMINISTRATIVE OFFICIAL and MR. VERL MARTIN on behalf of USPS.

**34**. At the meeting on January 30, 2004, KI was instructed that it must provide service for the APBs even if it did not wish to do so.

**35.** At the meeting on January 30, 2004, KI was instructed that if It did not provide service for the APBs, the CONTRACT could be terminated.

**36.** On February 19, 2004, the CONTRACTING OFFICER issued a Route Service Order increasing the additional compensation to be paid to KI for servicing the APBs by the annual amount of $1,602.72.

**37**. On January 31, 2004, KI stated in a letter it submitted to USPS that KI disagreed with the amount of compensation that USPS proposed to pay KI for providing service for the APBs.

**38**. On January 31, 2004, KI stated in a letter it submitted to USPS that KI was not obligated by the CONTRACT to provide service for the APBs because it had not agreed to do so.

**39.** On February 20, 2004, KEETER returned to USPS the USPS security identification and USPS facility keys that it had been provided by USPS.

**40**.On February 20, 2004, KEETER orally informed USPS that KI would not be providing services under the CONTRACT after that day.

**41**. On February 20, 2004, KI stated in a letter it delivered to USPS that it would not be providing services under the CONTRACT after that day.

**42**. KI did not provide any services under the CONTRACT after February 20, 2004.

**43**. At no time did KI accept mail for delivery to the APBs.

**44**. At no time did KI agree to sort mail addressed to any of the APBs.

**45**. At no time did KI deliver mail to the APBs.

**46**. On at least eighteen days during January and February of 2004, USPS arranged to provide mail service for the APBs by means other than obtaining that service from KI.

**47.** On at least eighteen days during January and February of 2004, USPS incurred expenses to obtain mail services for the APBs by means other than obtaining that service from KI.

**48.** KI asserts that it was not required to service the APBs under the CONTRACT because addition of the APBs constituted a "major change" of the CONTRACT that could not be implemented unless KI agreed to do so.

**49.** USPS informed KI on one or more occasion between December 24, 2003 and February 20, 2004 that addition by USPS of a requirement that KI provide service for the APBs did not constitute a "major change" of the CONTRACT.

**50**. USPS informed KI on more than one occasion between December 24, 2003 and February 20, 2004 that KI must continue to provide service under the CONTRACT, whether or not inclusion in the CONTRACT of service for the APBs constituted a "major change" of the CONTRACT.

**51.** KI asserts that it was entitled to cease performance under the CONTRACT because USPS breached the CONTRACT by seeking to compel KI to provide service for the APBs without KI's agreement to do so.

**52.** KI asserts that it was entitled to cease performance under the CONTRACT because USPS breached the CONTRACT when it deducted from one or more contractual payment to KI an amount that USPS claimed as costs it incurred in order to obtain alternative service for the APBs when KI declined to provide that service.

**53**. At no time between December 24, 2003 and February 20, 2004 did KI or KEETER survey the APBs in order to determine their precise locations or the amount of time that would be needed to provide service for them under the CONTRACT.

**54.** On February 20, 2004, KI gave written notice to USPS that it would not thereafter provide services under HCR 72665.

**55**. KI did not make any deliveries to the APBs under the CONTRACT.

**56.** The corporate charter of KEETER INC. was revoked by the Arkansas Secretary of State, effective December 31, 2004.

**57.** The corporate charter of KI was reinstated effective April 27, 2005.

**58**. The documents provided by KI's counsel to counsel for USPS, that were thereafter submitted to the Court herein as the "KEETER BANKRUPTCY FILES," are true and correct copies of *(1)* documents filed by or on behalf of KEETER, on or about July 26, 2005, in the UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF ARKANSAS; and *(2)* Orders and instructions issued by the Bankruptcy Court in connection with that filing.

