An extra trip is an additional trip of service operated on an infrequent time basis over the same route or part as normally provided under the terms of the contract. Extra trips shall be negotiated in advance of the performance when the contracting officer deems it appropriate. However, the contracting officer may order the supplier to perform such extra service at pro rata pay. If no rate of pay for extra trips has been negotiated in advance, the contractor shall nonetheless perform such extra trips as are ordered by the contracting officer and may, on an after-the-fact basis, obtain a lump sum reimbursement for the difference between costs incurred as a direct result of performing such extra trips and pro-rata payment for such trips, provided that such claims costs are adequately supported by documentary evidence furnished to the contracting officer. Claims for compensation above pro rata pay for extra trips must be filed in writing with the contracting officer, accompanied by full supporting documentation of costs, no later than 90 days after the performance of such extra trips. When the contracting officer has ordered several extra trips under a single order, the 90-day period begins on the date of performance of the last trip performed under such order. Failure to agree to such compensation above pro rata pay shall be resolved under the *Claims and Disputes* clause.

c. **Detours**

When the regular line of travel of a contract route is impassable and the supplier performs full service over another and longer line of travel, the supplier's compensation shall be equitably increased for such service, provided, however, that such increase:

(1) comprises at least $1.00 (one dollar) in any Postal accounting period, and

(2) does not exceed an amount determined by multiplying the additional miles actually traveled by the rate per mile that applies to the trip on which the detour was made, determined by dividing the regular compensation for the trip by the regular number of miles.

Note: No payments will be made with respect to any detour not reported to the contracting officer or the contracting officer's designee within 90 days after the detoured service is performed.

d. The supplier shall proceed diligently in accordance with service changes and extra trips ordered unilaterally by the contracting officer. Disputes concerning such orders shall be resolved pursuant to the *Claims and Disputes* clause.

e. **Liquidated Damages**

(1) If this is a Highway Transportation Contract and it is terminated for convenience due to the implementation of Delivery Point Sequence, Reclassification, Priority Mail Processing Centers, or Integrated Mail Handling Systems, without fault on the part of the supplier, liquidated damages for the termination will be established as one-twelfth of the annual rate.

In the event of a partial termination for convenience or other service curtailment for these causes, liquidated damages shall be established in the same proportion as the dollar amount of the contract rate reduction bears to the amount established above.

(2) In all cases, if this is a Highway Transportation Contract or a Domestic Water Transportation Contract and is terminated for convenience without fault on the part of the supplier, liquidated damages for the termination will be established as:

(a) One-third of the annual rate (if during the first two years), or
(b) One-sixth of the annual rate (if during the third year), or
(c) One-twelfth of the annual rate (if during the fourth year).

In the event of a partial termination for convenience or other service curtailment liquidated damages shall be established in the same proportion as the dollar amount of the contract rate reduction bears to (a), (b), or (c) above (as applicable).

**H.9 EXAMINATION OF RECORDS (Clause B-14) (January 1997)**

a. The Postal Service and its authorized representatives will, until three years after final payment under this contract, or for any shorter period specified for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the supplier involving transactions related to this contract.

b. The supplier agrees to include in all subcontracts under this contract a provision to the effect that the Postal Service and its authorized representatives will, until three years after final payment under the subcontract, or for any shorter specified period for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the subcontractor involving transactions related to the subcontract. The term subcontract as used in this clause excludes:

   (1) Purchase orders; and

   (2) Subcontracts for public utility services at rates established for uniform applicability to the general public.

**H.10 ADVERTISING OF CONTRACT AWARDS (Clause B-25) (January 1997) (Modified)**

Except with the contracting officer's prior approval, the supplier agrees not to refer in its commercial advertising to the fact that it was awarded a Postal Service contract or to imply in any manner that the Postal Service endorses its products or services.

**H.11 ORDER OF PRECEDENCE (Clause B-29) (January 1997)**

Any inconsistency in the provisions of a solicitation, a contract awarded under a solicitation, or a contract awarded without the issuance of a written solicitation will be resolved by giving precedence in the following order:

a. The Schedule and Statement of Work

b. The solicitation provisions and instructions.

c. Special clauses and general clauses.

d. Provisions contained in attachments or incorporated by reference.

**H.12 PERMITS AND RESPONSIBILITIES (SERVICES) (Clause B-30) (January 1997)**

The supplier is responsible, without additional expense to the Postal Service, for obtaining any necessary licenses and permits, and for complying with any applicable federal, state, and municipal laws, codes, and regulations in connection with the performance of the contract. The supplier is responsible for all damage to persons or property, including environmental damage, that occurs as a result of its omission(s) or negligence. The supplier must take proper safety and health precautions to protect the work, the workers, the public, the environment, and the property of others.

**H.13 CHANGES IN CORPORATE OWNERSHIP OR OFFICERS (Clause B-68) (January 1997)**

a. This clause applies only if the supplier is a corporation and it holds no other regular highway transportation contracts or the aggregate annual rate dollar value of any regular highway transportation contracts it holds is less

than $150,000.

b. A principal owner is any individual, partnership, corporation, or other entity which holds 25% or more of the supplier's stock. Corporate officers are the President, Vice President, and Secretary.

c. The supplier shall furnish the contracting officer, in writing, the names of its principal owners and its corporate officers before contract award, renewal, or novation.

d. Except in the case of death or legal incapacity of one or more of the principal owners or corporate officers, the supplier must notify the contracting officer in writing not less than 30 days prior to any planned change in the principal owners or corporate officers.

e. In the event of death or incapacity of one or more of the principal owners or corporate officers, the supplier must notify the contracting officer in writing within 30 days.

**H.14 RELEASE OF SUPPLIER (Clause B-70) (January 1997)**

a. The contracting officer may release an individual sole-proprietor supplier from the contract for reasons of physical disability which prohibit the supplier from adequately operating the route, or which endanger the supplier's life if operation of the route continues, if:

(1) The supplier applies to the contracting officer for a release;
(2) The contracting officer determines that a release will be in the interest of the Postal Service; and,
(3) The Postal Service secures a new contract.

b. A release under this clause is not a termination for convenience, and the supplier expressly waives any claim for liquidated damages for such release.

**H.15 TRAILER DAMAGE (Clause B-73) (January 1997)**

a. General

(1) The supplier is liable for any damage to a trailer owned or leased by the Postal Service or a third party caused by a negligent act or omission of the supplier or its subcontractors.

(2) The Postal Service shall be liable for any damage to a trailer owned or leased by the supplier caused by a negligent act or omission of the Postal Service.

b. *Minor Repairs to Trailers*

(1) The supplier shall perform minor repairs to all trailers used under this contract, including trailers furnished by the Postal Service, when such repairs are necessary for the safe completion of a trip of service. Minor repairs include repair or replacement of trailer tires. Tire carcasses shall be returned to the Postal Service.

(2) The Postal Service shall reimburse the supplier for the cost of performing any repairs required under paragraph b which are reasonable, customary, and fully documented.

c. *Major Repairs to Trailers.* The supplier is responsible for all major repairs to its trailers. If a trailer furnished by the Postal Service incurs major damage en route, and requires towing for repair, the supplier shall promptly notify the Administrative Official of these facts. Upon direction of the Administrative Official, the supplier shall tow the trailer, either to the nearest Postal Service Bulk Mail Center or to a repair facility. The Postal Service shall

reimburse the supplier its costs incurred for towing service, so long as such costs are reasonable, customary and documented.

**H.16 PROTECTION OF THE MAIL (Clause B-77) (January 1997)**

The supplier must protect and safeguard the mail from loss, theft, or damage while it is in the supplier's custody or control and prevent unauthorized persons from having access to the mail.

**H.17 RENEWAL (Clause B-78) (January 1997)**

This contract may be renewed by mutual agreement of the parties.

**H.18 FORFEITURE OF COMPENSATION (Clause B-79) (January 1997)**

If the supplier fails to perform a trip for any reason, the supplier shall forfeit the compensation otherwise due for that trip. If the supplier fails to perform a trip, and such failure is due to the fault or negligence of the supplier or of its subcontractors, the supplier shall be liable for all damages actually suffered by the Postal Service by reasons of such failure.

