IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EDWARD KEETER AND
KEETER TRADING COMPANY, Inc. PLAINTIFFS

v. No. 05-243C
(Judge Horn)

UNITED STATES OF AMERICA DEFENDANT

ANSWER TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiffs, Edward Keeter and Keeter Trading Company, Inc. by and through their attorney Christopher O'Hara Carter of the Law Offices of Christopher O'Hara Carter, P.A. and for its answer to the motion for Summary Judgment filed herein by the United States Postal Service (hereinafter USPS) states:

**(a) JURISDICTION**: There is no dispute that jurisdiction under 41 U.S.C. 605 and 41 U.S.C. 609(a)(1) arising out of the Contract Disputes Act of 1978 (41 U.S.C. 601-613.

**(b) ISSUES:** The USPS has outlined various issues at pages 2, 3 and 16-42 of their motion for summary judgment. In essence they put forth two arguments, first that Keeter, Inc. had it status revoked by the Arkansas Secretary of State on February 22, 2005 when this action was initiated and second, that Keeter, Inc. refused to deliver the mail to certain boxes pursuant to a change order and then he when refused to provide services and abandoned the contract for home delivery of the mail with the United States Postal Service. Both issues really deal with standing to bring an action

in this court and less with the factual issues related to the complaint filed on February 22, 2005.

(c) **STANDARDS FOR SUMMARY JUDGMENT:** The plaintiff agrees with the defendant that the distinction of this case for summary judgment or stipulation facts may be a technical one. This case involves interpretation of a contract and issues of contract are questions of law, which are properly resolved on motions for summary judgment. *Vassar v. U.S*. (Fed. Cl. 2004) citing *Varilease Technology Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed Cir. 2002). Summary judgment is appropriate if there is no material issue of genuine fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 2477 (1986). A material fact is one that affects the outcome of a case. *Id*. At 248.

(d) **STATEMENT REGARDING THE RECORD:** The plaintiff has no dispute with the uncontroverted facts, requests for admissions or the documents supplied by the USPS. However, the one document noticeably absent is the Handbook P-5 regulation 212.1 to 212.31 which are significant to the plaintiff's position as set out in his complaint. The file, together with the facts, and documents and Handbook P-5 should allow this court to dispose of this case.

## AUTHORTIES CITED

UNITED STATES SUPREME COURT PAGE

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 2477 (1986) ……………………………….. 2

UNITED STATES COURT OF FEDERAL CLAIMS

*BLH, Inc. v. United States*, 2 Cl. Ct. 463 (1983)……………………………………………… 5

*CJP Contractors, Inc. v. United States,* 45 Fed.CL. 343 (1999) ………………………………10

*Lassiter v. U.S.* (Fed. Cl. 2004) ……………………………………………………………..10

*Vassar v. U.S.* (Fed. Cl. 2004) …………………………………………………………… 2

OTHER JURISDICTIONS

*Tribco Manufacturing Co., Inc. v. People's Bank of Imboden,*

67 Ark. App. 268, 998 S.W. 2d 756 (1999 …………………………………………………… 5

*Varilease Technology Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed Cir. 2002) ……. 2

STATUTES

Arkansas Code Annotated 26-54-112 ………………………………………………………. 5

## SUMMARY OF FACTS

Keeter, Inc., hereinafter "Keeter" signed a contract with the USPS for a Home Carrier Route in Marion County, Arkansas covering the period from July 1, 2002 to June 30, 2006. The original route under the contract had 249 boxes and was amended on December 22, 2003 to add an additional box (AP 50) {Unless denoted otherwise all AP numbers refer to the defendant's appendix}. During this time period Yellville, Arkansas Postmaster (from whose post office Keeter's route originated) Linda Orr decided to change 4 routes (AP 119, 124-126 and 132). These changes gave Keeter 52 boxes along his current route of travel and deleted those boxes from other carriers (AP 126). All parties agree that Keeter refused to accept this change and made his refusal well known prior to the time any change order (AP 89) went into effect. On January 2, 2004 Keeter was told he would be in jeopardy of losing his route if he did not do as instructed. (AP 119). Keeter made it clear that the postmaster was making the change as an accommodation to other carriers and to his detriment (AP 119, 126 and 128). Further, Keeter argued that the addition of 52 boxes to the contract was a major change as defined by his contract and could only be implemented by a written agreement between Keeter and the Contracting Officer amending the original contract. The change went into effect on January 24, 2004 and beginning that day through February 20, 2004 Keeter continued to deliver the mail to the 250 boxes under his original contract as amended but refused to sort, deliver or acknowledge any mail from the 52 additional boxes. On February 20, 2004 the USPS began to dock Keeter's pay and as a result Keeter turned in his keys because the USPS refused to follow its agreement with Keeter. Keeter was terminated and appealed the termination (see exhibit 2 to the complaint filed in this action). A ruling was issued on April 28 (AP 98-102) denying all claims because Keeter refused to perform its contract. Keeter's primary issue as to the definition and understanding of

major/minor changes in the contract were never addressed by the USPS. Keeter thus filed this action on February 22, 2005.

