# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## No. 05-243 C

************************************************)**
**EDWARD KEETER and )**
**KEETER TRADING COMPANY, INC., )**
***Plaintiffs*** **)** **Case 1:05-cv-00243-LJB**
**)**
**v. )**
**)**
**THE UNITED STATES, )**
***Defendant*** **)**
************************************************)**

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

May 4, 2007

_/s/ Douglas J. Colton___

**Douglas J. Colton**
475 L'Enfant Plaza SW
Rm. 6323
Washington, D.C. 20260-1127
Tel. 202.268.6408
Fax. 202.268.5287
*douglas.j.colton@usps.gov*

**Counsel for Respondent**

# TABLE OF AUTHORITIES

## STATUTES AND CASES CITED


ARKANSAS CODE ANNOTATED §26-54-112 pp. 1 - 3

*Terry v. Rice (In re: Cheqnet Systems, Inc),*
246 B.R. 873 (U.S. Bk. E.D.Ark. 2000) pp. 2, 3

*Laice R. McFadden*, PSBCA No. 4063 (1998) p. 6

*Lee D. Shumate*, PSBCA No. 3647 (1997) p.6

*Robert A. and Sandra B. Moura*, PSBCA Nos. 3460, 3622 (1995) p. 6

## INTRODUCTION

Plaintiff has submitted its "Answer" in opposition to defendant's Motion for Summary Judgment, but does not argue that there are any material facts in dispute. Nor does plaintiff evidently contest defendant's legal analysis of the Contract. Plaintiff instead diverts to two newly minted arguments. In one of them, it suggests that refusal to service the AMBs was not a breach of its duties because the AMBs "really" were not validly added to the Contract.[1] In its other contract argument, plaintiff presents a Postal Service "Handbook" as a governing statement of what the Contract actually means. These arguments are diversions because neither of them deals with what the Contract actually does say, and both of them float away on inspection. Before looking at them, defendant will briefly return to the issue of plaintiff's standing to bring this action.

### I. STANDING

Defendant's standing argument was based on ARKANSAS CODE ANNOTATED §26-54-112, as applied and explained in *Terry v. Rice (In re: Cheqnet Systems, Inc), 246 B.R. 873 (U.S. Bk. E.D.Ark. 2000)* and similar earlier decisions under Arkansas law. *Terry* was issued in early 2000, following a 1999 amendment of the statute: counsel read it as

---

[1] Plaintiff does not explain how this theory excuses its subsequent refusal to provide any service at all, but perhaps it assumes that invalid addition of the AMBs to its duties caused all of the ensuing events leading to termination. On this theory, plaintiff's defaults were all defendant's fault. If there is another way to rationalize plaintiff's conduct, defendant cannot figure it out.

stating that with regard to the issue here presented, the 1999 amendment did not alter Arkansas law, that had long denied corporations whose charters were revoked the capacity to institute suit.

Plaintiff's assertion that the 1999 amendment reversed, rather than continuing, Arkansas law on this point caused the undersigned to re-examine the authorities. Defendant now acknowledges that citation of *Terry* to support assertion that Arkansas law (for these purposes) remained the same in and after 2000 as it had been previously was inappropriate. Counsel apologizes for ascribing to *Terry* a significance it does not have[2] -- although the actual meaning of the 1999 statutory amendment could still be as counsel incorrectly thought *Terry* supported.

Defendant cannot otherwise comment on the purpose of the amendment, in the absence of either legislative history or judicial consideration of it. The amendment does *not* say that reinstatement of plaintiff's charter retroactively validated its filing of this action: the meaning of "retroactivity" in the statute is not explained, and cannot just be assumed to repair for all purposes a lack of capacity to sue that exists when suit is filed.

---

[2] Counsel regrets his apparent misapprehension of the significance of *Terry*. There was no intent to misstate the law, but counsel may have done so because *Terry* cites to, without quoting from, §26-54-122. The citation thus does specify the specific language being discussed, and footnote 7 seemed (to counsel) to explain how retroactive reinstatement of a revoked corporate charter could occur without providing retroactive authorization for an action filed while the charter was revoked – an explanation consonant with the amendment. Since the amendment does not explain its own meaning or application, counsel read *Terry* as confirming continuity of Arkansas law even if the court's views could not be precedental. Counsel apologizes for his failure to note and integrate information elsewhere in *Terry* indicating that the decision dealt only the statute prior to the 1999 amendment. This was an error, but the error was not intentional.

Both the longstanding contrary rule in Arkansas and the non-specific language of the 1999 amendment provide reasons to hesitate before adopting plaintiff's statement of the current status of Arkansas law on this point: there are no more recent precedents for plaintiff's position than for defendant's. *Terry* does suggest a way to harmonize a ruling that plaintiff lacked, and did not regain, standing to bring this action with the 1999 amendment of §26-54-122.

