# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## No. 05-243 C

| | | |
|---|---|---|
| ************************************* ** | ) | |
| EDWARD KEETER and | ) | |
| KEETER TRADING COMPANY, INC., | ) | |
| *Plaintiffs* | ) | CASE 1:05-CV-00243-LJB |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| *Defendant* | ) | |
| ************************************** * | ) | |

DEFENDANT'S PROPOSED STIPULATED FACTS
REGARDING BACKGROUND AND FUNCTION OF WITNESSES

MANAGER OF TRANSPORTATION CONTRACTS/CONTRACTING OFFICER (Eracio Rodriguez)

Eracio N. Rodriguez is Manager, Transportation Contracts ("MTC"), in the Postal Service Southwest Area Distribution Networks Office ("SWDNO") in Dallas, Texas. Rodriguez has been employed by USPS since 1977, became a Contract Specialist at SWDNO in 1990, and was appointed as MTC/CO at SWDNO in November, 2002. He is the contracting officer ("CO") responsible for Highway Contract Route transportation contracts operating in Texas, Arkansas, Oklahoma, Louisiana, and New Mexico. These include "box delivery" contracts such as HCR 72665. More than 2,200 concurrent HCR contracts are awarded and administered by the SWDNO, involving a current aggregate annual

expenditure of almost $270 million. HCR 72665, with an initial annual rate of slightly less than $40,000, was one of the smallest of them.

The MTC/CO has considerable autonomy in administration of HCR contracts, subject to Postal Service directives and policies. The terms and provisions used in HCR contracts are established nationally. Guidance as to the intent and meaning of standard contract terms is sometimes available -- from *Management Instructions*, *Manuals*, HANDBOOKS, or other statements of USPS policy and procedure -- but more often the CO and Specialists will be familiar with the application of standard provisions through personal experience or through the collective knowledge of DNO co-workers who have administered the same contract provision in thousands of HCR contracts over many years.

The MTC/CO is charged with ensuring reliable movement of mail between Postal Service facilities, and (for box delivery routes) between a local Post Office and its individual customers. The highest priority for the DNO is to achieve maximum reliability of service, both because doing so is defendant's public mandate and because efficient use of the enormous national mail-processing system depends upon predictable, tightly-scheduled work-flow. No policy or practice was established at SWDNO that would jeopardize operations by knowingly underpaying transport suppliers.

CONTRACT SPECIALISTS (Mark McCague, Jeanette Wofford)

The MTC/CO is assisted by a staff of Contract Specialists and Senior Contract Specialists, who are responsible for day-to-day supervision and administration of HCR contracts awarded by SWDNO. A Specialist is assigned for each contract, and for each three or four Specialists there is a Senior Specialist who provides supervision, backup, and assistance for members of that work team.

Specialists are responsible for most of the routine contract and operational issues that arise under their assigned contracts, but they do not have authority to award, renew, or terminate a contract, nor to change a contract's rate of compensation or its specifications. Those decisions must be made by the CO, although a Specialist can be delegated authority to act on behalf of the CO under specified circumstances (such as absence of the contracting officer from the office) and may have limited independent contracting authority. Specialists can debit supplier pay for omitted service or other costs created by the supplier that fall on the Postal Service, and can arrange emergency service when a supplier defaults (or otherwise is terminated on short notice) and service would otherwise be interrupted. Senior Specialists are involved with and may have substantial responsibility for contract solicitation, award, renewal, and termination, and may have decision authority to make some adjustments.

It is not feasible for the CO to be routinely involved in active supervision of each of the large number of HCR contracts administered by the DNO,

particularly the comparatively small ones such as those for box delivery. The Specialist assigned to a contract advises the CO, either orally or in writing, of pending issues that may require CO resolution, and of significant non-routine events related to the contract and its supplier. Specialists often resolve problems by working with their Senior Specialist, but also use their judgment to decide when the CO should or must be consulted: they are expected to do so when it appears that resolution of a problem might be beyond the Specialist's authority. The Specialist then calls the matter to the CO's attention, obtains and provides additional information as required, and usually prepares for execution the documents needed to state and effectuate the CO's decision. The CO may observe, and participate in, dealings of a Specialist with a Supplier, and often counsels the Specialist as well as making final decisions.

Jeanette X. Wofford was the Contract Specialist, and Mark McCague was the Senior Specialist, at the SWDNO to whom HCR 72665 was assigned during these events. Wofford has been employed by USPS since 1980, became a Transportation Networks Specialist in 1992, and has been a Contract Specialist at SWDNO since 1998. McCague has been employed by USPS since 1977, and has been a Contract Specialist at SWDNO since 1996 and a Senior Specialist since January, 2003.

ADMINISTRATIVE OFFICIAL (Linda Orr)

The CO appoints an Administrative Official ("AO") for each HCR contract, who is a Postal Service employee working at a facility served by the contract route. For a box delivery contract, the AO is an employee at the Post Office from which customer delivery is made, often its PostMaster for whom this is an added responsibility.

The AO provides on-site supervision of the contract's supplier, through direct observation of its performance and frequent communication about any contract-related problems or needs that arise. The AO does not have authority over the contractual relationship itself -- matters such as the contract award, its terms or rate of compensation, and its termination -- and must advise the DNO if concerns about the relationship arise that may require a change in a contract's status or its terms. The AO and the Specialist assigned to a contract may be in frequent communication about operational issues, often without involving the CO unless and until CO participation becomes useful or essential.

The AO may offer recommendations to the DNO about HCR suppliers and operation of their routes: the AO is the DNO's primary source of information about issues involving a contractor's operations at the Postal facilities or delivery points served by its contract. An AO is required to advise the DNO about appropriate configuration of the box delivery routes that the AO supervises, including reporting any need to modify a route.

February 8, 2008

Respectfully submitted:

s/ Douglas J. Colton
________________________

**DOUGLAS J. COLTON**
475 L'ENFANT PLAZA SW
RM. 6323
WASHINGTON, D.C. 20260-1127
TEL. 202.268.6408
FAX. 202.268.5287
*douglas.j.colton@usps.gov*

COUNSEL FOR DEFENDANT
UNITED STATES POSTAL SERVICE

## CERTIFICATE OF SERVICE

I certify that on February 8, 2008 the foregoing DEFENDANT'S PROPOSED STIPULATED FACTS REGARDING BACKGROUND AND FUNCTION OF WITNESSES was served on plaintiffs herein by electronic transmission to counsel's known email address, and also by placing a true copy thereof in the United States Mail, First Class postage prepaid, addressed to:

**CHRISTOPHER CARTER, ESQ.**
**P.O. BOX 300**
**YELLVILLE, ARKANSAS 72687-0300**

_____/s/ Douglas Colton__