IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EDWARD KEETER AND
KEETER TRADINGCOMPANY Inc. PLAINTIFFS

v. No. 05-243C
(Judge Bush)

UNITED STATES OF AMERICA DEFENDANT

## PLAINTIFF'S MEMORANDA OF FACT AND LAW

Now comes the Plaintiff Keeter Trading Company, Inc. by and through itsattorney Christopher O'Hara Carter of the Law Offices of Christopher O'Hara Carter, P.A. and for it's memoranda of fact and law pursuant to the Court's order of December 13, 2007 and Appendix A, Section 14 of the Courts Rules states:

**I. FACTS**:

**Note: Most facts have previously been set out in the Court's findings of July 17, 2008. Additional facts have been added only as it relates to the plaintiff's contention of bad faith on the part of the government.**

Keeter, Inc., hereinafter "Keeter" signed a contract with the USPS for a Home Carrier Route in Marion County, Arkansas covering the period from July 1, 2002 to June 30, 2006. The original route under the contract had 249 boxes and was amended on December 22, 2003 to add an additional box. This amendment was in conformity with the standard formula called for by the contract between Keeter and the USPS. During the summer of 2003 Yellville, Arkansas Postmaster Linda Orr(from whose post office Keeter's route originated) decided to change four home carrier routes. Ms. Orr will

testify she felt it was in the best interest of the Post Office and discussed these changes with Flippin Postmaster Barbra McCutcheon (whose office would also be affected) and carriers Duane Hoover and Ed Keeter (President of Keeter, Inc.). Keeter told her he was not interested in the changes at all and the postmaster went ahead and designed the changes with the help of carrier Duane Hoover. This process took several months between Hoover and Orr and Keeter was not consulted further. Ultimately the changes gave Keeter 52 boxes along his current route of travel and deleted those boxes from carrier Duane Hoover who received additional boxes and mileage elsewhere. In early December, 2003 Postmaster Orr indicated to Keeter that the contemplated change would go into effect. All parties agree that Keeter refused to accept this change and made his refusal well known prior to the time any change order went into effect. On January 2, 2004 Keeter was told by contracting officer Jeanette Wofford (Dallas, TX office and contracting officer for Arkansas) would "be in jeopardy of losing his route if he did not do as instructed." Keeter made it clear that the postmaster was making the change as an accommodation to other carriers, specifically Duane Hoover, and to Keeter's detriment. Further, Keeter argued that the addition of 52 boxes to the contract was a major change as defined by his contract and could only be implemented by a written and negotiated agreement between Keeter and the Contracting Officer amending the original contract.

The USPS unilaterally implemented the change Keeter made it clear to the USPS it did not want to been seen as accepting the change by performance. The change went into effect on January 24, 2004 and beginning that day through February 20, 2004 Keeter continued to deliver the mail to the 250 boxes under his original

contract as amended but refused to sort, deliver or acknowledge any mail from the 52 additional boxes. Postmaster Orr will admit that she had no complaints about his route during this time period from any local party (i.e. Marion County, Arkansas) other than herself. Keeter was written up on Form 5500 a total of 23 times during this period for his refusal to case and deliver those 52 boxes. Form 5500 has a place for the contractor to write his comments and each time he wrote that he did not agree to the change and it was not according to his contract. Form 5500 has a place for the Administrative Official (Linda Orr) to respond to Keeter's comments and Linda Orr will admit and the documents support that she never responded to his comments until February 9, 2004 when she responed to complaints all Form 5500s filed to that time with the one word "chargeable".

On January 28, 2004 a conference call was held between contracting officer Jeanette Wofford (contract specialist). Ed Keeter (contractor) and Mark C. McCague (Senior Contract Specialist). The parties do not agree on everything that was said and that will be a factual dispute at trial. However Jeanette Wofford took notes and it was clear Mr. McCague told Keeter that his performance was unsatisfactory and Ed Keeter (not his lawyer) should put his position in writing. Mr. Keeter did just that through his letter of January 31, 2004. On February 20, 2004 the USPS began to dock Keeter's pay and as a result Keeter turned in his keys because the USPS refused to follow its agreement with Keeter. Keeter was terminated and appealed the termination (see exhibit 2 to the complaint filed in this action). A ruling was issued on April 28 denying all claims because Keeter refused to perform its contract. Keeter's primary issue as to the definition and understanding of major/minor changes in the contract were never

addressed by the USPS. The record will reflect not one official listened to him or took his position seriously. Keeter thus filed this action on February 22, 2005.

**II. CONTENTIONS AND ISSUES OF FACT FOR THE COURT:** It is Keeter's contention and intent to prove that it had a contract provision involved in this matter was simple to understand and there could not be any confusion as to his position with the USPS. The USPS just would not listen to him, negotiate or even acknowledge the correctness of his position. Keeter contends that with three persons from the same family working at the small Yellville Post Office that they received special treatment. This is evident by changes made to Duane Hoover's contract within 2 months of its inception and the subsequent changes made to Keeter's contract, contrary to the anticipated testimony of Postmaster Linda Orr, were made to pacify Duane Hoover. Duane Hoover and Linda Orr designed the new routes and Ed Keeter will testify both told him to accept the plan. That is not negotiation but intimidation. The changes could not be put into place without Keeter's consent and that would not be coming.

