# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**No. 05-243 C**

| | | |
|---|---|---|
| ****************************************** | ) | |
| EDWARD KEETER and | ) | |
| KEETER TRADING COMPANY, INC., | ) | |
| *Plaintiffs* | ) | **Case 1:05-cv-00243-LJB** |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| *Defendant* | ) | |
| ****************************************** | ) | |

## DEFENDANT'S OBJECTIONS TO WITNESSES AND EVIDENCE PROPOSED BY PLAINTIFF

Defendant hereby objects to Plaintiff's proposed trial witnesses and Exhibits, on the grounds and for the reasons set forth below.

### I. OBJECTIONS TO WITNESSES

#### A. TOMMY GRIFFIN

Defendant objects to witness Tommy Griffin, on the grounds that the described testimony from him would be both irrelevant and hearsay.

Mr. Griffin has had no dealings at all with the SWDNO. He played no role in the events at issue. He is a Postal Service employee who did not work at the Yellville Post Office during these events. He has never had Postal Service work duties pertaining to box delivery contracts or their suppliers. He has no actual or apparent authority, and cannot speak or act for the Postal Service, regarding HCR contracts. He has no knowledge as a Postal Service employee about the conduct of business at or by SWDNO, nor any other employee knowledge that is related to this litigation. Based on his deposition testimony, Griffin at most could relate in general terms one or a few inconsequential conversations he had with Ms. Orr, or that he perhaps overheard her having with someone else, in which Mr. Keeter's refusal to accept a contract modification was commented upon.

Mr. Griffin knows Mr. Keeter, who has been a guest in his house. Griffin was unable to recall much about any conversations they shared, although it was either from Keeter that Griffin must have learned whatever he knows about this dispute -- or it was from other Postal Service suppliers who live in same area, or from relatives of those suppliers. Anything that Griffin can say, based on the sources available to him, will be hearsay when offered by Plaintiff to prove the truth of its contents. Griffin has no *personal* knowledge of these events, and can cast no light on the contract decision at issue. The description of his testimony provided by Plaintiff offers no more.

Defendant should not be required to bring Mr. Griffin away from his regular work to appear at a trial in which he would have no useful or probative evidence to offer.

B. <u>Duane Hoover</u>

Defendant objects to testimony by Mr. Hoover, for its lack of relevance and because it would evidently largely consist of hearsay.

Hoover was awarded the other box delivery contract that was created in 2002, and later revised, on the recommendations of Linda Orr, the Yellville Administrative Official. Hoover has no knowledge of how or why the SWDNO made the decision that Plaintiff now claims was made in bad faith. Plaintiff proposes to have him testify about how Ms. Orr came to believe that the routes she had recommended in 2002 were unbalanced and ought to be revised. He also apparently would inform the Court about possibly-nepotistic practices at Postal Service facilities in northwest Arkansas.

It makes no difference what Hoover told the AO about his workload. Plaintiff suggests that he complained about his contract obligations compared to Plaintiff's. What if he did? Is Plaintiff suggesting that the recommendation to revise these routes that Ms. Orr thereafter made to SWDNO was so tainted at inception that any action arising from it was inherently in bad faith? Hoover's testimony is meant to serve the argument that transfer of *these particular*

mailboxes to plaintiff's route was a bad act -- without showing any causal link between the origin of the route recommendations and the contract interpretation that this Court held was incorrect. Nothing in this case suggests that the route revisions were contrary to the standards of the Postal Service, or were a pretext for some other agenda. Mr. Hoover cannot supply such evidence.

The Complaint contends that Plaintiff's box delivery contract was breached because the contracting officer materially modified its terms without the supplier's prior consent. Plaintiff did not allege that the contract was breached because these *particular* mailboxes were transferred to its route. Plaintiff said that Defendant was wrong about the value of adding *any* 52 boxes to its obligations, given the language of the contract language, and about Plaintiff's right first to negotiate about such a change and to refuse to accept it as part of the contract.

Testimony from Mr. Hoover would be a digression into purported proof of bad faith having nothing to do with breach of a duty to negotiate or the right to refuse a contract modification. The testimony is not meant to dispute accuracy of factual information relied on by Defendant. Its only purpose would be to suggest bad faith in the agenda of the person who supplied information that itself is not contested. The issue to be tried is whether Defendant acted in bad faith *with regard to a contract modification*. Testimony by Hoover about

possible nepotism in the local post office will not be of any greater help to the Court in deciding that question.

As described by Plaintiff, Hoover's testimony will not help the Court to decide any issue that is actually before it. That testimony should not be received in evidence.

## II. **OBJECTIONS TO EXHIBITS**

1. Defendant objects, for lack of materiality or relevance, to Plaintiff's Exhibits Nos. 1 and 3.

2. Defendant objects, for lack of materiality or relevance, to Plaintiff's proposed Exhibits Nos. 10, 13-26, 28-30, 33, 35, 38, 39, 41-46, 49-53, and 58.

*Discussion of Objection No. 2*

These Exhibits are nearly-identical notes by which Ms. Orr documented to the contracting personnel at SWDNO Plaintiff's omission, and her provision, of service from January 24 to 20, 2004, for the 52 mailboxes that Plaintiff refused to serve. The contract specifies deductions (debits) from payment to the supplier for service omissions -- and Defendant's employees certainly believed that Plaintiff was omitting required service during that period. These

documents have no bearing on the faith, good or bad, of that belief or any other aspect of Defendant's conduct.

There is no dispute that Plaintiff refused to provide this service or that Ms. Orr performed it instead. It was the AO's job to notify the DNO if and when a supplier ought to be debited for a failure to perform. The same documents informed the DNO that the AO was entitled to reimbursement for performing the omitted services outside of her own job responsibilities. The Record does not need multiple examples of the same conduct, particularly when that conduct is itself irrelevant to proving Defendant's good or bad faith.

Defendant does not object to such notes, if they also contain some narrative or commentary apart from routine information about omitted service.

February 13, 2008

Respectfully submitted,

_/s/ Douglas J. Colton_
**Douglas J. Colton**
U.S. Postal Service
475 L'Enfant Plaza, SW
Room 6323
Washington, DC 20260-1127
Tel: (202) 268-6408
Fax: (202) 268-5287

**Counsel for Defendant**
**The United States Postal Service**