IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EDWARD KEETER AND
KEETER TRADINGCOMPANY Inc. PLAINTIFFS

v. No. 05-243C
(Judge Bush)

UNITED STATES OF AMERICA DEFENDANT

## PLAINTIFF'S PROPOSED FINDINGS OF FACT

Now comes the Plaintiff Keeter Trading Company, Inc. by and through its attorney Christopher O'Hara Carter of the Law Offices of Christopher O'Hara Carter, P.A. and for it's proposed findings of Facts from the trial of April 23-24 states:

**Note: Most facts have previously been set out in the Court's findings of July 17, 2008. In addition there are various stipulations and admissions that are in the file and need not be repeated here. Additional facts have been added only as it relates to the plaintiff's contention of bad faith on the part of the government.**

1. That on May 31, 2002 the Plaintiff Keeter, Inc. was awarded Transportation Services Contract by the Defendant United States Postal Service. (p. 1 of Joint exhibit #2, Contract HCR 72665). This route was previously run by Steve Hoover (Tr. 10). The route was over 150 miles and was divided and Keeter and Duane Hoover (brother to Steve) each were successful bidders on the split route. Ironically, Steve Hoover helped each bidder with their bids (Tr. 11 and Tr. 53).
2. That quickly after the contracts began Duane Hoover complained he had less time to case the mail and the comparison was made to the Plaintiff who had been awarded the other half of Steve Hoover's former route. (Tr. 12, Plaintiff's exhibit 1). He received additional compensation (Tr. 16).
3. In 2003 Postmaster Orr approached Hoover about changes she was proposing in various routes, largely to eliminate a small portion of the Yellville area that was handled by the Flippin (AR) post office (Tr. 16, 137-139). The changes also included taking some boxes

from Hoover's route and adding them to Keeter's route and Hoover would take over the Yellville boxes previously serviced out of Flippin.

4. Hoover told the Court that she wanted to give some of the boxes to Ed (Keeter) because he had extra time and wasn't working while other people were casing (Tr. 28). She further told Hoover to divide the route but not add any more miles to Keeter's contract (Tr. 28)

5. Ed Keeter did not smoke like the other postal employees who took "smoke breaks" and did not socialize with the other employees and contract carriers at the post office (Tr. 31, Tr. 41-42.

6. That of the nine people who worded at the Yellville post office at this time three (Steve Hoover, Duane Hoover and Debra Davenport) were brothers and sister. No other employees or carriers were related to each other. (Tr. 32-33).

7. That the changes would delete 12 boxes from Hoover's route and add 11 miles. The increase was favorable for Hoover and the postal service added $2,230.85 to his contract (Tr. 23, plaintiff's exhibit 11). Keeter would gain 52 boxes for an increase of $1087.56. (Plaintiff's exhibit 11).

8. Postmaster Orr felt she made a mistake in the time in the original contracts and Keeter had too much time and Hoover did not have enough time. (Tr. 177). As a result the USPS was, according to Postmaster Orr, paying Keeter too much money (Tr. 187, 194).

9. Keeter was asked about the changes and Keeter was opposed to them and that fact was well known at the post office and to the Postmaster Linda Orr (Tr. 24, 44, 150).

10. On December 1, 2003 Keeter was told by Linda Orr that it would be taking the boxes. Ed Keeter told her he wasn't happy and it was being done to appease Duane Hoover because Hoover was not happy with his contract. Keeter's was more than his. Postmaster Linda Orr told Keeter what he thought didn't matter (Tr. 62-63)

11. The changes to the contract of Keeter were suggested by Postmaster Linda Orr who decided, without consultation with Keeter, that his contract had too much time built into its contract. (Tr. 144, Defendants exhibit 1 pp 4-5)

12. That before the changes went into effect Keeter made it clear to his contact in Dallas, Jeanette Wofford the contract specialist to whom Keeter was to report, that he did not accept the changes (Tr. 211, Plaintiff's exhibit 2).

13. Keeter told the postal service on January 2, 2004 (plaintiff's exhibit 2) and January 31, 2004 (Defendant's exhibit 7) that he did not accept the changes because they would interfere with other work. Ed Keeter testified to that fact at trial (Tr. 61).
14. That the postal service did not seek any input from Keeter for the proposed changes. Nor did Duane Hoover ask Keeter for input on the route changes. (Tr. 22).
15. That the language of the contract (Joint Exhibit 2 p. 15) is clear as to changes to add boxes:

> ADJUSTMENTS FOR ROUTE EXTENSIONS OR EN ROUTE BOXES: Adjustments for extensions and en route boxes will be processed using the following formula. Adjustments in the annual hours for casing and route operations will be computed using two constant factors. Multiply the number of additional boxes by 3.64 and the additional miles by 10.40. The sum of the two equals the new hours added to the contract. Adjustments for compensation will be made by the Contracting Officer to the cost worksheet pro-rata.
>
> The P-5 handbook (joint exhibit 1) reinforces this formula and states:

**212.1 Manager, Transportation Contract Authority**

The manager, transportation contracts, or his or her designee may order a service change that does not increase the supplier's pay by more than $2,500. All other changes must be negotiated by the manager, transportation contracts. The administrative official is not authorized to negotiate compensation or otherwise amend the contract.

