IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EDWARD KEETER AND
KEETER TRADINGCOMPANY Inc. PLAINTIFFS

v. No. 05-243C
(Judge Bush)

UNITED STATES OF AMERICA DEFENDANT

# PLAINTIFF'S TRIAL BRIEF

Now comes the Plaintiff Keeter Trading Company, Inc. by and through its attorney Christopher O'Hara Carter of the Law Offices of Christopher O'Hara Carter, P.A. and for it's trial brief pursuant to the Court's order of April 24, 2008 states:

## I. FACTS:

**Note: Most facts have previously been set out in the Court's findings of July 17, 2007. Additional facts have been stipulated to by the parties; documents have been stipulated to and the court heard testimony of seven (7) witnesses on April 23-24, 2008 in Little Rock, Arkansas and the plaintiff has submitted an additional Proposed Findings of Fact.**

Keeter, Inc. submitted a pre-trial brief in this matter prior to the trial. The contentions of fact and the legal issues are repeated here because the Plaintiff Keeter Trading, Inc. believes that it honestly told the Court what it could prove—and then proceeded to do so. As a result Keeter, Inc. contends that it has meet its burden of proof and has shown the United States Postal Service (USPS) terminated its Home Carrier Route (HCR) contract in bad faith and he is entitled to damages for that termination in the amount stipulated to by the parties, i.e. $ 42,641.24 plus interest.

**II. CONTENTIONS AND ISSUES OF FACT FOR THE COURT:** It is Keeter's contention and intent to prove that it had a contract provision involved in this matter that was simple to understand and there could not be any confusion as to his position with the USPS. The USPS just would not listen to him, negotiate or even acknowledge the correctness of his position. Keeter contends that with three persons from the same family working at the small Yellville Post Office that they received special treatment. This is evident by changes made to Duane Hoover's contract within 2 months of its inception and the subsequent changes made to Keeter's contract, contrary to the anticipated testimony of Postmaster Linda Orr, were made to pacify Duane Hoover. Duane Hoover and Linda Orr designed the new routes and Ed Keeter will testify both told him to accept the plan. That is not negotiation but intimidation. The changes could not be put into place without Keeter's consent and that would not be coming.

The USPS has contended throughout that they have treated Keeter fairly and had no animosity towards him. Yet time after time Keeter's USPS supervisors told Keeter to do what we tell you or we will dock your pay and may terminate the contract. The USPS is presumed to know what its own contracts say and all four postal employees involved with this contract (Orr, Wofford, McCague and Rodriquez) are all long-term postal employees and with the exception of Orr, each has dealt with hundreds if not thousands of contracts. Calculating the contract formula should have been routine but no one did it and Rodriquez even refuses to discuss it. The USPS made Keeter put his position in writing, which he did on January 31, 2004 and made it clear that this was a major change to his contract under the contract terms and he did not wish the change.

Once the position was put in writing the requests for termination increased greatly as indicated by the plaintiff's exhibit list. The USPS continued (and continues) to misstate Keeter's position and believed the issue at hand was about money. The Court will find Ed Keeter, President of Keeter, Inc. is a little different from most individuals and he reads contracts and holds hard and fast beliefs. Keeter did not want the changes because of the extra time that would be involved—it was never about money. It was a principle.

The USPS did not have to use its tactics of intimidation and utter disregard for Keeter's contractual rights—they could have reduced the boxes to 40 and he would have to accept or the USPS could have determined that negotiations were at an impasse and terminated the contract for convenience. What will become clear is that Keeter "bucked the system" and challenged the authority of those to walk all over him and his company.

**IV. LAW:** As the court has pointed out in its decision of July 17, 2007 the plaintiff bears a high burden of proof—well-nigh irrefragable proof. This court in *Erinys Iraq Ltd. V. U.S. (Fed*. Cl. 9-14-2007) wrote "the standard for demonstrating 'well-nigh irrefragable proof,' urged by defendant, is high, as it refers to 'evidence that cannot be refuted or disproved.' Id. at 1240 (internal quotation omitted). As with the clear and convincing standard, the requirement of "well-nigh irrefragable proof" also sets a high hurdle for a challenger seeking to prove that a government official acted in bad faith: In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated to evidence of some specific intent to injure the plaintiff.

