# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**No. 05-243 C**

| | | |
|---|---|---|
| ************************************** | ) | |
| EDWARD KEETER and | ) | |
| KEETER TRADING COMPANY, INC., | ) | |
| *Plaintiffs* | ) | **Case 1:05-cv-00243-LJB** |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| *Defendant* | ) | |
| ************************************** | ) | |

## DEFENDANT'S PROPOSED FINDINGS OF FACT

### I. FACTS ESTABLISHED BY STIPULATION

During trial on April 23-24, 2008, the parties advised the Court that facts recited in defendant's *Requests for Admission*, ***DX/25***, are stipulated by them to be true. ***Transcript, pp.49-50*** For convenience, pertinent facts established by this stipulation are here condensed and restated as ***Proposed Findings of Fact A1 – A14***. Other factual matters recited in ***DX/25*** do not appear to be relevant to the bad faith issue, but are in any event established by stipulation.

The 52 mail boxes transferred to plaintiff's route are the "AMBs." References to "plaintiff" and "Keeter" encompass both the plaintiff herein, Keeter Trading Company, Inc., and its owner, Edward L. Keeter, as does the pronoun "he."

A1 Plaintiff Keeter, Inc. (a/k/a Keeter Inc., hereafter "plaintiff" or "Keeter") was incorporated in Arkansas in 1993, and later changed its name to "Keeter Trading Company, Inc."

A2 Plaintiff was awarded contract HCR 72665 ("the Contract") by the United States Postal Service (the "Postal Service" or "defendant"), to supply services commencing July 1, 2002 and a stated expiration date of June 30, 2006. ***JX/1***.

A3 On December 24, 2003, the contracting officer at defendant's Southwest Area Distribution Networks Office ("SWDNO") issued a Route Service Order directing that the AMBs be added to the Contract, with service for them to begin on January 24, 2004 and additional compensation to plaintiff of $1,087.56 per year. ***DX/2***

A4 In a telephone conversation before the end of 2003, plaintiff was notified of modification of his route by SWDNO contract specialist Jeanette Wofford, who also told plaintiff that he was required by the Contract to provide service for the AMBs even if he did not want to.

A5 Beginning in or by early January of 2004, plaintiff informed contracting personnel at SWDNO that he would not provide service for the AMBs, because their addition to his route was a "Major Change" of Contract terms that he had not agreed in advance to accept.

A6 Defendant informed plaintiff in January of 2004 that addition of the AMBs to the Contract was not a "major change," and that he was required to

provide service for the AMBs whether or not this added work would be a "major change."

A7 In telephone conversations during January of 2004, SWDNO contracting personnel told plaintiff that he was required by the Contract to provide service for the AMBs, and that if he did not do so the Contract could be terminated.

A8 In telephone conversations during January of 2004, SWDNO contracting personnel told plaintiff that if he did not provide service for the AMBs, defendant was entitled to recover from him its costs for arranging alternative service, through deductions from payments otherwise due to him under the Contract.

A9 In a January 31, 2004 letter to defendant, ***PX/17***, plaintiff stated that he disagreed with the additional amount defendant proposed to pay him to provide service to the AMBs, and that he was not obligated to do that work because he had not agreed to it.

A10 On at least eighteen days between January 24 and February 20, 2004, defendant incurred expenses to have service provided for the AMBs by Linda Orr.

A11 On February 19, 2004, defendant increased the compensation to plaintiff for servicing the APBs by an addition $1,602.72, to a total of $2690.28.

**A12** On February 20, 2004, plaintiff informed defendant orally and in writing that he would not be providing services under the Contract after that day, and he did not.

**A13** Plaintiff did not make any deliveries to the AMBs under the Contract.

**A14** On April 28, 2004, the contracting officer issued a Final Decision terminating the Contract for default, retroactively effective as of the close of business on February 20, 2004, and a second Final Decision that denied Plaintiff's claims for damages.

## II. FACTS ESTABLISHED BY THE EVIDENCE

The following *Proposed Findings of Fact* are established by trial testimony and documents in the Record. Citations are to the trial Transcript and Exhibits.

**B1** Plaintiff's contract box delivery route as of July 1, 2002 was derived from a prior route that had been split and reconfigured based on recommendations made by Yellville Administrative Official Linda Orr.

***LO:133-37; DX/1***

**B2** In 2003, Ms. Orr concluded that the box delivery routes resulting from her earlier recommendations were unbalanced and should be revised. She submitted her recommendations for further route revisions, with supporting documentation, to SWDNO in or before early December of 2003. These recommendations were made to further the best interest of the Postal

Service, not to harm plaintiff or to favor any other contract supplier or person.

***LO:136-41, 143, 149, 162-63, 177-80, 185-86, 193-94; DX/1***

**B3** Ms. Orr believed and informed SWDNO that the schedule for HCR 72665 allowed more time for casing and route travel than was needed or was being used by the supplier. She indicated that the supplier was completing route tasks in less time and earlier than the schedule contemplated.

***LO:143, 177-80; DX/1***

**B4** Ms. Orr concluded that the least expensive way to modify the box delivery routes assigned to Yellville Post Office so to to achieve appropriate balance between them and to accommodate future needs included transferring some en route boxes from one route to the other.

***LO:137-39, 149, 180-81***

**B5** Because she was not personally familiar with these details, Orr asked Duane Hoover, the supplier for one of the box routes that she believed should be revised, to indicate the most logical group of boxes and their separation point for transfer to the other route, and Hoover provided this information to her.

