IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EDWARD KEETER AND
KEETER TRADING COMPANY, Inc. PLAINTIFFS

v. No. 05-243C
(Judge Bush)

UNITED STATES OF AMERICA DEFENDANT

PLAINTIFF'S POST-TRIAL REPLY BRIEF

The plaintiff wonders if the United States Postal Service attended the same trial he did or observe the same evidence. The defendant's brief is well written prose but cannot enlighten this Court because the defendant glosses over their mistakes and errors of judgment in dealing with Keeter , and Ed Keeter specifically, as "ordinary conduct" (Def. brief p. 5) and "unremarkable steps" (Def. Brief p. 12). There are some descriptions given by the defendant that Keeter concedes are true and he is proud that the United States Postal Service recognizes him as the following:

> **This affront to his dignity is repackaged by him into a dramatic scenario, in which plaintiff is the hero who bravely defies an uncaring and immoral foe." (Def. brief pp. 1-2)**
>
> **Plaintiff's indignation is not as evident from printed words in the Transcript as from observing his live testimony, but it appears in his repeated complaint that defendant did not admit it was wrong even after he made it clear he knew his rights. What plaintiff calls "bad faith" seems mostly to have been defendant's failure to acknowledge his intelligence and moral grit." (Def. Brief, footnote 6 page 12).**
>
> **Keeter plainly considers defendant's refusal to abandon its position and to acknowledge that he was right an insult to his intelligence." (Def. brief footnote 14 p. 25)**

**Keeter testified indignantly that defendant paid no attention to him and ignored his views. He resented being treated as though he did not know his rights. In sum, he was not accorded the respect he was deserved. To him, this disdain for his opinion was so wrong that it must bespeak malice, and from that malice bad faith must be found. (Def. brief p. 29)**

The plaintiff agrees with all of those statements and is glad the defendant finally recognizes his position—but that is far from the whole story. The plaintiff's case is complete with facts that support bad faith and malice. The defendant is not shy about arguing that the refusal of the postal service to listen to him is a large part of this position.

The Postal Service wanted Keeter to do certain work and Keeter and the postal service signed a contract setting out their duties. Keeter performed its duties and there were no complaints about his performance prior to January 24, 2004. That is not in dispute. Ed Keeter may not have been a popular individual at the Yellville Post Office but he was a good worker and performed his assignments under the contract. Unfortunately he bid a better contract than Duane Hoover.

<u>DUANE HOOVER</u>

It is not, and has never been, the position of Keeter that Duane Hoover was the mastermind of this conspiracy as set out on page 9 of the Defendant's brief. The Court could readily observe Duane Hoover is just not the mastermind type. Duane Hoover had his complaints and no one can ignore that his family represented one-third of the worker's at the Yellville Post Office. The mastermind, if we can use such a word, and antagonist in this situation is Postmaster Linda Orr. She came up with a solution to

benefit Duane Hoover, unfortunately this arrangement needed the approval of Keeter Trading, Inc. and it was clear they would not agree to the proposal. Instead of working with Keeter, Orr had Hoover design a plan and she sent in all the specifications to Dallas basically finding that 15 minutes of time should be added to Keeter's contract. (Orr testimony Tr. 143-144) This unfounded and misguided theory allowed Orr to get her changes and make Hoover happy and penalize Keeter.

POSTMASTER LINDA ORR

It is undisputed and the Defendant even argues "Orr had no authority to negotiate, amend, revise, terminate, or even discuss the terms of the contracts that she supervised as AC, and certainly could not interpret them independently of directions from the DNO" (Def. Brief p. 18) Yet that is what she did. Duane Hoover had been on this route just over 1 year when Postmaster Orr started looking at changes. This route (and Keeter's route) was run by one man just a year earlier, yet Orr determined "He was getting overburdened on his route. Overburdened meaning too much mail, too many miles." (Tr. 136). So she corrects the problem by *adding more mile*s which is more money (Tr. 23).