December 5, 2006

**DOUGLAS J. COLTON**
U.S. POSTAL SERVICE
475 L'ENFANT PLAZA, SW
ROOM 6323
WASHINGTON, DC 20260-1127
TEL: (202) 268-6408
FAX: (202) 268-5287

**COUNSEL FOR DEFENDANT**
**THE UNITED STATES POSTAL SERVICE**

**CERTIFICATE OF SERVICE**

I certify that on December 5, 2006, the foregoing DEFENDANT'S REQUESTS FOR ADMISSIONS (FACTS) was served on plaintiffs herein, by placing a true and correct copy thereof in the United States Mail, First Class postage prepaid, addressed to:

**CHRISTOPHER O'HARA CARTER, ESQ.**
**215 OLD MAIN STREET**
**YELLVILLE, ARKANSAS 72687**

MessageFrom: Carter Law Office [carterlaw@yellville.net]
Sent: Thursday, January 04, 2007 12:03 PM
To: Colton, Douglas J - Washington, DC
Cc: Carter
Subject: Re: KEETER Requests for Admissions -- Facts

Before I send a formal answer I want to talk to you about a few of these just to change some words and then submit them with the documents as stipulated facts. 90% are admitted as is, but I do not want to send denials and delay this process if we can change some words now.

I will try to call about 1 PM Eastern.

Christopher Carter
Attorney at Law
P.O. Box 300
Yellville, AR 72687-0300

Short notes on requests:

3,4,5, "is" not was, we could use "at all times relevent"

36. We have it approved on Feb 11 by Jeanette Wofford on February 19 (by a name we cannot read) and Mr. Keeter received this after he left on February 20, 2004

46. We can reword this to say it slightly differently. We cannot admit because there was a contract to deliver those boxes with a Mr. Dwayne Hoover.

47. See above. Linda Orr was salaried and as best as I can tell the charges were for time and not vehicle costs.

53. He did not survey them, but he certainly traveled to them having to pass them 2X a day.

On 15 it admitted as written but I think we should add "because KI stated it was a "major Change" to the contract.

Subject: Keeter v. USPS/stipulated facts/requests
From: Carter Law Office <carterlaw@yellville.net>
Date: Fri, 02 Feb 2007 08:04:41 -0600
To: douglas.colton@gmail.com

I can agree to all to move this along.

On #26 there might have been an earlier phone call, but there is no question there wasone held on 1-28. Regardless both parties positions were the same whether in was December or January. So we admit.

On 46 and 47 they are technically true statements. It just depends on the spin one wants to put on them. We will admit just so get to the point of submitting this on stipulated facts.

Christopher Carter
Attorney at Law
P.O. Box 300
Yellville, AR 72687-0300

Phone 870-449-2100

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**No. 05-243 C**

| | |
|---|---|
| **************************) | |
| EDWARD KEETER and ) | |
| KEETER TRADING COMPANY, INC., ) | |
| *Plaintiffs* ) | **Case 1:05-cv-00243-LJB** |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | |
| *Defendant* ) | |
| **************************) | |

## DEFENDANT'S REQUESTS FOR ADMISSION (FACTS)

Pursuant to RULE 36 of the FEDERAL RULES OF CIVIL PROCEDURE, defendant THE UNITED STATES (the U.S. POSTAL SERVICE, or USPS), requires that you admit or deny the truth of the following statements.

## DEFINITIONS AND INSTRUCTIONS

1. *a*. "YOU," or "KI," means plaintiff herein KEETER TRADING COMPANY, INC, and includes any person acting on behalf of KI with regard to HCR 72665, or performance or termination thereof, at any time from January 1, 2002 to date.

   *b*. "KEETER" means EDWARD L. KEETER, in his capacity as President of KI

2. "The CONTRACT" means the agreement entered between USPS and KI regarding services to be performed on POSTAL SERVICE route HCR 72665, effective as of July 1, 2002.

3. The "ADDITIONAL POSTAL BOXES," or "APBs," means the 52 additional customer postal delivery boxes that on or about December 24, 2003, USPS instructed KI to begin servicing under the CONTRACT as of January 24, 2004.

4. The CONTRACTING OFFICER (or "C.O.") means the USPS employee authorized by USPS to award, change, terminate, and assess damages owed by the Supplier under the terms of, the CONTRACT.