**H.19 LAWS AND REGULATIONS APPLICABLE (Clause B-80) (January 1997)**

This contract and the services performed under it are subject to all applicable federal, state, and local laws and regulations. The supplier shall faithfully discharge all duties and obligations imposed by such laws and regulations, and shall obtain and pay for all permits, licenses, and other authorities required to perform this contract.

**H.20 INFORMATION OR ACCESS BY THIRD PARTIES (Clause B-81) (January 1997)**

The Postal Service retains exclusive authority to release any or all information about mail matter in the custody of the supplier and to permit access to that mail in the custody of the supplier. All requests by non-postal individuals (including employees of the supplier) for information about mail matter in the custody of the supplier or for access to mail in the custody of the supplier must be referred to the contracting officer or his or her designee..

**H.21 ACCESS BY OFFICIALS (Clause B-82) (January 1997)**

The supplier shall deny access to the cargo compartment of a vehicle containing mail therein to Federal, state or local officials except at a postal facility and in the presence of a postal employee, unless to prevent damage to the vehicle or its contents.

**H.22 GRATUITIES OR GIFTS (Clause 1-5) (January 1997)**

a. The Postal Service may terminate this contract for default if, after notice and a hearing, the Postal Service Board of Contract Appeals determines that the supplier or the supplier's agent or other representative:

(1) Offered or gave a gratuity or gift (as defined in 5 CFR 2635) to an officer or employee of the Postal Service;
and

(2) Intended by the gratuity or gift to obtain a contract or favorable treatment under a contract.

b. The rights and remedies of the Postal Service provided in this clause are in addition to any other rights and remedies provided by law or under this contract.

**H.23 CONTINGENT FEES (Clause 1-6) (January 1997)**

a. The supplier warrants that no person or selling agency has been employed or retained to solicit or obtain this contract for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide, established commercial or selling agencies employed by the supplier for the purpose of obtaining business.

b. For breach or violation of this warranty, the Postal Service has the right to annul this contract without liability or to deduct from the contract price or otherwise recover the full amount of the commission, percentage, brokerage fee, or contingent fee.

**H.24 NON-DISCLOSURE OF ADDRESS INFORMATION (Clause 1-7) (January 1997)**

a. *General*: This contract requires the supplier to have access to address information (i.e., addresses and return addresses) that appears on pieces of mail. To ensure the confidentiality of this address information, except as permitted by this clause, no supplier or subcontractor, and no employee or former employee of any supplier or subcontractor may, at any time, during or after the completion of this contract, disclose to any third party any address information obtained in the performance of this contract. This contract does not give the supplier proprietary interest in address information, and the suppliers right to have, use, and disclose address information is restricted by the terms of this clause.

b. *Restriction of Access*. The supplier agrees to control and restrict access to address information to persons who need it to perform work under this contract, and to prohibit the reproduction of this information.

c. *Confidentiality and Non-Disclosure Agreement*. The supplier must require an employee (including any employee of a subcontractor) to sign the following agreement before the employee is granted access to address information:

CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

I agree to hold in confidence any and all address information (i.e., addresses and return addresses) disclosed by the Postal Service or otherwise obtained or developed in the course of performance under Postal Service contract No. _______. I understand that no address information may be disclosed to any third party without prior written consent of the United States Postal Service.

_______________________________ _______________________

Signature Date

d. *Legal Demands for Information*. If a legal demand is made for address information (such as by subpoena), the supplier will immediately notify the contracting officer and the nearest office of the postal inspectors. After notification, the Postal Service will then determine whether and to what extent, to resist the legal demand. Should the Postal Service give in to or unsuccessfully resist a legal demand, the supplier may, with the written permission of the contracting officer, release that address information specifically requested by the legal demand.

e. *Indemnification*. The supplier will indemnify the Postal Service, its employees and agents, against all liability (including costs and fees) for damages arising out of the intentional or negligent disclosure of address information other than as permitted by this clause.

f. *Subcontracts*. The supplier must include this clause, modified as necessary, in any subcontract.

**H.25 SMALL, MINORITY, AND WOMAN-OWNED BUSINESS SUBCONTRACTING REQUIREMENTS (Clause 3-1) (February 1999)**

a. All suppliers except small businesses must submit a subcontracting plan that is specific to this contract, and that separately addresses subcontracting with small, minority, and woman-owned businesses. A plan approved by the Postal Service must be included in and made a part of the contract. Lack of an approved plan may make the supplier ineligible for award. A subcontract is defined as any agreement (other than one involving an employer-employee relationship) entered into by a Postal Service supplier or subcontractor calling for supplies or services required for performance of the contract or subcontract.

b. The supplier's subcontracting plan must include the following:

(1) Goals, in terms of percentages of the total amount of this contract that the supplier will endeavor to subcontract to small, minority, and woman-owned businesses. The supplier must include all subcontracts that contribute to contract performance, and may include a proportionate share of supplies and services that are normally allocated as indirect costs.

(2) A statement of the:

(a) Total dollars planned to be subcontracted under this contract;
And
(b) Total of that amount planned to be subcontracted to small, minority, and woman-owned businesses.

(3) A description of the principal types of supplies and services to be subcontracted under this contract, identifying the types planned for subcontracting to small, minority, and woman-owned businesses.

(4) A description of the method used to develop the subcontracting goals for this contract.

(5) A description of the method used to identify potential sources for solicitation purposes and a description of efforts the supplier will make to ensure that small, minority, and woman-owned businesses have an equitable opportunity to compete for subcontracts.

(6) A statement of whether the offer included indirect costs in establishing subcontracting goals for this contract and a description of the method used to determine the proportionate share of indirect costs to be incurred with small, minority, and woman-owned businesses.

(7) The name of the individual employed by the supplier who will administer the subcontracting program and a description of the individual's duties.

(8) Assurances that the supplier will require all subcontractors receiving subcontracts in excess of $1,000,000 to adopt a plan similar to the plan agreed to by the supplier.

(9) A description of the types of records the supplier will maintain to demonstrate compliance with the requirements and goals in the plan for this contract. The records must include at least the following:

(a) Source lists, guides, and other data identifying small, minority, and woman-owned businesses

(b) Organizations contacted in an attempt to locate sources that are small, minority, and woman-owned businesses

(c) Records on each subcontract solicitation resulting in an award of more than $100,000, indicating whether small, minority, or woman-owned businesses were solicited and if not, why not; and

(d) Records to support subcontract award data, including the name, address, and business size of each subcontractor.

c. *Reports.* The supplier must provide reports on subcontracting activity under this contract on a calendar-quarter basis. The report must be one of the types described in Clause 3-2, *Participation of Small, Minority, and Woman-owned Businesses.*

**H.26 PARTICIPATION OF SMALL, MINORITY, AND WOMAN-OWNED BUSINESSES (Clause 3-2) (February 1999)**

a. The policy of the Postal Service is to encourage the participation of small, minority, and woman-owned business in its purchases of supplies and services to the maximum extent practicable consistent with efficient contract performance. The supplier agrees to follow the same policy in performing this contract.

b. Subject to the agreement of the supplier and the Postal Service, the supplier will report subcontracting activity:

(1) Showing direct subcontracting awards made under this contract; or

(2) Showing subcontracting activity that is allocable to this contract using generally accepted accounting practices; or

(3) A combination of the methods listed above.

c. The supplier will submit a report to the contracting officer within 15 calendar days after the end of each calendar-year quarter, describing all subcontract awards to small, minority, woman-owned businesses. The contracting officer may require more frequent reports.

**H.27 BANKRUPTCY (Clause 6-1) (January 1997)**

In the event the supplier enters into proceedings relating to bankruptcy, whether voluntary or involuntary, the supplier will furnish, by certified mail, written notification of the bankruptcy to the contracting officer responsible for administering the contract. The notification must be furnished within five days of the initiation of the bankruptcy proceedings. The notification must include the date on which the bankruptcy petition was filed, the court in which the petition was filed, and a list of the Postal Service contracts and contracting officers for all Postal Service contracts for which final payment has not yet been made. This obligation remains in effect until final payment under this contract.

**H.28 FEDERAL, STATE AND LOCAL TAXES (Clause 7-6) (January 1997) (Modified)**

a. *Definitions.*

(1) *Contract date.* The effective date of this contract or modification.