## I. STANDING

It is not disputed or contested that Keeter, Inc. did not pay its 2004 Franchise tax to the Arkansas Secretary of State and as a result it charter was revoked on December 31, 2004 and was reinstated on April 27, 2005. This action was filed on February 22, 2005 during the period of revocation. USPS argues that Keeter has no standing to bring this action and cites this court to Arkansas Code Annotated 26-54-112 and *Tribco Manufacturing Co., Inc. v. People's Bank of Imboden,* 67 Ark. App. 268, 998 S.W. 2d 756 (1999) for the proposition that Arkansas does not allow an entity to maintain an action if it has had its charter revoked. USPS is correct in order for this Court to have jurisdiction the party asserting it must have the legal capacity to sue. Its capacity to sue is governed by the law of its state of incorporation. *BLH, Inc. v. United States*, 2 Cl. Ct. 463 (1983).

What USPS overlooks is Arkansas Act 522 of 1999 passed in response to *Tribco, supra* and related cases in which the following language was added to the Act:

**(ii) Reinstatement shall be retroactive to the time that the corporation's authority to do business in the state was declared forfeited.**

This is why USPS cannot refer this Court to a later case and why their argument as to the standing of Keeter, Inc. fails. (Note: Keeter, Inc. later changed its name to Keeter Trading Co., Inc.). Keeter has authority under Arkansas Law, where it is incorporated, to bring this action.

## II. MAJOR/MINOR CHANGES TO CONTRACT

The USPS has never addressed the issue of major/minor changes to the contract and instead alleges that because Keeter quit and refused the USPS appeals process he is the one who violated the parties contract. Keeter has set out his position in his administrative appeal that is at the heart of this complaint. In this matter USPS completely ignores its own handbook. The transmittal letter (Plaintiff's appendix 1) states "This handbook establishes the national policy and procedures for the operation and administration of highway contract routes box delivery service and has been revised to clarify areas of responsibility reflecting all changes in organizational structure and position titles." Certainly USPS and Keeter should rely on the handbook—especially since it is available to all parties at www.usps.gov. Any question with regard to major or minor changes is clearly answered by the handbook (see plaintiff's appendix 2) which states:

**212.1 Manager, Transportation Contract Authority**

The manager, transportation contracts, or his or her designee may order a service change that does not increase the supplier's pay by more than $2,500. All other changes must be negotiated by the manager, transportation contracts. The administrative official is not authorized to negotiate compensation or otherwise amend the contract.

**212.31 Formula to be Used**

When processing extensions or en route boxes, the manager, transportation contracts, will apply the following formula. Compute adjustments in the annual hours for casing and route operations using two constant factors. Multiply the number of additional boxes by 3.64 and the additional miles by 10.4. The sum of the two equals the new hours added to the contract. For example, 10 new boxes and three additional miles equals the new hours added to the route. Multiply 10 boxes by 3.64 + 36.40. Multiply 3 miles by 10.40 + 31.20. Add 36.40 + 31.20 + 67.60 to obtain the total number of additional annual hours.

Adjustments for compensation will be made by the manager, transportation contracts, to the cost worksheet pro rata.

With all due respect to the USPS it is clear why they attack Keeter's corporate status and ignore their own handbook explaining procedures. When one looks at the above it is clear Keeter's position was correct all along. His rate of pay was 14.31. 52 boxes and no miles were to be added to his route. The formula calls for 52 x 3.64 = 189.28 additional hours. 189.28 x 14.31 = $2,708.60. Calculation of this formula should have been so routine and so basic to the contract that a calculation that should have taken only two minutes! Yet the USPS continually used wrong figures and referred to the change as a "insignificant minor change" (AP 89). USPS had to handle it that way because they knew Keeter was opposed to the change and they would be forced to negotiate with him and amend the contract. On February 10, 2004 in response to Keeter's long written explanation (AP 117-118) the USPS finally applied the formula they were contractually obligated to apply (see AP 124). At this point USPS processed a change order to add more money to the route as another insignificant change. The bottom line in this analysis is that adding 52 boxes to the route increased the contract by over $ 2,500.00 and had to be negotiated between Keeter and the contracting officer.