## II. ARGUMENTS ABOUT THE CONTRACT

Even were plaintiff to have standing, its claims must still be dismissed. Plaintiff first defaulted by refusing to provide services that were added to its duties by the Contracting Officer,[3] and subsequently abandoned the Contract entirely. Plaintiff did so in derogation of its duty to proceed, of the *Disputes* clause of the Contract, and of instructions from the C.O. Plaintiff's arguments opposing summary judgment neither deny nor excuse its failures to comply with the terms of the Contract.

Plaintiff concedes the accuracy of defendant's factual recitation, including those established in the Requests for Admission and those proposed by defendant as undisputed facts. *Pl. Brief, p.2* Notwithstanding its concession of factual agreement, plaintiff ventures two arguments that rest on evidentiary premises neither found in the Record nor properly placed before the Court.[4] Plaintiff simply ignores the arguments

---

[3] The same abbreviations are used here as in defendant's Motion papers: the AMBs are the 52 additional mail boxes assigned for servicing by plaintiff, that lie at the heart of this dispute.

[4] There is no cross-motion by plaintiff. Plaintiff's arguments appear to assume that the Court must now grant judgment to one party or the other.

made by defendant, and offers opposition to dismissal that is insufficient even with its inadmissible supporting evidence. The Motion for Summary Judgment is effectively unanswered, if not unopposed.

### A. <u>THE YELLVILLE POSTMASTER</u>

Plaintiff argues (*Br., pp 7-10*) that the December 23, 2003 order requiring KI to provide service for the AMBs was invalid because it was not the decision of the Contracting Officer. Plaintiff says that this contract change was accomplished by Ms. Linda Orr, the Yellville Postmaster and Administrative Official for the Contract. Thus, while Ms. Orr had neither requisite authorization nor supervision, she supposedly orchestrated the addition of the AMBs to KI's contractual duties despite its known objections.

In order to make this argument, a narrative is provided in which events established in the Record are augmented by attributing to Ms. Orr attitudes and intentions she supposedly held (*Br., pp 4, 7-9*) as she "created" a change to the Contract that "the contracting officer merely signed off on." (*Id., p. 9*). This account of usurped authority is presented as though its telling shows the order adding the AMBs to be self-evidently invalid. The assumed invalidity in turn treated as self-evidently sufficient to protect plaintiff from adverse consequences associated with its refusal to perform the duties that were improperly assigned. This legal proposition would be dubious were the Court to consider it,[5] but it is not in fact before the Court.

---

[5] The document that plaintiff invokes to establish the impropriety of Ms. Orr's activities actually endorses even the exaggerated version of her role that plaintiff presents. AP41 specifically confirms the AO's authority to recommend service changes to the C.O., and

The Court need not determine the legal impact of plaintiff's usurpation scenario, because there is no support for it in the Record: the use of suggestive adjectives and adverbs in a narrative in a brief is not evidence. Plaintiff admits what the Record dispositively proves: the December 23, 2003 Order that added the AMBs to the Contract was issued *by the Contracting Officer*. ***R12***, ***Prop. Find. 7*** Without the suggestive modifiers, verbiage, plaintiff is only saying that the AO provided information to the C.O., who then issued a decision. There is no fact that actually indicates usurpation of authority, or calls the independence of the C.O. into question. Plaintiff's argument offers a conclusion (of improper "control" of the C.O.) without providing a single fact to hang it on.

Nor does plaintiff explain why its usurpation scenario exculpates plaintiff from all of its defaults, including default of its obligation to perform the Contract.[6]

Plaintiff's argument is based on invention of a role for Ms. Orr not found in the Record. This alternative reality is presented without explaining how or why it defeats summary judgment. Nothing in the argument provides a reason to excuse plaintiff from

---

to "authorize servicing of in-line boxes". Even with plaintiff's embellishments, Ms. Orr's role remained within its authorized limits

[6] Whatever the provenance of the December 23, 2003 Order, later events confirmed it. That decision was repeatedly restated and reinforced in conversations between KI and C.O. representatives, some of which included the C.O. ***R16-27*** No usurping role by Ms. Orr is suggested for the increase of KI's compensation in response to its complaints, nor for the measures taken when plaintiff refused to provide services. Assertion that the CO did not make the December 23, 2003 decision fails to account for multiple later decisions that assume the validity of that order as their starting point, thereby both factually and legally refuting plaintiff's argument.

its contractual obligation – including the obligation to challenge improper orders by using means the Contract provides, instead of walking away from it.