The USPS has contended throughout that they have treated Keeter fairly and had no animosity towards him. Yet time after time Keeter's USPS supervisors told Keeter to do what we tell you or we will dock your pay and may terminate the contract. The USPS is presumed to know what its own contracts say and all four postal employees involved with this contract (Orr, Wofford, McCague and Rodriquez) are all long-term postal employees and with the exception of Orr, each has dealt with hundreds if not thousands of contracts. Calculating the contract formula should have been routine but no one did it and Rodriquez even refuses to discuss it. The USPS made Keeter put

his position in writing, which he did on January 31, 2004 and made it clear that this was a major change to his contract under the contract terms and he did not wish the change. One the position was put in writing the requests for termination increased greatly as indicated by the plaintiff's exhibit list. The USPS continued (and continues) to misstate Keeter's position and believed the issue at hand was about money. The Court will find Ed Keeter, President of Keeter, Inc. is a little different from most individuals and he reads contracts and holds hard and fast beliefs. Keeter did not want the changes because of the extra time that would be involved—it was never about money. It was a principle.

The USPS did not have to use its tactics of intimidation and utter disregard for Keeter's contractual rights—they could have reduced the boxes to 40 and he would have to accept or the USPS could have determined that negotiations were at an impasse and terminated the contract for convenience. What will become clear is that Keeter "bucked the system" and challenged the authority of those to walk all over him and his company.

If the parties to not agree on another standard of damages then the defendant if the Court finds bad faith then the plaintiff submits the following analysis:

**BAD FAITH DAMAGES:**
**(assuming no agreement by the parties)**

TIME PERIOD: Ed Keeter left on February 20, 2004 and the contract was to expire June 30, 2006. This represents 2 years, 4 months and 8 days, or in numerical terms

2.356 years. (8 days Feb/31 March/30 April/31 May/ 30 June or 130 days divided by 365 gives us .356 of a year).

**A. 2.356 years remained on the contract.**

PROFIT EXPECTATIONS: Keeter Trading, Inc. is a corporation. It exists to make money for its shareholders (in this case Ed Keeter). What money the corporation passes to its shareholders is its profit (especially for an S corporation). If Keeter has draws, salaries, or reimbursement for expenses they are all monies the shareholder receives and should be defined as profit. 2004 can hardly be considered as a basis because there were only 51 days of contract and the USPS took its own deductions. Keeter has concentrated on the 2002 and 2003 corporate tax returns--and mainly 2003. Keeter Trading had more assets and income than from the postal route so the figures have to be scrutinized. In simple terms Keeter received $18,099 as ordinary income from the contract and the contract paid 39,693. A simple method would be to take 18,099 x 2.356 and declare that the total damages for the breach over the contract would be $ 42,641.24 plus interest at the legal rate. Potentially there would be increases/decreases in the contract based on a variety of factors and there is no guarantee there would be either.

**B. Base amount $ 42,641.24**

DEDUCTIONS: Keeter will concede that bank charges, uniforms, office expenses would be incurred regardless. There are really just two items to argue over Mileage reimbursement and "outside services". The outside services consisted of paying Mr. Keeter's brother who ran the route once a week. These outside services are a subcontractor, an expense, no different than hiring an accountant, these deductions

cannot be considered a profit for either the corporation or the shareholder. That really leaves "mileage". Keeter was required to purchase a vehicle which he did in his own name as opposed to the corporation. Part of the mileage takes into account his car payments, as well as gas insurance and repairs and depreciation. The corporation (i.e. the plaintiff) itself incurred no expenses and reimbursed Keeter in 2003 $12,826 for mileage. That is the shareholder and an expectation from the shareholder. Because the mileage under the contract would not vary much the $12,826 figure from the 2003 tax return is a good figure and if $12,826 is multiplied by 2.356 the total is $30,218.06.

**C. OTHER PAYMENTS TO SHAREHOLDERS $30,218.06**

Based on this analysisKeeter would suggest that if there is bad Faith on the part of the USPS then the damages for the remainder of the 2.356 years on the contract would be $ 72,859.30.

**III. LEGAL ISSUES:** The primary issue for the court to decide is whether under the facts outline above, if proved by the plaintiff, constitute bad faith on the part of the government. If it is then the court must decide the issue of damages. If the plaintiff cannot prove bad faith then the defendant is entitled only to damages under his “termination for cause” provision which the parties agree are $13,372.88 and repayment of a deduction of $424.80 for a total of 13,797.68 plus interest at the legal rate. If the plaintiff prevails in his bad faith argument then damages will be an issue for the Court.