**212.31 Formula to be Used**

When processing extensions or en route boxes, the manager, transportation contracts, will apply the following formula. Compute adjustments in the annual hours for casing and route operations using two constant factors. Multiply the number of additional boxes by 3.64 and the additional miles by 10.4. The sum of the two equals the new hours added to the contract. For example, 10 new boxes and three additional miles equals the new hours added to the route. Multiply 10 boxes by 3.64 + 36.40. Multiply 3 miles by 10.40 + 31.20. Add 36.40 + 31.20 + 67.60 to obtain the total number of additional annual hours.

Adjustments for compensation will be made by the manager, transportation contracts, to the cost worksheet pro rata.

16. That the contract requires negotiation between the parties if the proposed change is 2,500.00 or more and there was no negotiation or attempted negotiation between the parties. (See court's decision in this case of July 17, 2007 for further facts and analysis)

17. Contract specialist Jeanette Wofford admits that the formula language is the same in every contract like Keeter's (Tr. 208) but she didn't apply the formula because Postmaster Orr told her no additional time was needed (Tr. 209-210).Ms. Wofford admits there is nothing in the contract (joint exhibit 2) or the P-5 handbook (joint exhibit 1) that indicates if a carrier has too much time in his contract that the postal service can ignore the contractual formula., (Tr. 210, 246-247).
18. The original change added 15 minutes to Keeter's contract. The postal service calculates 303.07 days per year so 76 hours were added to the contract. (Tr. 244). The formula in the contract would call for 189 hours.
19. That in February, 2004 Jeanette Wofford reworked the contract with the formula and reached 189 hours and while it may have increased the contract over $2500 still did not negotiate with Keeter. As Ms. Wofford stated "I was just trying to resolve it and the negotiations really didn't come to mind." (Tr. 217)
20. That the changes to the contract were to go into effect on January 24, 2004 and from that day through February 20, 2004 Keeter did not deliver the 52 boxes. Keeter was written up on a Form 5500 every day and he responded every day. Postmaster Linda Orr did not give a further response until February 9, 2004 when she was instructed to do so by Jeanette Wofford. (Plaintiff's exhibits 4A-4Y). After a few days Postmaster Orr began to mark "Failure to observe contract schedule" because he was leaving the post office earlier than the contract time. Not one witness testified there was anything improper about leaving at 8:00 AM.
21. That on February 2, February 6, and February 9 of 2004 postmaster Linda Orr inquired of the Dallas office about the termination of Keeter. (Tr. 156-157; plaintiff's exhibits 9, 10 and 13).
22. That despite the clear language of the contract and the P-5 handbook all officials that testified felt the formula was just a guideline and they were not bound to follow the formula. (Wofford Tr. 207, Tr. 240; McCague Tr. 283, Tr. 293, Tr. 294, Tr. 310, Tr. 320 Rodriquez Tr. 372)
23. The four postal officials who dealt with Keeter were all long rm postal employees. Postmaster Linda Orr, 30 years (Tr. 130); Contract Specialist Jeanette Wofford 28 years

(Tr. 197) Senior Contract Specialist Mark McCague 31 years (Tr. 278) and Manager of Transportation Contracts Eracio Rodriquez 31-32 years (Tr. 337).

24. That the position of the postal service not to follow the formula in the contract is based on an out of date guide (Defendant's exhibit 5, page 32) that discusses removing the formula all together. This guide is not part of any contract and is not available on-line (Tr. 374-375).
25. That on January 28, 2004 there was a telephone call involving Keeter, Wofford and McCague. Keeter states McCague told him what he thought didn't matter he would deliver the extra boxes and McCague concedes he may have said that (Tr. 72, Tr. 290). Keeter was told to put his position in writing and it had to come from Keeter, not the lawyer (Tr. 285, Defendant's exhibit 7).
26. That Manager of Transportation Contracts Eracio Rodriquez appeared unprepared for deposition in October, 2007 (Tr. 341) despite being the author of the findings that led to this lawsuit.
27. That without any legal basis the United States Postal Service has argued from the beginning of this case that the formula does not apply and the officials from Dallas still maintain that position and did so in Court.
28. That as of the date of the trial on April 23-24, 2008—over 4 years after the event arose—the USPS has neither apologized to Keeter or admitted they made a mistake (Tr. 77-78).

KEETER TRADING CO., Inc

/s/ Christopher O'Hara Carter
Plaintiff's Attorney
THE LAW OFFICES OF CHRISTOPHER O'HARA CARTER, P.A.
P.O. Box 300
Yellville, AR 72687-0300
Tel: 870-449-2100
Fax: 870-449-2105
carterlaw@yellville.net