The Supreme Court had held that "in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment," the official's decision under such clauses would be "conclusive upon" both the contractor and the government. *Kihlberg v. United States*, 97 U.S. 398 (1878)

Based upon these two cases the burden is on the plaintiff to prove either “gross mistake” or “failure to exercise honest judgment” **and** some specific intent to injure the plaintiff. The evidence clearly supports either proposition. The parties agree that no less than four times Keeter, Inc. orally informed its superiors that it did not accept the changes (Summer ’03; December ’03, January 2, 2004 and January 28, 2004) and in writing 25 times (23 responses to write ups; letter of January 31, 2004 and letter of February 20, 2004) and a 26th time on his initial appeal to Mr. E. N. Rodriquez. There were other minor conversations concerning the matter but the fact remains that there were 30 major discussions and not once has the postal service admitted they were wrong and Keeter, Inc. was right. The USPS still does not concede Keeter’s position today and have fought Keeter for 4 years. The contract is very simple and reads:

**212.1 Manager, Transportation Contract Authority**

The manager, transportation contracts, or his or her designee may order a service change that does not increase the supplier’s pay by more than $2,500. All other changes must be negotiated by the manager, transportation contracts. The administrative official is not authorized to negotiate compensation or otherwise amend the contract.

**212.31 Formula to be Used**

When processing extensions or en route boxes, the manager, transportation contracts, will apply the following formula. Compute adjustments in the annual hours for casing and route operations using two constant factors. Multiply the number of additional boxes by 3.64 and the additional miles by 10.4. The sum of the two equals the new hours added to the contract. For example, 10 new boxes and three additional miles equals the new hours added to the route. Multiply 10 boxes by 3.64 + 36.40. Multiply 3 miles by 10.40 + 31.20. Add 36.40 + 31.20 + 67.60 to obtain the total number of additional annual hours.

Adjustments for compensation will be made by the manager, transportation contracts, to the cost worksheet pro rata.

Ms. Swofford, Mr. McCague and Mr. Rodriquez will all testify that they have held their positions for a number of years and have handled hundreds, and in Mr. Rodriquez's case, thousands of contracts. Jeanette Swofford will testify that neither she nor her supervisor ever attempted to **negotiate** with Keeter. Ms. Swofford will testify that the goal the USPS wanted to achieve was to try to satisfy Mr. Keeter to get him to do the work. Keeter made it clear it would not accept the changes. It is clear the government did not use "honest judgment" in their dealings with Keeter. In fact, the evidence supports that they used none at all The USPS failing to even look at the contract continually threatened to harm Keeter by threatening to take money from it (or terminate its contract) and then actually taking money on February 20, 2004. That last day Keeter performed services for the USPS.

Courts have found bad faith when confronted by a course of government conduct that was "designedly aggressive, " *Struck Const. Co. v. United States, 96* Ct. CL. 186, 222 (1942) or that "initiated a conspiracy" to "get rid" of a contractor *Knotts v. United States*, 121 F. Supp. 630, 636 (Ct. Cl. 1954). Cited in *North Star Alaska Housing Corporation v. U.*S. (Fed. Cl. 4-2-2007). The *Struck* court held "{i}f the aggregate of the actions of all the agents would, if all done by one individual, fall below the standard of good faith, {the government} for who the various agents acted should be held to have violated that standard."

**<u>APRIL 23-24 TRIAL</u>**

If one thing is clear it is that the plaintiff did not misstate his position above and those facts were proven at trial. The following list is all the factors that the Court should consider in its finding of bad faith on the part of the USPS.

A. There can be little doubt that changes were made to the Hoover contract to benefit Hoover to the detriment of Keeter. This was done by Postmaster Orr who admitted that Keeter had too much time for the money in his contract. She did not consult Keeter about his "time" or even consider the fact that Keeter did not socialize or take "smoke breaks". As Tommy Griffin testified the longer you do the job the more efficient you become in casing and delivering the mail. It seems the postal service will enact a penalty for those who become efficient. Further, Hoover was instructed not to set out additional mileage for Keeter, which would mean more compensation. It is uncontroverted that Hoover and Orr developed the changes in the Yellville postal routes that ultimately led to this lawsuit

B. The postal service did not use the formula in the contract and when Ed Keeter pointed this out in writing and orally he was ignored. As Keeter wrote in his letter to the postal service on January 31, 2004 his intelligence was being questioned. The contract calls for Keeter's agreement and the USPS did not have it.

C. The USPS concedes that they were trying to get money out of Keeter. While they indicated at trial it was to replace a lost service the evidence is to the contrary. Postmaster Orr asked on at least 3 different occasions to have Keeter's contract terminated; Keeter was told by McCague it didn't matter what he thought he was going to deliver the route or his contract would be terminated.

D. Never once did the postal service in all their letters, memos and phone calls with Keeter once recognize that Keeter was applying the formula in his contract and it called for a major change. Even after he put it in writing no one recognized his position.