***LO:176-77, 180-81, 185-86, 193-94; DH:21, 27-9***

**B6** Neither Hoover or any member of his family instigated, caused, or directed Orr's recommendations to SWDNO to revise Yellville box delivery routes.

***LO:176-77, 185, 193-4***

**B7** Orr recommended that 52 boxes (the AMBs) be transferred from Hoover's route to Keeter's because she believed doing so would benefit the Postal Service.

***LO:136-38, 180-81, 193-94***

**B8** When plaintiff refused to provide service for the AMBs beginning on January 24, 2004, alternative service was required and it was provided by Orr.

***LO:155-58, 167, 174-5***

**B9** Orr accurately and appropriately recorded the time required and her costs incurred for providing service to the AMBs, and informed SWDNO of these amounts with her request that they be charged to plaintiff.

***LO:155-56, 166-67, 174-75***

**B10** Orr's recommendations for route revisions were reviewed by Jeanette Wofford at SWDNO, who checked the supporting information and did her own analysis before concluding that the recommendations were appropriate and should be implemented.

***JW:204-5, 212***

**B11** Contract Specialists Wofford and McCague at SWDNO believed that the extra time in the schedule for HCR 72665 could and should be taken into account in considering the route revisions suggested by Orr.

***JW:210, 229-30, 240, 246, 253; MM:291-93***

**B12** Contracting personnel at SWDNO were aware of the policy stated in a directive from Postal Service Headquarters, indicating that application of the formula for valuing added boxes at §B.1.3 of the Contract ***(JX/1, p.15)*** was not mandatory. This policy was relied upon when Wofford calculated the compensation appropriate for adding the AMBs to plaintiff's route.

***DX/6; JW:207-10, 229-30, 243, 246-47; ENR:345-50, 353; MM:293-4,***

**B13** Based on the directive and information provided by Orr, Wofford determined that added pay for plaintiff of $1087.56 per year was appropriate for the AMBs. Her conclusion was approved by her immediate superior, McCague, and by the Contracting Officer on December 24, 2003. Defendant's determination that proper compensation for the AMBs was less than $2500 was not reached in order to avoid negotiating with plaintiff.

***JW:204-10, 229-30, 258; MM:283-4, 292-3; DX/2***

**B14** In February, 2004, defendant decided to increase compensation for plaintiff for providing service to the AMBs by $1602.72, or a total of $2690.28, basically the amount indicated by the box formula, because defendant believed that was necessary to induce plaintiff to perform the added work.

*JW:213, 217-19, 232-3, 239-40; MM:299-300*

**B15** Defendant believed at all relevant times that plaintiff was required by the Contract to provide service for the AMBs whether he wished to or not, and that defendant's interpretation of the Contract with regard to plaintiff was consistent with the contractual terms.

*JW:213, 218, 229-30, 233-4, 240, 246-7, 261; MM:283, 296, 308; ENR:347-50, 352-3, 360, 366, 374-5*

**B16** The Contracting Officer at SWDNO would not have negotiated with plaintiff over whether the AMBs should be added to the route for HCR 72665, and would not have agreed to withdraw the route changes already made that included that revision.

*ENR:356-9*

**B17** In January and February, 2004, SWDNO personnel advised plaintiff that the Contract could be terminated, and that deductions could be made from his contract payments for the cost of Orr providing service to the AMBs, based on their belief that plaintiff was required by the Contract to do that work. Warning of potential consequences is an appropriate means to enforce contracts and obtain their performance, and such statements by defendant were not coercion or harassment of plaintiff.

*JW:210-11, 229-32, 240*

**B18** Ms. Orr prepared USPS Form 5500 "*Contract Irregularity Reports*" regarding plaintiff's performance of the Contract, when he refused to provide service to the AMBs and for other apparent contract irregularities. Her issuance and use of the Forms 5500 was undertaken in good faith in accordance with her duties as Administrative Official for the Contract, and was not harassment of plaintiff.

***LO:151-3, 172-3; ENR:360-2; EK:94***

**B19** Defendant eventually terminated the Contract for default because plaintiff explicitly renounced all performance of it, and stopped performing, on February 20, 2004. Plaintiff did not resume performance after he receive defendant's Cure Notice advising him that the Contract would be terminated if service was not restored within three days. The Contract was not terminated because of plaintiff's refusal to provide service to the AMBs. ***ENR:365*** The Forms 5500 issued to plaintiff played no part in the termination.

***JW:256; ENR:363***

**B20** No Postal Service employee held or expressed malice or ill-will toward plaintiff, or sought or intended to cause him harm, in the events surrounding transfer of the AMBs to plaintiff's box delivery route and plaintiff's refusal to provide service for them. None of defendant's employees took any action affecting plaintiff that they believed was inappropriate or unauthorized.

***LO:167, 173, 180-1, 185-6; JW:229, 232-3, 258; MM:306-08; ENR:357, 360-62, 366***

**B20** Defendant's conduct in these events did not arise from or express any ill-will towards plaintiff, and did not constitute bad faith.

July 20, 2008

Respectfully submitted:

/s/ Douglas J. Colton
**DOUGLAS J. COLTON**
475 L'ENFANT PLAZA SW
RM. 6323
WASHINGTON, D.C. 20260-1127
TEL. 202.268.6408
FAX. 202.268.5287
*douglas.j.colton@usps.gov*

**COUNSEL FOR DEFENDANT**
**THE UNITED STATES (POSTAL SERVICE)**