Orr was asked about Defendant's Exhibit 5, the Administrative Official's Manual for Highway Contract Routes and she was familiar with it. When directed to page 32, the policy for Addition Enroute Boxes she also indicated she was familiar with it. But when directed to the 5th paragraph—the formula for adding boxes—Ms. Orr seemed to develop amnesia and announced that Administrative Officials do not use the formula

(Tr. 146). She also agreed she was not to influence contracts as an Administrative Official (Tr. 146-147).

Ms. Orr also was asked about changing routes and whether it was to benefit individuals. She replied "no". She was asked:

Q Did you do so to help Duane Hoover?

A No (Tr. 177)

That is inconsistent with her earlier testimony and contrary to the overwhelming evidence. Orr again reiterated she did nothing with the purpose of helping Hoover (Tr. 186). However to the Court's question she responded "Well, and obviously we were paying him more because it took less time than what I thought it was going to take." When Keeter brought his complaints to light Orr started writing him on 5500 for leaving too early. Yet everyone at the Post Office, including Orr, acknowledged that if the newspapers were not in by 8:00 AM carriers could leave (Tr, 179) This action was not "ordinary conduct," it was spiteful and malicious and Orr's attempt to build a case to get Keeter terminated.

CONTRACT SPECIALIST JEANETTE WOFFORD

The defendant's analysis of the plaintiff's position of the SWDNO Events (Def. brief pp. 10-11) is quite accurate. However, the defendant argues "Adoption by the DNO of Orr's recommendations for route changes cannot provide such proof of malice." The plaintiff agrees if that was all there was. But Ms. Wofford was the contract specialist and knows what her contracts say. She agreed HCR contacts such as

Keeter's were all the same (Tr. 206-207). All contained the formula but because postmaster Linda Orr told her Keeter had too much time she did not apply the formula (Tr. 210). Jeanette Wofford chose not to follow the contract and did not talk to Keeter to confirm the time situation. (Tr. 210).

Courts have found bad faith when confronted by a course of government conduct that was "designedly oppressive, " *Struck Const. Co. v. United States, 96* Ct. CL. 186, 222 (1942) or that "initiated a conspiracy" to "get rid" of a contractor *Knotts v. United States*, 121 F. Supp. 630, 636 (Ct. Cl. 1954). Cited in *North Star Alaska Housing Corporation v. U.*S. (Fed. Cl. 4-2-2007). The *Struck* court held "{i}f the aggregate of the actions of all the agents would, if all done by one individual, fall below the standard of good faith, {the government} for who the various agents acted should be held to have violated that standard."

The Supreme Court had held that "in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment," the official's decision under such clauses would be "conclusive upon" both the contractor and the government. *Kihlberg v. United States*, 97 U.S. 398 (1878).

At best in this case it must be said Jeanette Wofford made a gross error of judgment and miscalculation of Keeter's response. How could anyone who deals with the same contract day in and day out not know what it says? It is her title. *Contract specialist.* To be fair, Jeanette Wofford took excellent notes of all events and may have believed that there were no problems with the contract as proposed by Postmaster Orr. She and Keeter discussed in and she looked into the situation. However, after January 28, 2004 with the conference call of Mark McCague, Ed

Keeter and Jeanette Wofford and Keeter's letter of January 31, 2004 there can be no doubt of the malice, gross negligence and hate by the Postal Service towards Keeter. Ed Keeter explained and showed in great detail Wofford, McCague and Rodriquez that they and the United States Postal Service were wrong. The postal employees dealing with Ed Keeter could not handle Keeter nor admit they were completely wrong and made a gross errors in judgment and had to take steps get rid of the troublemaker.

MARK MCCAGUE

Mr. McCague still cannot accept that this court, or anyone, should concede the United States Postal Service was wrong. He tells the court that the formula did not apply because it was not recommended by the administrative official (Tr. 283). He is a senior contract specialist and knows that has nothing to do with the contract. He has the audacity to tell the Court that the box increase was "in accordance with the contract" (Tr. 283). It is clear that Mr. McCague believes the United States Postal Service can make its own rules as they go along. He was told by Mr. Keeter in writing as to the position of Keeter, Inc. A position solely in accordance with the contract. Yet he dismissed Keeter and tried to explain "it is always about the money". But Keeter made it very clear in his letter of January 31, 2004 it was not about the money. It is obvious McCague never read the letter.