5. The ADMINISTRATIVE OFFICIAl refers to Ms. Linda Orr, as the USPS employee designated by the CONTRACTING OFFICER to have responsibility for operational supervision of KI's performance under the CONTRACT.

Unless a Request identifies a different date or time period, the following Requests refer to the period of January 1, 2002 through December 31, 2005

**REQUESTS**

**1**. KEETER, INC. (a/k/a KEETER INC; hereafter "KI") was incorporated in Arkansas in 1993.

**2**. KEETER INC. changed its name to "KEETER TRADING COMPANY, INC."

**3**. KEETER was the sole owner of KI.

**4**. KEETER was the President of KI

**5**. KEETER was authorized to act and speak on behalf of KI.

**6**. KI was awarded a CONTRACT by the UNITED STATES POSTAL SERVICE (USPS") to supply services under USPS CONTRACT HCR 72665 ("the CONTRACT"), with service to commence on July 1, 2002.

**7**. Under its stated terms, the CONTRACT would expire on June 30, 2006.

**8**. In this suit, KI seeks damages for breach of the CONTRACT by USPS.

**9.** On or about March 10, 2004, KI submitted to the CONTRACTING OFFICER its claims for damages it alleged it was entitled to receive because of breach of the CONTRACT by USPS.

**10.** On April 28, 2004, the CONTRACTING OFFICER issued a Final Decision terminating the CONTRACT for default, retroactively effective as of the close of business on February 20, 2004.

**11.** On April 28, 2004, the CONTRACTING OFFICEr issued a Final Decision denying KI's claims for damages under the CONTRACT.

**12.** On December 24, 2003, the CONTRACTING OFFICER issued a Route Service Order under which the APBS were to be included for servicing under the CONTRACT starting on January 24, 2004.

**13.** KI was informed on a date between December 24 and December 31, 2003 that USPS was assigning the APBs for servicing under the CONTRACT as of January 24, 2004.

**14.** In December, 2003, USPS informed KI that KI would receive $1,087.56 per year in additional compensation for servicing the APBs.

**15.** On January 5, 2004, KI informed the ADMINISTRATIVE OFFICIAL that KI would not be maKIng deliveries to the APBs.

**16.** On a date between December 24 and December 31, 2003, KEETER participated in a telephone conversation with a representative of the CONTRACTING OFFICER, in the course of which KI was informed that it was required by the CONTRACT to provide service for the APBs even if KI did not wish to do so.

**17.** On or about January 2, 2004, KEETER participated in a telephone conversation with a representative of the CONTRACTING OFFICER, in the course of which KI was informed that it was required by the CONTRACT to provide service for the APBs even if KI did not wish to do so.

**18.** On or about January 20, 2004, KEETER participated in a telephone conversation with a representative of the CONTRACTING OFFICER, in the course of which KI was informed that it was required by the CONTRACT to provide service for the APBs even if KI did not wish to do so.

**19**. On or about January 27, 2004, KEETER participated in a telephone conversation with a representative of the CONTRACTING OFFICER, in the course of which KI was informed that it was required by the CONTRACT to provide service for the APBs even if KI did not wish to do so.

**20.** In the telephone conversation with a representative of the CONTRACTING OFFICER on January 2, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, the CONTRACT could be terminated.

**21.** In the telephone conversation with a representative of the CONTRACTING OFFICER on January 2, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, USPS would be entitled to recover from KI its cost for arranging alternative servicing for the APBs.

**22**. In the telephone conversation with a representative of the CONTRACTING OFFICER on January 2, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, USPS would be entitled to deduct its cost for arranging alternative servicing for the APBs from payments that otherwise would be due to KI under the CONTRACT.

**23.** In the telephone conversation with a representative of the CONTRACTING OFFICER on January 28, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, the CONTRACT could be terminated.

**24**. In the telephone conversation with a representative of the CONTRACTING OFFICER on January 28, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, USPS would be entitled to recover from KI its cost for arranging alternative servicing for the APBs.