(2) *All Applicable Federal, State, and Local Taxes and Duties.* All taxes and duties in effect on the contract date, that the taxing authority is imposing and collecting on the transactions or property covered by this contact.

(3) *After-imposed Federal Tax.* Any new or increased federal excise tax or duty, or tax that was exempted or excluded on the contract date but whose exemption is revoked or reduced during the contract period, on the transactions or property covered by this contract that the contractor is required to pay or bear as a result of legislative, judicial, or administrative action taking effect after the contract date. It does not include social security tax or other employment taxes.

(4) *After-relieved Federal Tax.* Any amount of federal excise tax or duty, except social security or other employment taxes, that would otherwise have been payable on the transactions or property covered by this

contract, but which the supplier is not required to pay or bear, or for which the supplier obtains a refund or drawback, as the result of legislative, judicial, or administrative action taking effect after the contract date.

(5) *Local Taxes.* Includes taxes imposed by a possession of the United States or by Puerto Rico.

b. The contract price includes all applicable federal, state, and local taxes and duties.

c. The contract price will be increased by the amount of any after-imposed federal tax, provided the supplier warrants in writing that no amount for a newly imposed federal excise tax or duty or rate increase was included in the contract price as contingency reserve or otherwise.

d. The contract price will be decreased by the amount of any after-relieved federal tax.

e. The contract price will be decreased by the amount of any federal excise tax or duty, except social security or other employment taxes, that the supplier is required to pay or bear, or does not obtain a refund of, through the supplier's fault, negligence, or failure to follow instructions of the contracting officer.

f. Deleted.

g. The supplier must promptly notify the contracting officer of all matters relating to any federal excise tax or duty that reasonably may be expected to result in either an increase or decrease in the contract price and must take appropriate action as the contracting officer directs

h. The Postal Service will, without liability, furnish evidence appropriate to establish exemption from any federal, state, or local tax when the supplier requests such evidence and a reasonable basis exists to sustain the exemption.

**H.29 CONVICT LABOR (Clause 9-1) (January 1997)**

In connection with the work under this contract, the supplier agrees not to employ any person undergoing sentence of imprisonment, except as provided by Public Law 89-176, September 10, 1965 (18 U.S.C. 4082 (c)(2)) and Executive Order 11755, December 29, 1973.

**H.30 EQUAL OPPORTUNITY (Clause 9-7) (January 1997)**

a. The supplier may not discriminate against employees or applicants because of race, color, religion, sex, or national origin. The supplier will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to race, color, religion, sex, or national origin. This action must include, but not be limited to, employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The supplier agrees to post in conspicuous places, available to employees and applicants, notices provided by the contracting officer setting forth the provisions of this clause.

b. The supplier must, in all solicitations or advertisements for employees placed by it or on its behalf, state that all qualified applicants will be considered for employment without regard to race, color, religion, sex, or national origin.

c. The supplier must send to each union or workers' representative with which the supplier has a collective bargaining agreement or other understanding, a notice, provided by the contracting officer, advising the union or workers' representative of the supplier's commitments under this clause, and must post copies of the notice in conspicuous places available to employees and applicants.

d. The supplier must comply with all provisions of Executive Order (EO) 11246 of September 24, 1965, as amended, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e. The supplier must furnish all information and reports required by the Executive Order, and by the rules, regulations, and orders of the Secretary, and must permit access to the supplier's books, records, and accounts by the Postal Service and the Secretary for purposes of investigation to ascertain compliance with these rules, regulations, and orders.

f. If the supplier fails to comply with this clause or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended, in whole or in part; the supplier may be declared ineligible for further contracts in accordance with the Executive Order; and other sanctions may be imposed and remedies invoked under the Executive Order, or by rule, regulation, or order of the Secretary, or as otherwise provided by law.

g. The supplier must insert this clause, including this paragraph g, in all subcontracts or purchase orders under this contract unless exempted by Secretary of Labor rules, regulations, or orders issued under the Executive Order. The supplier must take such action with respect to any such subcontract or purchase order as the Postal Service may direct as a means of enforcing the terms and conditions of this clause (including sanctions for non-compliance); provided, however, that if the supplier becomes involved in, or is threatened with, litigation as a result, the supplier may request the Postal Service to enter into the litigation to protect the interest of the Postal Service.

h. Disputes under this clause will be governed by the procedures in 41 CFR 60-1.1.

**H.31 EQUAL OPPORTUNITY PREAWARD COMPLIANCE OF SUBCONTRACTS (Clause 9-9) (January 1997)**

The supplier may not enter into a first-tier subcontract for an estimated or actual amount of $1 million or more without obtaining in writing from the contracting officer a clearance that the proposed subcontractor is in compliance with equal opportunity requirements and therefore eligible for award.

**H.32 SERVICE CONTRACT ACT (Clause 9-10) (January 1997)**

a. This contract is subject to the Service Contract Act of 1965, as amended (41 U.S.C. 351 et seq.), and to the following provisions and all other applicable provisions of the Act and regulations of the Secretary of Labor issued under the Act (29 CFR Part 4).

b.

(1) Each service employee employed in the performance of this contract by the supplier or any subcontractor must be (a) paid not less than the minimum monetary wages and (b) furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor or an authorized representative, as specified in any wage determination attached to this contract.

(2)

(a) If a wage determination is attached to this contract, the contracting officer must require that any class of service employees not listed in it and to be employed under the contract (that is, the work to be performed is not performed by any classification listed in the wage determination) be classified by the supplier so as to provide a reasonable relationship (that is, appropriate level of skill comparison) between the unlisted classifications and the classifications in the wage determination. The conformed class of employees must be paid the monetary wages and furnished the fringe benefits determined under this clause. (The information collection requirements contained in this paragraph (b) have been

approved by the Office of Management and Budget under OMB control number 1215-0150.)

(b) The conforming procedure must be initiated by the supplier before the performance of contract work by the unlisted class of employees. A written report of the proposed conforming action, including information regarding the agreement or disagreement of the authorized representative of the employees involved or, if there is no authorized representative, the employees themselves, must be submitted by the supplier to the contracting officer no later than 30 days after the unlisted class of employees performs any contract work. The contracting officer must review the proposed action and promptly submit a report of it, together with the agency's recommendation and all pertinent information, including the position of the supplier and the employees, to the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, for review. Within 30 days of receipt, the Wage and Hour Division will approve, modify, or disapprove the action, render a final determination in the event of disagreement, or notify the contracting officer that additional time is necessary.

(c) The final determination of the conformance action by the Wage and Hour Division will be transmitted to the contracting officer, who must promptly notify the supplier of the action taken. The supplier must give each affected employee a written copy of this determination, or it must be posted as a part of the wage determination.

(d)

(i) The process of establishing wage and fringe benefit rates bearing a reasonable relationship to those listed in a wage determination cannot be reduced to any single formula. The approach used may vary from determination to determination, depending on the circumstances. Standard wage and salary administration practices ranking various job classifications by pay grade pursuant to point schemes or other job factors may, for example, be relied upon. Guidance may also be obtained from the way various jobs are rated under federal pay systems (Federal Wage Board Pay System and the General Schedule) or from other wage determinations issued in the same locality. Basic to the establishment of comfortable wage rates is the concept that a pay relationship should be maintained between job classifications on the basis of the skill required and the duties performed.

(ii) If a contract is modified or extended or an option is exercised, or if a contract succeeds a contract under which the classification in question was previously conformed pursuant to this clause, a new conformed wage rate and fringe benefits may be assigned to the conformed classification by indexing (that is, adjusting) the previous conformed rate and fringe benefits by an amount equal to the average (mean) percentage increase change in the wages and fringe benefits specified for all classifications to be used on the contract that are listed in the current wage determination, and those specified for the corresponding classifications in the previously applicable wage determination. If these conforming actions are accomplished before the performance of contract work by the unlisted class of employees, the supplier must advise the contracting officer of the action taken, but the other procedures in b.2(c) above need not be followed.

(iii) No employee engaged in performing work on this contract may be paid less than the currently applicable minimum wage specified under section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended.