## III. POSTMASTER LINDA ORR CREATED THE CHANGES IN VIOLATION IN VIOLATION OF USPS POLICY

There can not be any dispute that the changes proposed for Keeter's contract were created by Yellville Postmaster Linda Orr—the administrative official. This is not allowed. Regulation 212.1 out of the handbook expressly forbids it and states "The administrative official is not authorized to negotiate compensation or otherwise amend the contract." When Keeter signed his contract with the USPS he received a letter (AP 40-41) from Johnny Lott, Acting Manager, Transportation Contracts which told Keeter "The administrative Official for your route in the Postmaster in Yellville, AR. If you have any concerns or questions relating to route operations,

the administrative office will be glad to answer them. You may also contact Jeanette Wofford at (214) 819-8823" Mr. Lott went on to write:

**Please be aware that there is a difference between contracting and supervisory authority of which you must be aware. Only the Contracting Officer or a representative from this office has the authority to authorize changes to your contract.**

**DO NOT accept requests for changes from anyone other than the Contracting Officer or his representative.**

The record and complaint are replete with indications that Linda Orr created the changes herself and determined the pay. Keeter was not obligated to follow those and was warned by Lott in his letter not to follow those. The change order dated December 24, 2003 (AP 89) was just plain wrong. It was corrected by a change order dated February 19, 2004 (AP 92) that still reflected an insignificant change and made the notation "Added time to route that was not added for original service change….". The USPS in their motion spends much time discussing casing of boxes, etc. Not only is that not relevant to calculation of the contract, it is a "red herring" designed to mislead this court. The first time the record reflects anything about time being a factor is after Keeter wrote his letter of January 31, 2004. At this point the USPS had to have known they were totally in the wrong. On February 6, 2004 the Postmaster requested Keeter be terminated. (AP 129) In response to phone calls and emails on February 10, 2004 Linda Orr first discussed about "time" being a factor in calculations or the contract (AP 128).. In response the correct formula was quickly used (AP 124). AP 125 points out in an email to Linda Orr "There were some changes to these routes that were not written into the service narrative. Please include all information in **your** narrative…. " The decision to cut time or calculate hours did not belong to Linda Orr, nor does the change of routes. Keeter was informed in no uncertain terms not to follow changes or directives to the contract that came from the administrative official .

**IV. WAS KEETER JUSTIFIED IN REFUSING TO DELIVER EXTRA BOXES?**

The record is clear that Postmaster Linda Orr wanted changes to Keeter's route as well as other routes that the USPS had already let out contracts. Keeter was approached and refused. That was Keeter's right under the contract as major changes had to be negotiated with him. Apparently Postmaster Orr devised a plan to change the routes anyway and in her mind decided Keeter had too much time in his contract so she (and she alone) reduced the time in the change order so that the change would reflect an "insignificant" change which Keeter had to accept without question -- although he had the right to seek additional compensation through the USPS appeals process. Postmaster Linda Orr determined the number of boxes to be moved to Keeter's route and the time and the contracting official merely signed off on the Administrative officials changes. Keeter vehemently protested. The USPS knew they were wrong by February 10, 2004 and knew Linda Orr was behind the incorrect changes. Linda Orr had no authority to do what she did and no supervising official apparently took any action against her. Linda Orr tried to get Keeter fired on February 6, 2004 (AP 129) when he continually pointed out her misstates and she continued to write him up each day knowing all along Keeter's position on the contract was correct. The contracting officer knew Keeter was correct under the contract and instead of undoing all the changes instituted by Orr apparently believed the issue was one of money and agreed to pay Keeter the difference. Keeter made it clear he had a contract and would perform in accordance with the contract and continued to do so until the USPS, knowing they were in the wrong (see AP 124) starting docking his pay. The bottom line is that the USPS put economic pressure on Keeter when he discovered that USPS were not living up to the terms of the contract and he was justified in his actions. The USPS cannot defend their actions. They violated their own contract and rules and regulations.

The breach by the USPS was so fundamental to the contract, the handbook and their own warnings to Keeter. The provisions in this contract have never been reviewed by a court in any reported decision. The only case even remotely addressing any issue is *Lassiter v. U.S.* (Fed. Cl. 2004). In order for the government to prevail the government bears the burden of proof on the issue of whether it correctly terminated a contract for default. *CJP Contractors, Inc. v. United States*, 45 Fed.CL. 343 (1999). In this case the government cannot meet that burden of proof because Keeter delivered the boxes he was contracted to deliver. He was terminated because he refused alterations to his contract that were not authorized by the USPS but instead put in place by an official who had no authority to make the changes and once found out USPS used its power as one of the largest government agencies to force Keeter into compliance. To his credit he refused but is still entitled to the benefit of his bargain with the USPS.