**B. THE HANDBOOK**

Plaintiff attaches to its opposition three Exhibits taken from what it says is a Postal Service Handbook, from which plaintiff derives obligations owed to plaintiff that defendant breached. This argument demands consideration of evidence that has not been admitted and is not admissible, for purposes that are not coherently explained. The three Exhibits are no more than inadmissible evidence in search of a legal theory, and do not provide any basis for denying summary judgment.

ADMISSIBILITY Defendant objects to consideration (or admission), of Exh.1, 2, and 3. These clearly are excerpts from a document that is not fully presented, and they are offered without the requisite authentication and foundation. These may be true copies taken from a Postal Service publication, but they are fragments and are not self-authenticating. Without supporting testimony to cast light on their origin, purpose, intention, proper use, intended audience, effective dates, and limitations, these pages cannot be considered as evidence.

Even were they admitted, the Exhibits would not establish any rights belonging to plaintiff. No explanation is made of why whatever they say *binds* defendant in its dealing with plaintiff. Although neither this Court nor the Court of Appeals for the Federal Circuit appear to have addressed this specific issue, the Postal Service Board of Contract Appeals has consistently held that Postal Service Handbooks and similar internal

administrative guides do not create rights that contractors can enforce.[7] There is no reason to accord these pages a legal status requiring their consideration along with the Contract itself.

RELATIONSHIP TO CONTRACT The purpose for which the Exhibits are presented is not stated. Are they to be taken as part of the Contract at the time it was executed? Plaintiff does not identify any Contract clause incorporating them, directly or by reference. Were they added to the Contract by subsequent amendment? There is no evidence that they were. If they are extrinsic to the Contract, why should the Court consider them at all? If plaintiff wants them to be considered, it must be to prove some material point. Plaintiff fails to articulate the legal theory that this evidence is presented to support.

ACTUAL RELIANCE The closest that plaintiff comes to proposing a reason to consider the Exhibits is suggestion (but not assertion) that they embody plaintiff's expectations about the Contract, to which defendant should be bound even if those expectations are not written into the terms of the Contract. Plaintiff asks the Court to impose these expectations on defendant on the ground that KI *could have* relied upon the Exhibits.

It is telling that plaintiff does not offer an Affidavit or other testimony to establish its knowledge of the Handbook. Nothing plaintiff says actually is a claim that the Handbook was known to it when the Contract was entered. Without specific testimony that plaintiff **did** see and rely on the Handbook, its contents are irrelevant. They cannot

[7] *See, e.g.*, ***Laice R. McFadden*, PSBCA No. 4063 (1998); *Lee D. Shumate*, PSBCA No. 3647 (1997); *Robert A. and Sandra B. Moura*, PSBCA Nos. 3460, 3622 (1995).**

be taken as evidence of the meaning of the Contract or of terms on which it relied. They are just irrelevant pieces of paper.

MATERIALITY The Exhibits do not state anything materially different than the language of the Contract itself. The Contract wording is discussed at length in defendant's Brief, and summary versions of how Box contracts work are not probative regarding any disputed issue in this case.

## CONCLUSION

Plaintiff asserts that defendant has not addressed the "major/minor change" distinction at the heart of its position. That distinction was analyzed at length in defendant's brief, but defendant takes this assertion as indicating that plaintiff ***still*** does not grasp the point that defendant has tried to convey from the time that KI first said it would not service the AMBs: *plaintiff is entitled to dispute defendant's contract interpretation, but **not** by abandoning contract performance.*

The "minor/major" distinction is not pertinent because it does not provide a means of identifying a cardinal change; plaintiff does not even try to characterize addition of the AMBs as a cardinal change of the Contract. Instead, plaintiff continues to read the Contract as though it does not contain plaintiff's duty to proceed.

The "minor/major change" distinction might have been a ground on which plaintiff could challenge assignment of the AMBs – but it is not a ground for ceasing to perform. Plaintiff's opposition to makes no attempt to explain what that duty means, if not what defendant contends. If plaintiff's defaults under the circumstances of this case do not

justify termination of the Contract, then the "duty to proceed" is just toothless surplusage.

Plaintiff's arguments are factually and legally insubstantial. For the reasons stated in its Motion for Summary Judgment, defendant asks that judgment be entered dismissing the Complaint herein.

May 4, 2007

Respectfully submitted:

/s/ Douglas J. Colton

**DOUGLAS J. COLTON**
475 L'ENFANT PLAZA SW
RM. 63233
WASHINGTON, D.C. 20260-1127
TEL. 202.268.6408
FAX. 202.268.5287
*douglas.j.colton@usps.gov*

**COUNSEL FOR DEFENDANT**