**IV. LAW:** As the court has pointed out in its decision of July 17, 2004 the plaintiff bears a high burden of proof—well-nigh irrefragable proof. This court in *Erinys Iraq Ltd. V. U.S. (Fed*. Cl. 9-14-2007) wrote "the standard for demonstrating 'well-nigh irrefragable proof,' urged by defendant, is high, as it refers to 'evidence that cannot be refuted or disproved.' Id. at 1240 (internal quotation omitted). As with the clear and convincing standard, the requirement of "well-nigh irrefragable proof" also sets a high hurdle for a challenger seeking to prove that a government official acted in bad faith: In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated to evidence of some specific intent to injure the plaintiff.

The Supreme Court had held that "in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment," the official's decision under such clauses would be "conclusive upon" both the contractor and the government. *Kihlberg v. United States*, 97 U.S. 398 (1878)

Based upon these two cases the burden is on the plaintiff to prove either "gross mistake" or "failure to exercise honest judgment" **and** some specific intent to injure the plaintiff. The evidence clearly supports the either initial proposition. The parties agree that no less than four times Keeter, Inc. orally informed its superiors that it did not accept the changes (Summer '03; December '03, January 2, 2004 and January 28, 2004) and in writing 25 times (23 responses to write ups; letter of January 31, 2004 and letter of February 20, 2004) and a 26th time on his initial appeal to Mr. E. N. Rodriquez. There were other minor conversations concerning the matter but the fact remains that there were 30 major discussions and not once has the postal service admitted they were wrong and Keeter, Inc. was right. The USPS still does not concede Keeter's

position today and have fought Keeter for 4 years. The contract is very simple and reads:

**212.1 Manager, Transportation Contract Authority**

The manager, transportation contracts, or his or her designee may order a service change that does not increase the supplier's pay by more than $2,500. All other changes must be negotiated by the manager, transportation contracts. The administrative official is not authorized to negotiate compensation or otherwise amend the contract.

**212.31 Formula to be Used**

When processing extensions or en route boxes, the manager, transportation contracts, will apply the following formula. Compute adjustments in the annual hours for casing and route operations using two constant factors. Multiply the number of additional boxes by 3.64 and the additional miles by 10.4. The sum of the two equals the new hours added to the contract. For example, 10 new boxes and three additional miles equals the new hours added to the route. Multiply 10 boxes by 3.64 + 36.40. Multiply 3 miles by 10.40 + 31.20. Add 36.40 + 31.20 + 67.60 to obtain the total number of additional annual hours.

Adjustments for compensation will be made by the manager, transportation contracts, to the cost worksheet pro rata.

Ms. Swofford, Mr. McCague and Mr. Rodriquez will all testify that they have held their positions for a number of years and have handled hundreds, and in Mr. Rodriquez's case, thousands of contracts. Jeanette Swofford will testify that neither she nor her supervisor ever attempted to **negotiate** with Keeter. Ms. Swofford will testify that the goal the USPS wanted to achieve was to try to satisfy Mr. Keeter to get him to do the work. Keeter made it clear it would not accept the changes. It is clear the government did not use "honest judgment" in their dealings with Keeter. In fact, the evidence supports that they used none at all The USPS failing to even look at the contract continually threatened to harm Keeter by threatening to take money from it (or terminate its contract) and then actually taking money on February 20, 2004. That last day Keeter performed services for the USPS.

Courts have found bad faith when confronted by a course of government conduct that was "designedly appressive, " *Struck Const. Co. v. United States, 96* Ct. CL. 186, 222 (1942) or that "initiated a conspiracy" to "get rid" of a contractor *Knotts v. United States*, 121 F. Supp. 630, 636 (Ct. Cl. 1954). Cited in *North Star Alaska Housing Corporation v. U.*S. (Fed. Cl. 4-2-2007). The *Struck* court held "{i}f the aggregrate of the actions of all the agents would, if all done by one individual, fall below the standard of good faith, {the government} for who the various agents acted should be held to have violated that standard."

**AUTHORTIES CITED**

UNITED STATES SUPREME COURT PAGE

*Kihlberg v. United States,* 97 U.S. 398 (1878)…………………………………………8

UNITED STATES COURT OF FEDERAL CLAIMS

*Erinys Iraq Ltd. V. U.S.* (Fed. Cl. 9-14-2007)……………………………………………8

*North Star Alaska Housing Corporation v. U.*S. (Fed. Cl. 4-2-2007)……………………10

*Knotts v. United States*, 121 F. Supp. 630, 636 (Ct. Cl. 1954)……………………………10

*Struck Const. Co. v. United States, 96* Ct. CL. 186, 222 (1942)………………………....10

STATUTES

None

KEETER TRADING CO., Inc

/s/ Christopher O'Hara Carter

Plaintiff's Attorney
THE LAW OFFICES OF CHRISTOPHER O'HARA CARTER, P.A.
P.O. Box 300
Yellville, AR 72687-0300
Tel: 870-449-2100
Fax: 870-449-2105
carterlaw@yellville.net