E. The postmaster told Keeter that she would be paid and he would pay her.

F. Postmaster Linda Orr began to write Keeter up for "leaving too early" and not one person could tell the Court the problem with that. Postmaster Orr testified at trial that once the Baxter Bulletin arrived carriers could leave. Her actions were petty and unjustified and arose only in the contract situation because Keeter had kept the same schedule for almost two years.

G. Perhaps the most telling is Mr. Rodriquez's testimony at page 375:

Q. (By Mr. Carter) You've had an opportunity to listen to the testimony of all the witnesses. Would it be fair to say that even today, it's the position of the United States Postal Service that we came up with a change and whether it was in agreement with Mr. Keeter's contract or not, he was going to do it or we were going to get rid of him?

A Is that a fair statement to say?

Q Yes.

A Yes.

If the plaintiff applies the law as stated above it is clear that the facts themselves are not in real dispute. There is no question that the USPS attempted to get rid of Keeter if he did not do as the USPS commanded. The USPS argues there actions were taken in good faith and they truly believed, based upon a document years old (perhaps as many as 15 years old) (Def. exhibit 5, pg. 32) that they were justified in their

actions—especially their actions towards Keeter. Yet this very document also emphasizes negotiations in good faith. The postal service cannot point to one time they conceded Keeter was correct. In fact they dispute that fact today.

The bottom line in this case is that Keeter, Inc. signed a contract with the United States Postal Service to cover a certain area of Marion County, Arkansas out of the Yellville, Arkansas Post Office. By all accounts Keeter, Inc. did a good job, but apparently received a better contract than Duane Hoover—whose family comprised one-third of the Yellville post office—and the Postmaster took it upon herself to "even out" the contracts. She tried to do this by telling Dallas we do not need to pay Keeter more money because he has extra time built into his contract. Not only did Keeter dispute that, it appears Keeter's employees never took breaks or chatted with co-workers. Keeter did its job and did it efficiently. Keeter was told repeatedly by Dallas that Keeter would have to accept the changes. That it not a contract, that is not negotiations, that is forced labor. It is clear that every official above Keeter in the chain of command were not familiar with their own contracts. Every single official testified the USPS correctly handled the situation. Yet the contract speaks for itself, the handbook speaks for itself. The actions of the United States Postal Service have to been deemed both gross negligence and failure to exercise an honest judgment.. The Supreme Court had held that "in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment," the official's decision under such clauses would be "conclusive upon" both the contractor and the government. *Kihlberg v. United States*, 97 U.S. 398 (1878). Mr. Rodriquez, once the facts were laid out to him (by a lawyer no less) refused to even address the issue, the

facts or the contract (Plaintiff's exhibits 19A and 19B). Throughout the history of this case in this Court that has been the position of the postal service and now 4 years later they still cannot bring themselves to say to Keeter, Inc.—"we were wrong, we made a mistake."

The facts speak for themselves. Keeter was insulted and threatened with financial penalties all because he had the audacity to read and understand his contract and then tell the United States Postal Service they were wrong. The truth of the matter is that if the United States Postal Service came to the table to bargain in good faith they could have terminated Keeter's contract for convenience, they could have reduced the 52 boxes to 40 and given 12 back to Duane Hoover and even Keeter admits he would have had to accept that change without question.

## CONCLUSION

For this court to hold that the Plaintiff did not meet its burden on "well-nigh irrefragable proof" is the equivalent of allowing the Government to enter into contracts that only the Government can interpret as to meaning and the government can rely on documents that are out of date and never provided to suppliers as a basis for their actions.

A small one person company entered into a simple little contract, read the contract, followed the contract, and saw that contract taken away solely because his superiors just did not acknowledge or follow what their own contract said.

**AUTHORTIES CITED**

UNITED STATES SUPREME COURT PAGE

*Kihlberg v. United States,* 97 U.S. 398 (1878)…………………………………………3

UNITED STATES COURT OF FEDERAL CLAIMS

*Erinys Iraq Ltd. V. U.S.* (Fed. Cl. 9-14-2007)……………………………………………3

*North Star Alaska Housing Corporation v. U.*S. (Fed. Cl. 4-2-2007)……………………5

*Knotts v. United States*, 121 F. Supp. 630, 636 (Ct. Cl. 1954)…………………………5

*Struck Const. Co. v. United States, 96* Ct. CL. 186, 222 (1942)……………………....5

STATUTES

None

KEETER TRADING CO., Inc

/s/ Christopher O'Hara Carter
Plaintiff's Attorney
THE LAW OFFICES OF CHRISTOPHER O'HARA CARTER, P.A.
P.O. Box 300
Yellville, AR 72687-0300
Tel: 870-449-2100
Fax: 870-449-2105
carterlaw@yellville.net