E. N. RODRIQUEZ

Mr. Rodriquez had little involvement in this matter until he was asked to review this case. He ignored all the facts and documents presented to him and wrote "I need not decide the issue of whether the USPS breached the contract." (Tr. 340) nor was he prepared to give a deposition (Tr. 341).

In Nova Express v. Potter (Fed Cir. 8-14-08) the Court wrote:

We review the decision of the PSBCA under the standard established by the Contract Disputes Act of 1978:

> In the event of an appeal by a contractor or the Government from a decision of any agency board pursuant to section 607 of this title, notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and **shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith,** or if such decision in not supported by substantial evidence.

**41 U.S.C. § 609**(b); see Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562, 1564 (Fed. Cir. 1987).

That is the situation the Court finds itself. The higher Keeter Trading went in the SWDNO the worse it became. To the end that the head—Mr. Rodriquez—ignored him completely.

At every step of the process the United States Postal Service had a chance to correct their errors and misdeeds, but failed to. Linda Orr decided she wanted changes to benefit Duane Hoover, which were not favorable to Keeter. Wofford said that is what the administrative official wanted, McCague endorsed that position and when it got to

Rodriquez he ignored the whole situation and terminated Keeter just as Orr and McCague requested. Not one official from the United States Postal Service can say they were fair with Keeter, respected him or followed his contract. When Keeter pointed these flaws out he was terminated—but not before the USPS took money from Keeter and threatened to take more after he filed this action.

As Mr. Rodriquez said it is a fair statement that if Mr. Keeter did not do the work ordered the Postal Service would get rid of him. (Tr. 375). Who would sign a contract with the Postal Service after their treatment of Keeter? A contract is a worthless piece of paper to the United States Postal Service and it has been proven in this case by their actions.

CONCLUSION

The Defendant suggests that the Court follow the lead of Judge Christine Miller in Eninys Iraq Ltd. V. U.S. (Fed.Cl. 9-14-07) and hold that:

The standard for demonstrating "well-nigh irrefragable proof," urged by defendant, is high, as it refers to "evidence that cannot be refuted or disproved." Id. at 1240 (internal quotation omitted).

As with the clear and convincing standard, the requirement of "well-nigh irrefragable proof" also sets a high hurdle for a challenger seeking to prove that a government official acted in bad faith: In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated to evidence of some specific intent to injure the plaintiff.

Id.

The Court of Federal Claims has suggested, in two published opinions since 2005, (Judge Wolski's being much more extensive

than that of the undersigned), that

> [t]he Government's long touted desideratum that "irrefragable proof" is needed to demonstrate the absence of good faith in the administration of government contracts has been given its last rites. *See Tecon*, 66 Fed. Cl. at 766[-67 &] n. 36.

H & S Mfg., Inc. v. United States, 66 Fed. Cl. 301, 310 n. 19 (2005). In select cases, however, the indicted government act amounts to charges of misconduct. See, e.g., Textron, Inc. v. United States, 74 Fed. Cl. 277, 293 (2006) (procurement officials accused of disclosing sensitive government information to competitors). Setting a "high hurdle," Am-Pro Protective Agency v. United States, **281 F.3d 1234**, **1240** (Fed. Cir. 2002) (quoted in Textron, 74 Fed. Cl. at 293), makes sense in those limited circumstances.

It cannot be said that the actions of the United States Postal Service did not arise to good faith in their dealings with Keeter Trading. The Plaintiff therefore prays that the Court so find that based on the misdeeds of the United Postal Service as a whole that the actions of the USPS constituted bad faith and that the United States Postal Service demonstrated an overt intent to financially injure Keeter Trading.

KEETER TRADING CO., Inc

/s/ Christopher O'Hara Carter
Plaintiff's Attorney
THE LAW OFFICES OF CHRISTOPHER O'HARA CARTER, P.A.
P.O. Box 300
Yellville, AR 72687-0300
Tel: 870-449-2100
Fax: 870-449-2105
carterlaw@yellville.net