**25**. In the telephone conversation with a representative of the CONTRACTING OFFICER on January 28, 2004, KEETER was informed by USPS that if KI did not provide service for the APBs, USPS would be entitled to deduct its cost for arranging alternative servicing for the APBs from payments that otherwise would be due to KI under the CONTRACT.

**26.** In late December of 2003 or early January of 2004, KEETER had a telephone conversation with a representative of the CONTRACTing Officer, in which the

CONTRACTing Officer participated and stated his agreement with the C.O. representative as to KI's obligations to provide service for APBs.

**27.** In late December of 2003 or early January of 2004, KEETER had a telephone conversation with a representative of the CONTRACTING OFFICER, in which the CONTRACTING OFFICER participated and stated his agreement with the C.O. representative as to possible consequences to KI if KI did not provide service for the ABPs.

**28**. On January 24, 2004, KEETER met with a POSTAL SERVICE employee who instructed KEETER that KI was required to accept, sort, and deliver mail addressed to the APBs even if KI did not wish to do so.

**29.** On January 27, 2004, KEETER met with the ADMINISTRATIVE OFFICIAL, who stated that KI was required to accept, sort, and deliver mail addressed to the APBs even if KI did not wish to do so.

**30**. KI was instructed by the ADMINISTRATIVE OFFICIAL, orally and/or in writing, to attend, and did attend, a meeting that took place on January 30, 2004, in order to discuss KI's performance of its obligations under the CONTRACT.

**31**. KI was instructed by the ADMINISTRATIVE OFFICIAL, orally and/or in writing, to attend, and did attend, a meeting that took place on January 30, 2004, in order to discuss KI's refusal to provide service for the APBs.

**32.** A meeting between KI and representatives of USPS took place on January 30, 2004, at which KI's performance of the CONTRACT and its refusal to provide service for the APBs were discussed.

**33.** The meeting that took place on January 30, 2004 was attended by KEETER on behalf of KI, and by the ADMINISTRATIVE OFFICIAL and MR. VERL MARTIN on behalf of USPS.

**34**. At the meeting on January 30, 2004, KI was instructed that it must provide service for the APBs even if it did not wish to do so.

**35.** At the meeting on January 30, 2004, KI was instructed that if It did not provide service for the APBs, the CONTRACT could be terminated.

**36.** On January 31, 2004, the CONTRACTING OFFICER issued a Route Service Order increasing the additional compensation to be paid to KI for servicing the APBs by the annual amount of $1,602.72.

**37**. On January 31, 2004, KI stated in a letter it submitted to USPS that KI disagreed with the amount of compensation that USPS proposed to pay KI for providing service for the APBs.

**38**. On January 31, 2004, KI stated in a letter it submitted to USPS that KI was not obligated by the CONTRACT to provide service for the APBs because it had not agreed to do so.

**39.** On February 20, 2004, KEETER returned to USPS the USPS security identification and USPS facility keys that it had been provided by USPS.

**40**.On February 20, 2004, KEETER orally informed USPS that KI would not be providing services under the CONTRACT after that day.

**41**. On February 20, 2004, KI stated in a letter it delivered to USPS that it would not be providing services under the CONTRACT after that day.

**42**. KI did not provide any services under the CONTRACT after February 20, 2004.

**43**. At no time did KI accept mail for delivery to the APBs.

**44**. At no time did KI agree to sort mail addressed to any of the APBs.

**45**. At no time did KI deliver mail to the APBs.

**46**. On at least eighteen days during January and February of 2004, USPS arranged to provide mail service for the APBs by means other than obtaining that service from KI.

**47.** On at least eighteen days during January and February of 2004, USPS incurred expenses to obtain mail services for the APBs by means other than obtaining that service from KI.

**48.** KI asserts that it was not required to service the APBs under the CONTRACT because addition of the APBs constituted a "major change" of the CONTRACT that could not be implemented unless KI agreed to do so.

**49.** USPS informed KI on one or more occasion between December 24, 2003 and February 20, 2004 that addition by USPS of a requirement that KI provide service for the APBs did not constitute a "major change" of the CONTRACT.