(e) The wage rate and fringe benefits finally determined pursuant to b.2(a) and (b) above must be paid to all employees performing in the classification from the first day on which contract work is performed by them in the classification. Failure to pay unlisted employees the compensation agreed upon by the interested parties and/or finally determined by the Wage and Hour Division retroactive to the date the class of employees began contract work is a violation of the Service Contract Act and this contract.

(f) Upon discovery of failure to comply with b.2(a) through (e) above, the Wage and Hour Division will make a final determination of conformed classification, wage rate, and/or fringe benefits that will be retroactive to the date the class of employees commenced contract work.

(3) If, as authorized pursuant to section 4(d) of the Service Contract Act, the term of this contract is more than one year, the minimum monetary wages and fringe benefits required to be paid or furnished to service employees will be subject to adjustment after one year and not less often than once every two years, pursuant to wage determinations to be issued by the Wage and Hour Division, Employment Standards Administration of the Department of Labor.

c. The supplier or subcontractor may discharge the obligation to furnish fringe benefits specified in the attachment or determined conformably to it by furnishing any equivalent combinations of bona fide fringe benefits, or by making equivalent or differential payments in cash in accordance with the applicable rules set forth in Subpart D of 29 CFR Part 4, and not otherwise.

d.

(1) In the absence of a minimum-wage attachment for this contract, neither the supplier nor any subcontractor under this contract may pay any person performing work under the contract (regardless of whether they are service employees) less than the minimum wage specified by section 6(a)(1) of the Fair Labor Standards Act of 1938. Nothing in this provision relieves the suppleir or any subcontractor of any other obligation under law or contract for the payment of a higher wage to any employee.

(2)

(a) If this contract succeeds a contract subject to the Service Contract Act, under which substantially the same services were furnished in the same locality, and service employees were paid wages and fringe benefits provided for in a collective bargaining agreement, in the absence of a minimum wage attachment for this contract setting forth collectively bargained wage rates and fringe benefits, neither the supplier nor any subcontractor under this contract may pay any service employee performing any of the contract work (regardless of whether or not the employee was employed under the predecessor contract), less than the wages and fringe benefits provided for in the agreement, to which the employee would have been entitled if employed under the predecessor contract, including accrued wages and fringe benefits and any prospective increases in wages and fringe benefits provided for under the agreement.

(b) No supplier or subcontractor under this contract may be relieved of the foregoing obligation unless the limitations of section 4.1.(b) of 29 CFR Part 4 apply or unless the Secretary of Labor or an authorized representative finds, after a hearing as provided in section 4.10 of 29 CFR Part 4, that the wages and/or fringe benefits provided for in the agreement vary substantially from those prevailing for services of a similar character in the locality, or determines, as provided in section 4.11 of 29 CFR Part 4, that the agreement applicable to service employees under the predecessor contract was not entered into as a result of arm's-length negotiations.

(c) If it is found in accordance with the review procedures in 29 CFR 4.10 and/or 4.11 and Parts 6 and 8 that wages and/or fringe benefits in a predecessor supplier's collective bargaining agreement vary substantially from those prevailing for services of a similar character in the locality, and/or that the agreement applicable to service employees under the predecessor contract was not entered into as a result of arm's-length negotiations, the Department will issue a new or revised wage determination setting forth the applicable wage rates and fringe benefits. This determination will be made part of the contract or subcontract, in accordance with the decision of the Administrator, the Administrative Law Judge, or the Board of Service Contract Appeals, as the case may be, irrespective of whether its issuance occurs before or after award (53 Comp. Gen. 401 (1973)). In the case of a wage

determination issued solely as a result of a finding of substantial variance, it will be effective as of the date of the final administrative decision.

e. The supplier and any subcontractor under this contract must notify each service employee starting work on the contract of the minimum monetary wage and any fringe benefits required to be paid pursuant to the contract, or must post the wage determination attached to this contract. The poster provided by the Department of Labor (Publication WH 1313) must be posted in a prominent and accessible place at the worksite. Failure to comply with this requirement is a violation of section 2(a)(4) of the Act and of this contract. (Approved by the Office of Management and Budget under OMB control number 1215-0150.)

f. The supplier or subcontractor may not permit services called for by this contract to be performed in buildings or surroundings or under working conditions provided by or under the control or supervision of the supplier or subcontractor that are unsanitary or hazardous or dangerous to the health or safety of service employees engaged to furnish these services, and the supplier or subcontractor must comply with the safety and health standards applied under 29 CFR Part 1925.

g.

(1) The supplier and each subcontractor performing work subject to the Act must maintain for three years from the completion of the work records containing the information specified in (a) through (f) following for each employee subject to the Service Contract Act and must make them available for inspection and transcription by authorized representatives of the Wage and Hour Division, Employment Standards Administration of the U.S. Department of Labor (approved by the Office of Management and Budget under OMB control numbers 1215-0017 and 1215-0150):

(a) Name, address, and social security number of each employee.

(b) The correct work classification, rate or rates of monetary wages paid and fringe benefits provided, rate or rates of fringe benefit payments in lieu thereof, and total daily and weekly compensation of each employee.

(c) The number of daily and weekly hours so worked by each employee.

(d) Any deductions, rebates, or refunds from the total daily or weekly compensation of each employee.

(e) A list of monetary wages and fringe benefits for those classes of service employees not included in the wage determination attached to this contract but for whom wage rates or fringe benefits have been determined by the interested parties or by the Administrator or authorized representative pursuant to paragraph b above. A copy of the report required by b.2(b) above is such a list.

(f) Any list of the predecessor supplier's employees furnished to the supplier pursuant to section 4.6(1)(2) of 29 CFR Part 4.

(2) The supplier must also make available a copy of this contract for inspection or transcription by authorized representatives of the Wage and Hour Division.

(3) Failure to make and maintain or to make available the records specified in this paragraph g for inspection and transcription is a violation of the regulations and this contract, and in the case of failure to produce these records, the contracting officer, upon direction of the Department of Labor and notification of the supplier, must take action to suspend any further payment or advance of funds until the violation ceases.

(4) The supplier must permit authorized representatives of the Wage and Hour Division to conduct interviews with employees at the worksite during normal working hours.

h. The supplier must unconditionally pay to each employee subject to the Service Contract Act all wages due free and clear and without subsequent deduction (except as otherwise provided by law or regulations, 29 CFR Part 4), rebate, or kickback on any account. Payments must be made no later than one pay period following the end of the regular pay period in which the wages were earned or accrued. A pay period under the Act may not be of any duration longer than semimonthly.

i. The contracting officer must withhold or cause to be withheld from the Postal Service supplier under this or any other contract with the supplier such sums as an appropriate official of the Department of Labor requests or the contracting officer decides may be necessary to pay underpaid employees employed by the supplier or subcontractor. In the event of failure to pay employees subject to the Act wages or fringe benefits due under the Act, the Postal Service may, after authorization or by direction of the Department of Labor and written notification to the supplier, suspend any further payment or advance of funds until the violations cease. Additionally, any failure to comply with the requirements of this clause may be grounds for termination of the right to proceed with the contract work. In this event, the Postal Service may enter into other contracts or arrangements for completion of the work, charging the supplier in default with any additional cost.

j. The supplier agrees to insert this clause in all subcontracts subject to the Act. The term "supplier," as used in this clause in any subcontract, is deemed to refer to the subcontractor, except in the term "supplier."

k. Service employee means any person engaged in the performance of this contract other than any person employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in Part 541 of Title 29, Code of Federal Regulations as of July 30, 1976, and any subsequent revision of those regulations. The term includes all such persons regardless of any contractual relationship that may be alleged to exist between a supplier or subcontractor and them.

l.

(1) If wages to be paid or fringe benefits to be furnished service employees employed by the supplier or a subcontractor under the contract are provided for in a collective bargaining agreement that is or will be effective during any period in which the contract is being performed, the supplier must report this fact to the contracting officer, together with full information as to the application and accrual of these wages and fringe benefits, including any prospective increases, to service employees engaged in work on the contract, and furnish a copy of the agreement. The report must be made upon starting performance of the contract, in the case of collective bargaining agreements effective at the time. In the case of agreements or provisions or amendments thereof effective at a later time during the period of contract performance, they must be reported promptly after their negotiation. (Approved by the Office of Management and Budget under OMB control number 1215-0150.)