## V. CONCLUSION

For the reasons stated herein, Keeter asks this Court to consider this case submitted on stipulated facts, that this court review the evidence, arguments and law and find that Keeter was entitled to bring this action in Court; that the changes asked of him were in fact major changes to the contract to which Keeter was required to agree to in writing and that Keeter did not agree to the changes; that the changes were compiled by Linda Orr, an unauthorized official to make the changes and that Keeter had been warned not to accept changes from unauthorized officials; that when USPS discovered the errors and mistakes they tried to use their economic influence on Keeter to get Keeter to ignore his own contract and his own principles.

That should the Court make the above findings that the court then the motion for summary judgment should be denied. Keeter further prays that if the court makes the findings as

he has outlined then this Court should then determine Keeter has sustained damages and set that matter for a hearing

EDWARD KEETER and KEETER TRADING CO., Inc

/s/ Christopher O'Hara Carter
Plaintiff's Attorney
THE LAW OFFICES OF CHRISTOPHER O'HARA CARTER, P.A.
P.O. Box 300
Yellville, AR 72687-0300
Tel: 870-449-2100
Fax: 870-449-2105
carterlaw@yellville.net

UNITED STATES POSTAL SERVICE®



# HIGHWAY CONTRACT ROUTES BOX DELIVERY SERVICE

HANDBOOK P-5
JULY 2001

PLAINTIFF'S EXHIBIT

tabbies®

UNITED STATES
POSTAL SERVICE®

# Highway Contract Routes — Box Delivery Service

Handbook P-5

July 2001
Transmittal Letter

**A. Explanation.** This handbook establishes the national policy and procedures for the operation and administration of highway contract routes box delivery service and has been revised to clarify areas of responsibility reflecting all changes in organizational structure and position titles.

**B. Distribution**

1. **Initial.** This handbook is being distributed directly to all areas, districts, processing and distribution centers/facilities, and administrative officials.
2. **Additional Copies.** Order additional copies from your material distribution center on PS Form 7380, *MDC Supply Requisition.*

**C. Online Availability.** This handbook is also available online on the Postal Service Internet at *http://www.usps.com* by selecting "Info," then "Postal Periodicals and Publications," and then "Handbooks," and on the Postal Service Intranet by selecting "Information," "Policies and Procedures," "Handbooks," and then either "By Document ID Number" or "By Title."

**D. Comments and Questions.** Submit comments, suggestions, or questions to:

MANAGER NATIONAL MAIL TRANSPORTATION PURCHASING
PURCHASING AND MATERIALS
US POSTAL SERVICE
475 L'ENFANT PLZ SW
WASHINGTON DC 20260–6220

**E. Supersession.** This handbook supersedes the March 1989 edition of Handbook PO–504. This handbook has been renumbered to Handbook P-5 as part of the Purchasing Practices handbook series.

**F. Effective Date.** This revision is effective upon receipt.

Keith Strange

*Keith Strange*
*Vice President, Purchasing and Materials*

PLAINTIFF'S EXHIBIT 2

e. If the administrative official has an unusual or questionable case (one that may possibly warrant a transfer of duties as described in (d) above), a recommendation proposing the change must be submitted through the CSDD to the manager, transportation contracts, together with all supporting facts. The manager, transportation contracts, will review the request and advise the CSDD of the approval or disapproval of each request. The manager, transportation contracts, must obtain Headquarters concurrence with all approvals.

## 212 Compensation Adjustment

### 212.1 Manager, Transportation Contracts Authority

The manager, transportation contracts, or his or her designee may order a service change that does not increase the supplier's pay by more than $2,500. All other changes must be negotiated by the manager, transportation contracts. The administrative official is not authorized to negotiate compensation or otherwise amend the contract.

### 212.2 En Route Boxes

#### 212.21 Changes in Box Total

The administrative official will inform the CSDD and the manager, transportation contracts, when the supplier's boxes are increased or decreased by 14 or more.

### 212.3 Negotiations

#### 212.31 Formula to be Used

When processing extensions or en route boxes, the manager, transportation contracts, will apply the following formula. Compute adjustments in the annual hours for casing and route operations using two constant factors. Multiply the number of additional boxes by 3.64 and the additional miles by 10.4. The sum of the two equals the new hours added to the contract. For example, 10 new boxes and three additional miles are added to the route. Multiply 10 boxes by 3.64 = 36.40. Multiply 3 miles x 10.40 = 31.20. Add 36.40 + 31.20 = 67.60 to obtain the total number of additional annual hours.

Adjustments for compensation will be made by the manager, transportation contracts, to the cost worksheet pro rata.

#### 212.32 Economic Adjustments

Certain economic adjustments are allowed for by the contract. The administrative official is not to influence the supplier regarding the supplier's application for adjustment.

PLAINTIFF'S EXHIBIT
tabbies