**50**. USPS informed KI on more than one occasion between December 24, 2003 and February 20, 2004 that KI must continue to provide service under the CONTRACT, whether or not inclusion in the CONTRACT of service for the APBs constituted a "major change" of the CONTRACT.

**51.** KI asserts that it was entitled to cease performance under the CONTRACT because USPS breached the CONTRACT by seeking to compel KI to provide service for the APBs without KI's agreement to do so.

**52.** KI asserts that it was entitled to cease performance under the CONTRACT because USPS breached the CONTRACT when it deducted from one or more contractual payment to KI an amount that USPS claimed as costs it incurred in order to obtain alternative service for the APBs when KI declined to provide that service.

**53**. At no time between December 24, 2003 and February 20, 2004 did KI or KEETER travel to or examine or survey the APBs in order to determine their precise locations or the amount of time that would be needed to provide service for them under the CONTRACT.

**54.** On February 20, 2004, KI gave written notice to USPS that it would not thereafter provide services under HCR 72665.

**55**. KI did not make any deliveries to the APBs under the CONTRACT.

**56.** The corporate charter of KEETER INC. was revoked by the Arkansas Secretary of State, effective December 31, 2004.

**57.** The corporate charter of KI was reinstated effective April 27, 2005.

**58**. The documents provided by KI's counsel to counsel for USPS, that were thereafter submitted to the Court herein as the "KEETER BANKRUPTCY FILES," are true and correct copies of *(1)* documents filed by or on behalf of KEETER, on or about July 26, 2005, in the UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF ARKANSAS; and *(2)* Orders and instructions issued by the Bankruptcy Court in connection with that filing.

December 5, 2006

**DOUGLAS J. COLTON**
U.S. POSTAL SERVICE
475 L'ENFANT PLAZA, SW
ROOM 6323
WASHINGTON, DC 20260-1127
TEL: (202) 268-6408
FAX: (202) 268-5287

**COUNSEL FOR DEFENDANT**
**THE UNITED STATES POSTAL SERVICE**

## CERTIFICATE OF SERVICE

I certify that on December 5, 2006, the foregoing DEFENDANT'S REQUESTS FOR ADMISSIONS (FACTS) was served on plaintiffs herein, by placing a true and correct copy thereof in the United States Mail, First Class postage prepaid, addressed to:

**CHRISTOPHER O'HARA CARTER, ESQ.**
**215 OLD MAIN STREET**
**YELLVILLE, ARKANSAS 72687**

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**No. 05-243 C**

| | | |
|---|---|---|
| ************************* | ) | |
| EDWARD KEETER AND | ) | |
| KEETER TRADING COMPANY, INC., | ) | |
| *Plaintiffs* | ) | **Case 1:05-cv-00243-LJB** |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| *Defendant* | ) | |
| ************************* | ) | |

## DEFENDANT'S REQUESTS FOR ADMISSION (DOCUMENTS)

Pursuant to Rule 36 of the *Federal Rules of Civil Procedure*, defendant The United States (the *U.S. Postal Service,* or USPS), requires that you Admit or Deny the authenticity of documents, as further set forth herein defined herein.

## DEFINITIONS AND INSTRUCTIONS

1 ***a.*** "You," or "plaintiff," or "KI" means plaintiff herein KEETER, INC (also known as "KEETER INC."), and includes any person acting on behalf of KI with regard to HCR 72665, or performance or termination thereof, at any time from January 1, 2002 to date.

***b.*** "Keeter" means EDWARD L. KEETER, in his capacity as President of KI.

2. "The Contract" means the agreement entered between USPS and KI regarding services to be performed on Postal Service route HCR 72665,effective as of July 1, 2002. As used herein, "the Contract" refers collectively to: *(a)* the specific provisions that state the terms, conditions, rights, and obligations of the parties to the Contract; *(b)* documents created by USPS

and received by KI that constitute the USPS solicitation of a proposal (bid) by KI to be awarded a contract for the described services, or that provide or request additional information in connection with KI's proposal for that contract; and *(c)* documents submitted by KI to USPS as part of KI's proposal for the Contract, or in response to a request by USPS for additional information, prior to or in connection with award of the Contract to KI.