(2) Not less than ten days before completion of any contract being performed at a Postal facility where service employees may be retained in the performance of a succeeding contract and subject to a wage determination containing vacation or other benefit provisions based upon length of service with a supplier (predecessor) or successor (section 4.173 of Regulations, 29 CFR Part 4), the incumbent supplier must furnish to the contracting officer a certified list of the names of all service employees on the supplier's or subcontractor's payroll during the last month of contract performance. The list must also contain anniversary dates of employment on the contract, either with the current or predecessor suppliers of each such service employee. The contracting officer must turn over this list to the successor supplier at the commencement of the succeeding contract. (Approved by the Office of Management and Budget under OMB control number 1215-0150.)

m. Rulings and interpretations of the Service Contract Act of 1965, as amended, are contained in Regulations, 29 CFR Part 4.

n.

(1) By entering into this contract, the supplier and its officials certify that neither they nor any person or firm with a substantial interest in the supplier's firm are ineligible to be awarded Government contracts by virtue of the sanctions imposed pursuant to section 5 of the Act.

(2) No part of this contract may be subcontracted to any person or firm ineligible for award of a Government contract pursuant to section 5 of the Act.

(3) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

o. Notwithstanding any of the other provisions of this clause, the following employees may be employed in accordance with the following variations, tolerances, and exemptions, which the Secretary of Labor, pursuant to section 4(b) of the Act before its amendment by Public Law 92-473, found to be necessary and proper in the public interest or to avoid serious impairment of the conduct of Government business:

(1) Apprentices, student-learners, and workers whose earning capacity is impaired by age, or physical or mental deficiency or injury may be employed at wages lower than the minimum wages otherwise required by section 2(a)(1) of 2(b)(1) of the Service Contract Act without diminishing any fringe benefits or cash payments in lieu thereof required under section 2(a)(2) of the Act, in accordance with the conditions and procedures prescribed for the employment of apprentices, student-learners, handicapped persons, and handicapped clients of sheltered workshops under section 14 of the Fair Labor Standards Act of 1938, in the regulations issued by the Administrator (29 CFR Parts 520, 521, 524, and 525).

(2) The Administrator will issue certificates under the Service Contract Act for the employment of apprentices, student-learners, handicapped persons, or handicapped clients of sheltered workshops not subject to the Fair Labor Standards Act of 1938, or subject to different minimum rates of pay under the two Acts, authorizing appropriate rates of minimum wages (but without changing requirements concerning fringe benefits or supplementary cash payments in lieu thereof), applying procedures prescribed by the applicable regulations issued under the Fair Labor Standards Act of 1938 (29 CFR Parts 520, 521, 524, and 525).

(3) The Administrator will also withdraw, annul, or cancel such certificates in accordance with the regulations in Parts 525 and 528 of Title 29 of the Code of Federal Regulations.

p. Apprentices will be permitted to work at less than the predetermined rate for the work they perform when they are employed and individually registered in a bona fide apprenticeship program registered with a State Apprenticeship Agency recognized by the U.S. Department of Labor, or if no such recognized agency exists in a State, under a program registered with the Bureau of Apprenticeship and Training, Employment and Training Administration, U.S. Department of Labor. Any employee not registered as an apprentice in an approved program must be paid the wage rate and fringe benefits contained in the applicable wage determination for the journeyman classification of work actually performed. The wage rates paid apprentices may not be less than the wage rate for their level of progress set forth in the registered program, expressed as the appropriate percentage of the journeyman's rate contained in the applicable wage determination. The allowable ratio of apprentices to journeymen employed on the contract work in any craft classification may not be greater than the ratio permitted to the supplier for its entire work force under the registered program.

q. An employee engaged in an occupation in which he or she customarily and regularly receives more than $30 a month in tips may have the amount of tips credited by the employer against the minimum wage required by section 2(a)(1) or section 2(b)(1) of the Act in accordance with section 3(m) of the Fair Labor Standards Act and Regulations, 29 CFR Part 531. However, the amount of this credit may not exceed $1.24 per hour beginning January 1, 1980, and $1.34 per hour after December 31, 1980. To utilize this proviso--

(1) The employer must inform tipped employees about this tip credit allowance before the credit is utilized;

(2) The employees must be allowed to retain all tips (individually or through a pooling arrangement and regardless of whether the employer elects to take a credit for tips received);

(3) The employer must be able to show by records that the employee receives at least the applicable Service Contract Act minimum wage through the combination of direct wages and tip credit (approved by the Office of Management and Budget under OMB control number 1214-0017); and

(4) The use of the tip credit must have been permitted under any predecessor collective bargaining agreement applicable by virtue of section 4(c) of the Act.

r. Disputes arising out of the labor standards provisions of this contract are not subject to the *Claims and Disputes* clause but must be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 4, 6, and 8. Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors) and the Postal Service, the U.S. Department of Labor, or the employees or their representatives.

**H.33 AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (Clause 9-13) (January 1997)**

a. The supplier may not discriminate against any employee or applicant because of physical or mental handicap, in regard to any position for which the employee or applicant is qualified. The supplier agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified handicapped individuals without discrimination in all employment practices, such as employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training (including apprenticeship).

b. The supplier agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Rehabilitation Act of 1973, as amended.

c. In the event of the supplier's noncompliance with this clause, action may be taken in accordance with the rules and regulations and relevant orders of the Secretary of Labor.

d. The supplier agrees to post in conspicuous places, available to employees and applicants, notices in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, provided by or through the contracting officer. These notices state the supplier's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped employees and applicants, and the rights of applicants and employees.

e. The supplier must notify each union or worker's representative with which it has a collective bargaining agreement or other understanding that the supplier is bound by the terms of section 503 of the Act and is committed to taking affirmative action to employ, and advance in employment, handicapped individuals.

f. The supplier must include this clause in every subcontract or purchase order over $2,500 under this contract unless exempted by rules, regulations, or orders of the Secretary issued pursuant to section 503 of the Act, so its provisions will be binding upon each subcontractor or vendor. The supplier must take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce these provisions, including action for noncompliance.

**H.34 AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (Clause 9-14) (January 1997)**

a. The supplier may not discriminate against any employee or applicant because that employee or applicant is a disabled veteran or veteran of the Vietnam era, in regard to any position for which the employee or applicant is qualified. The supplier agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified disabled veterans and veterans of the Vietnam era without discrimination in all employment practices, such as employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay

or other forms of compensation, and selection for training (including apprenticeship).

b. The supplier agrees to list all employment openings which exist at the time of the execution of this contract and those which occur during performance of this contract, including those not generated by this contract and including those occurring at an establishment of the supplier other than the one where the contract is being performed, but excluding those of independently operated corporate affiliates, at an appropriate local office of the state employment service where the opening occurs. State and local government agencies holding Postal Service contracts of $10,000 or more will also list their openings with the appropriate office of the state employment service.

c. Listing of employment openings with the employment service system will be made at least concurrently with the use of any recruitment source or effort and will involve the normal obligations attaching to the placing of a bona fide job order, including the acceptance of referrals of veterans and non veterans. The listing of employment openings does not require the hiring of any particular applicant or hiring from any particular group of applicants, and nothing herein is intended to relieve the supplier from any other requirements regarding nondiscrimination in employment.

d. Whenever the supplier becomes contractually bound to the listing provisions of this clause, it must advise the employment service system in each state where it has establishments of the name and location of each hiring location in the state. The supplier may advise the state system when it is no longer bound by this clause.

e. Paragraphs b, c, and d above do not apply to openings the supplier proposes to fill from within its own organization or under a customary and traditional employer/union hiring arrangement. But this exclusion does not apply to a particular opening once the supplier decides to consider applicants outside it own organization or employer/union arrangements for that opening.

f. Definitions

(1) *All employment openings*. This includes all positions except executive and top management, those positions that will be filled from within the supplier's organization, and positions lasting three days or less. This also includes full-time employment, temporary employment of more than three days duration, and part-time employment. Under the most compelling circumstances, an employment opening may not be suitable for listing, including situations in which the needs of the Postal Service cannot reasonably be otherwise supplied, when listing would be contrary to national security, or when listing would not be in the best interest of the Postal Service.