3. A "5500" means a USPS Form 5500 "CONTRACT IRREGULARITY REPORT," on which a Postal Service employee has noted that a contract irregularity apparently occurred. Forms 5500 can vary slightly in format, but are basically similar to that found at, *e.g.,* **USPS 0000**

4. A "document" is any form of recorded information. Each document regarding which a Request is made herein is listed under one (or more) of the following categories, and you are requested to Admit or Deny that the document falls within each category under which it is listed:

***a.*** **"CONTRACT LANGUAGE DOCUMENT"**: a document containing terms and provisions that KI acknowledges are part of, or are incorporated by reference into, the Contract to provide services under HCR 78665 that KI entered with USPS.

***b.*** **"KI DOCUMENT"**: a document that was authored and/or signed by KI, and that was conveyed by KI to USPS on or about the date indicated on the document. (A KI Document may attach documents that are not KI Documents.)

***c.*** **"USPS DOCUMENT"**: a document that was created (or received), and has been maintained, by USPS, and that meets the definition of RECORDS OF REGULARLY CONDUCTED ACTIVITIES set forth in *F.R Ev.* Rule 803(6), in that: the document: *(a)* was created (or received) by USPS in the course of its regularly-conducted business and in accordance with its regular and routine business practices; *(b)* if created by USPS, was written (or was based on information transmitted or recorded by) a USPS employee who had knowledge thereof, *(c)* if created by USPS, reports or records information or events occurring at or near the time it was created; and *(d)* has been maintained by USPS in accordance with its regular business practices.

Your acknowledgement that a document is a "USPS document" does not constitute admission that the document is relevant herein.

***d.*** **"USPS COMMUNICATION":** a USPS Document that KI acknowledges was received by it, on or about the date indicated on the document.

***e.*** **"USPS EMAIL":** a USPS document that was exchanged *via* email between the USPS employees indicated on the email, on or about the date the email bears. A USPS Email may electronically attach other such messages and documents that are not email messages.

***f.*** **"RETURNED 5500":** a USPS Document that is a Form 5500 regarding HCR 72665 that was: issued by USPS on or about the date of the events it records; was thereafter received by KI and responded to by KI in its Section 2; and signed on behalf of KI and returned to USPS.

The documents regarding which these Requests are made are identified herein as **"USPS #XXX (--ZZZ)**, where **XXX** is the initial page of that document (or group of associated pages) as noted on each page in the set of documents previously provided in electronic form to plaintiff as **DEFENDANTS' RULE 26(A) DISCLOSURES** ("the Disclosures"). Many documents exist in multiple copies within the Disclosures. Some copies of documents included in the Disclosures contain different notes, annotations, or other entries than are found on the identified copy. A **REQUEST TO ADMIT** a particular identified document encompasses all identical copies of that document contained in the Disclosures, but admission regarding that document will not waive any right to deny or object to copies to the extent that they contain materially different notes or markings than are found on the identified document.

For convenience, documents that share substantially the same format, and that contain similar information but for different dates, may herein be grouped together in a

single Request. All documents listed in the same Request may be Admitted or Denied collectively, unless your response is not the same for each of those documents.

## REQUESTS TO ADMIT DOCUMENTS

The following Requests each require that you Admit or Deny that the document(s) identified therein meets the definition, *above,* of the category of document under which it is listed. The definitions of **RETURNED 5500S, USPS COMMUNICATIONS,** and **USPS EMAILS** each include specification that those documents are ***also*** **USPS DOCUMENTS.** Documents may be listed under more than one category. If you Deny that any identified **USPS COMMUNICATION**, **USPS EMAIL**, or **RETURNED 5500** meets the definition for that category, please state whether you Admit or Deny that the document is a **USPS DOCUMENT.**

### 1. CONTRACT LANGUAGE

***a.*** USPS #15-029
***b.*** USPS #34-35
***c.*** USPS #36
***d.*** USPS #38-40
***e.*** USPS #49-50
***f.*** USPS #56-57
***g.*** USPS #58
***h***. USPS #78-112
***i.*** USPS #191-192