(2) *Appropriate Office of the State Employment Service*. The means the local office of the federal/ state national system of public employment offices with assigned responsibility for serving the area where the employment opening is to be filled, including the District of Columbia, Guam, the Commonwealth of Puerto Rico, and the Virgin Islands.

(3) *Positions That Will be Filled From Within the Supplier's Own Organization*. This means employment openings for which no consideration will be given to persons outside the supplier's organization (including any affiliates, subsidiaries, and parent companies) and includes any openings which the supplier proposes to fill from regularly established recall lists.

(4) *Openings the Supplier Proposes to Fill Under a Customary and Traditional Employer/Union Hiring Arrangement*. Employment openings the supplier proposes to fill from union halls as part of the customary and traditional hiring relationship existing between it and representatives of its employees.

g. The supplier agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Vietnam Era Veterans Readjustment Assistance Act of 1972, as amended.

h. In the event of the supplier's noncompliance with this clause, action may be taken in accordance with the rules, regulations, and relevant orders of the Secretary.

i. The supplier agrees to post in conspicuous places, available to employees and applicants, notices in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, provided by or through the contracting officer. These notices state the supplier's obligation under the law to take affirmative action to employ and advance in employment qualified disabled veterans and veterans of the Vietnam era, and the rights of applicants and employees.

j. The supplier must notify each union or workers' representative with which it has a collective bargaining agreement or other understanding that the supplier is bound by the terms of the Act and is committed to taking affirmative action to employ, and advance in employment, qualified disabled veterans and veterans of the Vietnam era.

k. The supplier must include this clause in every subcontract or purchase order of $10,000 or more under this contract unless exempted by rules, regulations, or orders of the Secretary issued pursuant to the Act, so its provisions will be binding upon each subcontractor or vendor. The supplier must take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce these provisions, including action for noncompliance.

***Section I. List of Attachments***

a. PS Form 7445, Inquiry Concerning Renewal of Transportation Services Contract

b. PS Form 7463A, Negotiated Cost Statement - Highway Transportation Contracts

c. PS Form 7319-C, Representations and Certifications - Type of Business Organization

d. SCA Wage Determination (or Determinations, as applicable)

e. Fuel Purchase Plan Instructions, March 22, 1993

f. T201, Fuel Purchase Plan Form

g. T107, Highway Contract Route - Vehicle Information Sheet

h. T200, Highway Contract Route - Driver Information Sheet

i. Vehicle Specification (as applicable) (SEE Section B.2)

j. Box Delivery Program (if applicable)

k. Amendments 1, 2, 3, 4 and 5 (if applicable)

## *Section L. Representations and Certifications*

### L.1 TYPE OF BUSINESS ORGANIZATION (Provision A-20) (January 1997) (Modified)

See Attached, PS Form 7319-C

### L.2 PARENT COMPANY AND TAXPAYER IDENTIFICATION NUMBER (Provision A-21) (January 1997)

See reverse side of PS Form 7405 or attachment.

### L.3 AUTHORIZED NEGOTIATORS (Provision A-22) (January 1997) (Modified)

The offeror must list the names, titles, and telephone numbers of the authorized negotiators. The offeror represents that the persons so noted are authorized to negotiate on its behalf with the Postal Service in connection with this solicitation.

### L.4 PLACE OF PERFORMANCE (Provision A-23) (January 1997)

If the offeror intends, in the performance of any contract resulting from this solicitation, to use one or more facilities located at addresses different from the offeror's address as indicated in its proposal, the offeror must include in its proposal a statement referencing this provision and identifying those facilities by street address, city, county, state, and Zip Code, and the name and address of the operators of those facilities if other than the offeror.

### L.5 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (Provision 1-1) (January 1997)

a. By submitting this proposal, the offeror certifies, and in the case of a joint proposal each party to it certifies as to its own organization, that in connection with this solicitation:

(1) The prices proposed have been arrived at independently, without consultation, communication, or agreement, for the purpose of restricting competition, as to any matter relating to the prices with any other offeror or with any competitor;

(2) Unless otherwise required by law, the prices proposed have not been and will not be knowingly disclosed by the offeror before award of a contract, directly or indirectly to any other offeror or to any competitor; and

(3) No attempt has been made or will be made by the offeror to induce any other person or firm to submit or not submit a proposal for the purpose of restricting competition.

b. Each person signing this proposal certifies that:

(1) He or she is the person in the offeror's organization responsible for the decision as to the prices being offered herein and that he or she has not participated, and will not participate, in any action contrary to paragraph a above; or

(2) He or she is not the person in the offeror's organization responsible for the decision as to the prices being offered but that he or she has been authorized in writing to act as agent for the persons responsible in certifying that they have not participated, and will not participate, in any action contrary to paragraph a above, and as their agent does hereby so certify; and he or she has not participated, and will not participate, in any action contrary to paragraph a above.

c. Modification or deletion of any provision in this certificate may result in the disregarding of the proposal as unacceptable. Any modification or deletion should be accompanied by a signed statement explaining the reasons and describing in detail any disclosure or communication.

**L.6 CERTIFICATE OF NON-SEGREGATED FACILITIES (Provision 9-2) (January 1997)**

a. By submitting this proposal, the offeror certifies that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform services at any location under its control where segregated facilities are maintained. The offeror agrees that a breach of this certification is a violation of the *Equal Opportunity* clause in this contract.

b. As used in this certification, segregated facilities means any waiting rooms, work areas, rest rooms or wash rooms, restaurants or other eating areas, time clocks, locker rooms or other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment area, transportation, or housing facilities provided for employees that are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, or national origin, because of habit, local custom, or otherwise.

c. The offeror further agrees that (unless it has obtained identical certifications from proposed subcontractors for specific time periods) it will obtain identical certifications from proposed subcontractors before awarding subcontracts exceeding $10,000 that are not exempt from the provisions of the Equal Opportunity clause; that it will retain these certifications in its files; and that it will forward the following notice to these proposed subcontractors (except when they have submitted identical certifications for specific time periods):

*NOTICE*: A certification of nonsegregated facilities must be submitted before the award of a subcontract exceeding $10,000 that is not exempt from the *Equal Opportunity* clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (quarterly, semiannually, or annually).

**L.7 EQUAL OPPORTUNITY AFFIRMATIVE ACTION PROGRAM (Provision 9-3) (January 1997)**

See reverse side of PS Form 7405 or attachment.

**L.8 CONTINGENT FEE REPRESENTATION (Provision 1-2) (January 1997)**

a. The offeror must complete the following representations:

(1) The offeror ? has ? has not employed or retained any company or person (other than a full-time bona fide employee working solely for the offeror) to solicit or secure this contract.

(2) The offeror ? has ? has not paid or agreed to pay any company or person (other than a full-time bona fide employee working solely for the offeror) any fee, commission, percentage or brokerage fee, contingent upon or resulting from the award of this contract.

b. If either representation is in the affirmative, or upon request of the contracting officer, the offeror must furnish, in duplicate, a completed Form 7319, *Contractor's Statement of Contingent or Other Fees*, and any other information requested by the contracting officer. If the offeror has previously furnished a completed Form 7319 to the office issuing this solicitation, it may accompany its proposal with a signed statement:

(1) Indicating when the completed form was previously furnished;

(2) Identifying the number of the previous solicitation or contract, if any, in connection with which the form was submitted; and

(3) Representing that the statement on the form is applicable to this proposal.

KEETER CoFC#05-241 ADDITIONAL BOXES USPS 00191

UNITED STATES POSTAL SERVICE®

# CONTRACT ROUTE SERVICE ORDER

1. CONTRACT RATE
OLD: $[illegible]18.65 PER ANNUM
NEW: $41,206.21 PER ANNUM

| 2. CONTRACT NO. | 3. BEGIN CONTRACT TERM | 4. END CONTRACT TERM |
|---|---|---|
| 72665 | 07/01/2002 | 06/30/2006 |

5. FOR MAIL SERVICE IN OR BETWEEN
CITY & STATE: YELLVILLE, AR
CITY & STATE: PEEL, AR

6. NAME AND ADDRESS OF SUPPLIER

KEETER INC
807 MC4018
YELLVILLE AR 72687-9081

7. THIS SPACE FOR ASC USE ONLY

8. THE FOLLOWING ORDER IS HEREBY ISSUED

INSIGNIFICANT MINOR SERVICE CHANGE

Contract requirements are changed pursuant to the Changes clause as shown on the attached Statement of Work and Specifications.