2. **KI DOCUMENTS**

***a***. USPS #181
***b.*** USPS #183
***c.*** USPS #201-202
***d***. USPS #216-217
***e***. USPS #322-323
***f.*** USPS #530 - 534

3. **USPS DOCUMENTS**

***a***. USPS #58
***b.*** USPS #67-71
***c.*** USPS #117
***d.*** USPS #179
***e***. USPS #184-185
***f.*** USPS #186
***g***. USPS #187
***h***. USPS #188
***i.*** USPS #191
***j.*** USPS #192
***k.*** USPS #193
***l.*** USPS #194
***m.*** USPS #196
***n.*** USPS #200
***o***. USPS #203
***p.*** USPS #206
***q.*** USPS #225
***r.*** USPS #226
***s.*** USPS #227
***t***. USPS #228
***u.*** USPS #229
***v.*** USPS #230-231
***w***. USPS #246
***x.*** USPS #258-262
***y.*** USPS #263
***z.*** USPS #274

***aa***. USPS #290-291
***bb***. USPS #293
***cc***. USPS #294
***dd.*** USPS #300
***ee***. USPS #313-314
***ff.*** USPS #315
***gg***. USPS #317-318
***hh.*** USPS #321
***ii.*** USPS #324-325
***jj.*** USPS #327
***kk***. USPS #328
***ll.*** USPS #: 315, 316, 330, 331,334, 336, 338. 340, 343, 345, 347, 347, 349, 351, 354, 355, 357, 358, 361, 362, 455
***mm***. USPS #366-409
***nn.*** USPS #419
***oo***. USPS #413
***pp.*** USPS #414
***qq.*** USPS #417
***rr.*** USPS #418
***ss***. USPS #419
***tt.*** USPS #459-461
***uu.*** USPS #536-538

**4. <u>USPS COMMUNICATIONS</u>**
***a***. USPS #179
***b***. USPS #184-185
***c.*** USPS #196
***d.*** USPS #225
***e.*** USPS #258-262
***f.*** USPS #317-318
***g***. USPS #536-538

5. **USPS EMAIL**

***a.*** USPS #44-45
***b***. USPS #73
***c.*** USPS #180 (*attaching* #181 )
***e.*** USPS #189 - 190
***f.*** USPS #275
***g.*** USPS #279 (*attaching* #280)
***h***. USPS #288-289
***i.*** USPS #517
***j.*** USPS #518-519

6. **RETURNED 5500s**

***a.*** USPS #: 218, 219, 220, 221, 222, 223, 235, 237, 239, 241, 243, 245, 248, 250, 253, 255, 257

December 1, 2006

______________________________

DOUGLAS J. COLTON
U.S. Postal Service
475 L'ENFANT PLAZA, SW
ROOM 6323
WASHINGTON, DC 20260-1127
TEL: (202) 268-6408
FAX: (202) 268-5287
*douglas.j.colton@usps.gov*

**COUNSEL FOR DEFENDANT**
**THE UNITED STATES POSTAL SERVICE**

I certify that the foregoing DEFENDANT'S REQUESTS FOR ADMISSION (DOCUMENTS) was served on plaintiff herein, on December 1, 2006, by electronic mail transmission of it, with written consent from Counsel for plaintiff, to Counsel's known email address; and by placing a true copy thereon it the United States Mail, First Class postage prepaid, addressed to:

CHRISTOPHER CARTER, ESQ.
P.O. BOX 300
YELLVILLE, AR 72687-0300



______________________________

UNITED STATES POSTAL SERVICE

# CONTRACT ROUTE STATEMENT, SCHEDULE AND SPECIFICATIONS



| 1. CONTRACT | 2. ANNUAL MILES | 3. ANNUAL HOURS | 4. BEGIN CONTRACT TERM | 5. END CONTRACT TERM |
|---|---|---|---|---|
| 72665 | 31,458.7 | 1,894 | 01-JUL-02 | 30-JUN-06 |