CURRENT Boxes: 250

NEW Boxes: 52

------

NEW Total Boxes: 302

NO CHANGE TO CURRENT LINE OF TRAVEL (NO INCREASE IN MILEAGE)
ADDED 52 BOXES (ON THE EXISTING LINE OF TRAVEL)

7002 0510 0001 4064 4224

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

Postage $
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $
Postmark Here
Sent To
Street, Apt. No.; or PO Box No.
City, State, ZIP+4
PS Form 3800, January 2001 See Reverse for Instructions

72665
1-28-4
RFP + Wage Det
35 Mail

Adjust pay by $1,087.56 PER ANNUM, effective 01/24/2004.
Scheduled annual mileage 31,610.2; new rate per mile $1.30357

9. SIGNATURE OF CONTRACTING OFFICER
Mall C McCuy

11. TITLE OF CONTRACTING OFFICER
MGR,TRANSPORTATION CONTRACTS

12. ADDRESS OF CONTRACTING OFFICER

SOUTHWEST DNO
SOUTHWEST AREA OFFICE
7800 N STEMMONS FRWY,SUITE 250
DALLAS TX 75247-4217

10. DISTRIBUTION

1 - Contracting Officer
2 - Accounting Service Center
3 - Administrative Official
4 - Supplier
5 - P&DC/F
6 - Customer Service District
7 - En Route Offices
8 Aline Jackson LIT

| 13a. DATE ORDERED | b. ORDER NO. | c. ROUTE ORDER NO. | d. BUDGET ACCOUNT NO. | e. FINANCE NO. |
|---|---|---|---|---|
| 12-24-03 | 752-01867-04 | 11 | 53605 | 04-5133 |

PS Form 7440
September 2001

UNITED STATES POSTAL SERVICE

# CONTRACT ROUTE SERVICE ORDER

| | | | |
|---|---|---|---|
| 2. CONTRACT NO. 72665 | 3. BEGIN CONTRACT TERM 07/01/2002 | 4. END CONTRACT TERM 06/30/2006 | 1. CONTRACT RATE OLD: NO NEW: CHANGE |
| 5. FOR MAIL SERVICE IN OR BETWEEN | CITY & STATE YELLVILLE, AR | | CITY & STATE PEEL, AR |

6. NAME AND ADDRESS OF SUPPLIER

KEETER INC
807 MC4018
YELLVILLE AR 72687-9081

7. THIS SPACE FOR ASC USE ONLY

8. THE FOLLOWING ORDER IS HEREBY ISSUED

LUMP SUM TRANSACTION

Allow lump sum adjustment to supplier's pay as shown on the attached.

ONE TIME DEDUCTION: OMITTED SERVICE/REFUSAL TO DELIVER 52 NEW BOXES

COPY

Reviewed by: [signature] Date 2-10-4

ORDERED [signature] Date 2·10·4

9. SIGNATURE OF CONTRACTING OFFICER [signature]

11. TITLE OF CONTRACTING OFFICER

MGR,TRANSPORTATION CONTRACTS

12. ADDRESS OF CONTRACTING OFFICER

SOUTHWEST DNO
SOUTHWEST AREA OFFICE
7800 N STEMMONS FRWY,SUITE 250
DALLAS TX 75247-4217

10. DISTRIBUTION

1 - Contracting Officer
2 - Accounting Service Center
3 - Administrative Official
4 - Supplier
5 - P&DC/F
6 - Customer Service District
7 - En Route Offices

| 13a. DATE ORDERED | b. ORDER NO. | c. ROUTE ORDER NO. | d. BUDGET ACCOUNT NO. | e. FINANCE NO. |
|---|---|---|---|---|
| 2·10·4 | 752-02687-04 | 12 | 53605 | 04-5133 |

PS Form 7440, September 2003

PS FORM 7440 CONTINUATION SHEET

CONTRACT NO. 72665 YELLVILLE, AR TO PEEL, AR

EFFECTIVE DATE 01/24/2004 ORDER NO. 752-02687-04

LUMP SUM TRANSACTION

| NUMBER OF UNITS | UNIT RATE | LUMP SUM AMOUNT | DESCRIPTION | FINANCE NUMBER | BUDGET ACCOUNT NUMBER |
|---|---|---|---|---|---|
| | | ($424.80) | Omitted Service | 04-5133 | 53605 |
| | Total | -$424.80 | | | |

KEETER CoFC #05-243 ADDITIONAL BOXES USPS 00192

UNITED STATES POSTAL SERVICE

CONTRACT ROUTE SERVICE ORDER

APPENDIX TO DEFENDANT'S R. 56 MOTION Page 92

1. CONTRACT RATE

OLD: $41,206.21 PER ANNUM

NEW: $42,808.93 PER ANNUM

| 2. CONTRACT NO. | 3. BEGIN CONTRACT TERM | 4. END CONTRACT TERM |
|---|---|---|
| 72665 | 07/01/2002 | 06/30/2006 |

5. FOR MAIL SERVICE IN OR BETWEEN

CITY & STATE: YELLVILLE, AR

CITY & STATE: PEEL, AR

6. NAME AND ADDRESS OF SUPPLIER

KEETER INC
807 MC4018
YELLVILLE AR 72687-9081

7. THIS SPACE FOR ASC USE ONLY

8. THE FOLLOWING ORDER IS HEREBY ISSUED

INSIGNIFICANT MINOR SERVICE CHANGE

Contract requirements are changed pursuant to the Changes clause as shown on the attached Statement of Work and Specifications.

CURRENT Boxes: 302

NEW Boxes: 0

------

NEW Total Boxes: 302

ONE TIME PAY: January 24, 2004 through January 30, 2004 for services rendered

* NO CHANGE TO BOX COUNT OR MILEAGE
* ADDED TIME TO ROUTE THAT WAS NOT ADDED FOR ORIGINAL SERVICE CHANGE ON ROUTE ORDER NO. 752-01867-04 (ROUTE ORDER NO. 11) DATED 12-24-03

Reviewed by: [signature] Date 2-11-4

ORDERED-IN By: [signature] Date 2·19·4

Adjust pay by $1,602.72 PER ANNUM, effective 01/31/2004.

Scheduled annual mileage 31,610.2; new rate per mile $1.35428

9. SIGNATURE OF CONTRACTING OFFICER

[signature]

11. TITLE OF CONTRACTING OFFICER

MGR,TRANSPORTATION CONTRACTS

12. ADDRESS OF CONTRACTING OFFICER

SOUTHWEST DNO
SOUTHWEST AREA OFFICE
7800 N STEMMONS FRWY,SUITE 250
DALLAS TX 75247-4217

10. DISTRIBUTION

1 - Contracting Officer
2 - Accounting Service Center
3 - Administrative Official
4 - Supplier
5 - P&DC/F
6 - Customer Service District
7 - En Route Offices
8 Aline Jackson LIT

| 13a. DATE ORDERED | b. ORDER NO. | c. ROUTE ORDER NO. | d. BUDGET ACCOUNT NO. | e. FINANCE NO. |
|---|---|---|---|---|
| 2·19·4 | 752-02704-04 | 13 | 53605 | 04-5133 |

PS Form 7440
September 2001

UNITED STATES POSTAL SERVICE®

CONTRACT ROUTE SERVICE ORDER

| | | | |
|---|---|---|---|
| 2. CONTRACT NO. 72665 | 3. BEGIN CONTRACT TERM 07/01/2002 | 4. END CONTRACT TERM 06/30/2006 | 1. CONTRACT RATE OLD: NO NEW: CHANGE |
| 5. FOR MAIL SERVICE IN OR BETWEEN | CITY & STATE YELLVILLE, AR | | CITY & STATE PEEL, AR |
| 6. NAME AND ADDRESS OF SUPPLIER KEETER INC 807 MC4018 YELLVILLE AR 72687-9081 | | | 7. THIS SPACE FOR ASC USE ONLY |

8. THE FOLLOWING ORDER IS HEREBY ISSUED

EFFECTIVE CLOSE OF BUSINESS FEBRUARY 20, 2004, THE CONTRACTOR'S RIGHT TO PERFORM SERVICE IS SUSPENDED DUE TO CONTRACTORS ABANDONMENT OF ROUTE.