6. FOR MAIL SERVICE IN OR BETWEEN — CITY & STATE: YELLVILLE, AR — CITY & STATE: PEEL, AR

7. TYPE OF ROUTE: Regular

8. TYPE OF SERVICE: Combination (Box Delivery/Transportation) (Box Delivery)

9. BOXES SERVED: 249

10. CASING RESPONSIBILITY: CONTRACTOR

11. VEHICLES

| QTY. | DESCRIPTION | LENGTH | CUBES | PAYLOAD |
|---|---|---|---|---|
| 1 | Pickup+camper/station wagon/car | | 90 | 1680 |

12. ADMINISTRATIVE P.M.: YELLVILLE AR

13. P&D/CSD: TYLER MSC

14. CLUSTER: LITTLE ROCK DIVISION

15. NAME & ADDRESS OF CONTRACTOR:
KEETER INC
807 MC4018
YELLVILLE AR 72687-9081

870-449-6269

16. NAME & ADDRESS OF SUBCONTRACTOR:

17. DOT NUMBER:

18. DOT NUMBER:

19. SUMMARY OF CONTRACT ACTIONS

20. PAYMENT METHOD: Per Annum

| ORDER NO. | ROUTE ORDER NO. | TYPE OF ACTION | EFFECTIVE | COST SEG | CURRENT ANNUAL UNITS | CURRENT CONTRACT RATE | CURRENT RATE PER MILE |
|---|---|---|---|---|---|---|---|
| 752-04422-02 | | SOLICIT REGULAR SERVICE | 01-JUL-02 | A | 31,458.70 | $39,487.92 | 1.25523 |

PS Form 5443
November 1996

Effective 01-JUL-02

Section B. Statement of Work and Specifications

HCR 72665, YELLVILLE, AR - PEEL, AR

B.1 SCHEDULE, FREQUENCY, AND SERVICE REQUIREMENTS

B.1.1 Schedule

| A 1 K7 | PART TRIP FREQUENCY | TIME ZONE | | A 2 K7 |
|---|---|---|---|---|
| 0815 | Lv YELLVILLE, AR | CT | Ar | 1300 |
| 0825 | Ar SUMMIT, AR | CT | Lv | -- |
| 0830 | Lv SUMMIT, AR | CT | Ar | -- |
| 0930 | Ar PEEL, AR | CT | Lv | 1200 |
| 0935 | Lv PEEL, AR | CT | Ar | 1155 |
| 1055 | Ar PEEL, AR | CT | Lv | 1130 |
| 56.7 | MILEAGE | | | 47.1 |

B.1.2 Frequency Explanations

| FREQUENCY IDENTIFICATION | | ANNUAL TRIPS |
|---|---|---|
| K7 | Daily except Sundays and Holidays | 303.07 |

B.1.3 Service Requirements

SERVICE

PART A:

| | |
|---|---|
| (N) ON HWY 14 TO SUMMIT PO | 1.8 mi. |
| ARRIVE SUMMIT AR P | |
| R ON HWY 14 TO HWY 125 | 13.2 mi. |
| R ON HWY 215 TO PEEL P O | 7.3 mi. |
| R ON HWY 125 TO CR 259 (LOCUST RD) | 2.2 mi. |
| R ON 259 (OLD LOCUST RD) TO SAYLORS BOX (88) | 4.6 mi. |
| TURN AROUND & RETRACE TO POSSUM TROT (CR227) | 1.8 mi. |
| L ON POSSUM TROT (CR227) TO CR 231 | 1.4 mi. |
| R ON CR 231 TO BOWDIN BOX | 1.0 mi. |
| R ON CR 232 TO SHERMAN (HARDSHIP BOX) AND RETRACE TO POSSUM | 2.0 mi. |
| L ON CR 231 TO CR 227 | .7 mi. |
| R ON POSSUM TROT RD TO CAPT JACK'S | 2.5 mi. |
| R THROUGH THOMPSON'S & RETRACE | .7 mi. |
| R ON POSSUM TROT TO HUJU BOX (1.0) AND RETRACE PAST HOMPSON'S ENTRACE | |