SUSPEND ALL PAYMENTS DUE THE CONTRACTOR UNTIL SUBSEQUENT ORDER AUTHORIZES THE RELEASE OF FUNDS.

REPLACEMENT SERVICE WILL BE PERFORMED BY HCR 726DU.

MCA 2-23-04

Reviewed by: [signature] Date 2-23-04

ORDERED–IN By: Date

9. SIGNATURE OF CONTRACTING OFFICER [signature]

11. TITLE OF CONTRACTING OFFICER
MGR,TRANSPORTATION CONTRACTS

12. ADDRESS OF CONTRACTING OFFICER
SOUTHWEST DNO
SOUTHWEST AREA OFFICE
7800 N STEMMONS FRWY,SUITE 250
DALLAS TX 75247-4217

10. DISTRIBUTION
1 - Contracting Officer
2 - Accounting Service Center
3 - Administrative Official
4 - Supplier
5 - P&DC/F
6 - Customer Service District
7 - En Route Offices

| 13a. DATE ORDERED | b. ORDER NO. | c. ROUTE ORDER NO. | d. BUDGET ACCOUNT NO. | e. FINANCE NO. |
|---|---|---|---|---|
| 2-24-04 | 752-03008-04 | 14 | 53605 | 04-5133 |

PS Form 7440
September 2001

UNITED STATES POSTAL SERVICE®

CONTRACT ROUTE SERVICE ORDER

| | | | |
|---|---|---|---|
| 2. CONTRACT NO.<br>72665 | 3. BEGIN CONTRACT TERM<br>07/01/2002 | 4. END CONTRACT TERM<br>02/21/2004 | 1. CONTRACT RATE<br>OLD: NO<br>NEW: CHANGE |
| 5. FOR MAIL SERVICE IN OR BETWEEN | CITY & STATE<br>YELLVILLE, AR | | CITY & STATE<br>PEEL, AR |
| 6. NAME AND ADDRESS OF SUPPLIER<br>KEETER INC<br>807 MC4018<br>YELLVILLE AR 72687-9081 | | | 7. THIS SPACE FOR ASC USE ONLY |

8. THE FOLLOWING ORDER IS HEREBY ISSUED

TERMINATION FOR DEFAULT - SUSPEND FUNDS

EFFECTIVE CLOSE OF BUSINESS 02/20/2004, THIS CONTRACT IS TERMINATED UNDER THE TERMINATION FOR DEFAULT CLAUSE. SUSPEND ALL PAY UNTIL SUBSEQUENT ORDER DIRECTS RELEASE OF FUNDS.

REPLACEMENT SERVICE WILL BE PERFORMED BY HCR 726DU.

COPY

Reviewed by: [signature] Date 4-29-4

ORDERED-IN By: ______ Date ______

| | |
|---|---|
| 9. SIGNATURE OF CONTRACTING OFFICER<br>[signature] | 10. DISTRIBUTION<br>1 - Contracting Officer<br>2 - Accounting Service Center<br>3 - Administrative Official<br>4 - Supplier<br>5 - P&DC/F<br>6 - Customer Service District<br>7 - En Route Offices |
| 11. TITLE OF CONTRACTING OFFICER<br>MGR,TRANSPORTATION CONTRACTS | |
| 12. ADDRESS OF CONTRACTING OFFICER<br>SOUTHWEST DNO<br>SOUTHWEST AREA OFFICE<br>7800 N STEMMONS FRWY,SUITE 250<br>DALLAS TX 75247-4217 | |

| 13a. DATE ORDERED | b. ORDER NO. | c. ROUTE ORDER NO. | d. BUDGET ACCOUNT NO. | e. FINANCE NO. |
|---|---|---|---|---|
| 4/29/04 | 752-05431-04 | 15 | 53605 | 04-5133 |

PS Form 7440
September 2001

UNITED STATES POSTAL SERVICE

CONTRACT ROUTE SERVICE ORDER

| | | | |
|---|---|---|---|
| 2. CONTRACT NO. 72665 | 3. BEGIN CONTRACT TERM 07/01/2002 | 4. END CONTRACT TERM 02/21/2004 | 1. CONTRACT RATE / ORD: NEW: CHANGE |
| 5. FOR MAIL SERVICE IN OR BETWEEN | CITY & STATE YELLVILLE, AR | | CITY & STATE PEEL, AR |
| 6. NAME AND ADDRESS OF SUPPLIER KEETER INC 807 MC4018 YELLVILLE AR 72687-9081 | | | 7. THIS SPACE FOR ASC USE ONLY |

8. THE FOLLOWING ORDER IS HEREBY ISSUED

TERMINATION FOR DEFAULT - RELEASE FUNDS

The supplier, having defaulted effective close of business 02/21/2004, now owes the Postal Service for replacement and reprocurement costs as shown on the attached.

Funds previously suspended over and above the identified replacement and reprocurement costs may now be released to the supplier.

REPLACED BY REGULAR HCR 72665 EFFECTIVE 7/24/2004

THIS IS A TRUE COPY OF THE CONTRAC[T]
BEARING THIS CERTIFICATION
SIGNED
CONTRACTING OFFICER OR DE[SIGNEE]

Reviewed by: [signature] Date 6-10-5
ORDERED-IN By: [signature] Date 6/10/05

9. SIGNATURE OF CONTRACTING OFFICER [signature]

11. TITLE OF CONTRACTING OFFICER
MGR, TRANSPORTATION CONTRACTS

12. ADDRESS OF CONTRACTING OFFICER
SOUTHWEST DNO
US POSTAL SERVICE
7800 N STEMMONS FRWY STE 250
DALLAS TX 75247-4217

10. DISTRIBUTION
1 - Contracting Officer
2 - Accounting Service Center
3 - Administrative Official
4 - Supplier
5 - P&DC/F
6 - Customer Service District
7 - En Route Offices

| 13a. DATE ORDERED | b. ORDER NO. | c. ROUTE ORDER NO. | d. BUDGET ACCOUNT NO. | e. FINANCE NO. |
|---|---|---|---|---|
| 6-10-05 | 752-11580-04 | 16 | 53605 | 04-5133 |

PS Form 7440
September 2001

**DEFAULT DAMAGES WORKSHEET**
**CONTRACT NO. 72665 – KEETER INC**
**TERMINATION EFFECTIVE: 02/20/2004**

**PART 1 – EXCESS TRANSPORTATION REPLACEMENT COST COMPARIOSN**

Replacement Contract Annual Rate: CON ID 72665 $43,051.41

Defaulted Contract Annual Rate: CON ID 72665 $42,808.93

Difference = $242.48 / 365 = $0.66

$0.66 X 84* = $55.80

**TOTAL EXCESS TRANSPORTATION COST: $ 55.80**
***Number of days left in Pay Cycle of default + 84 days (3 Pay Cycles)**

**COSTS FOR POSTMASTER/CLERK TO DELIVER 52 BOXES FOR 26 DAYS = $1342.69 - $424.80 DEDUCTION: $917.89**

**PART II – ADMINSTRATIVE COSTS**

Cost per hour for secretary (word processor) = $16.31

Cost per hour for Contract Specialist = $25.22

Secretary four hours preparing solicitation, making distribution, sending out solicitation packages, preparing Award documents and making distribution of Award.

Contract Specialist 4.3 hours preparing solicitation and soliciting suppliers for offers. Additional six hours evaluating and making award.

Total secretary among = 4 hours X $16.31 = $ 65.24

Total Contract Specialist amount = 10.3 hours X $25.22 = $259.77

IS A TRUE COPY OF THE CONTRAC
...ING THIS CERTIFICATION

**TOTAL ADMINISTRATIVE COST: $325.00**

**PART III – TOTAL DAMAGES AND REPROCUREMENT COSTS: $1,298.69*****

*****NOTE: NO MONEY IS TO BE RETURNED TO THE CONTRACTOR**